# EXHIBIT C

# COPY OF STATE COURT FILE

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

IN THE CIRCUIT COURT OF ST. CHARLES COUNTY
STATE OF MISSOURI

| | | |
|---|---|---|
| BRENDA HILLMANN, | ) | |
| | ) | |
| AND | ) | Cause No.: |
| | ) | |
| ANDREW ZERR, | ) | |
| | ) | |
| AND | ) | Division: |
| | ) | |
| LORETTA AMENT, | ) | |
| | ) | |
| AND | ) | |
| | ) | |
| LORETTA AMENT, AS PERSONAL | ) | |
| REPRESENTATIVE  ON BEHALF OF | ) | **WRONGFUL DEATH** |
| THE ESTATE OF KENNETH | ) | |
| ANTHONY ZERR, | ) | JURY TRIAL DEMANDED |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| GREE USA, INC. | ) | |
| **Serve:** | ) | |
| 4195 Chino Hills Parkway #1026 | ) | |
| Chino Hills, CA 91709 | ) | |
| | ) | |
| GREE ELECTRIC APPLIANCES, | ) | |
| INC. OF ZHUHAI | ) | |
| **Serve:** | ) | |
| 4195 Chino Hills Parkway #1026 | ) | |
| Chino Hills, CA 91709 | ) | |
| | ) | |
| HONG KONG GREE ELECTRIC | ) | |
| APPLIANCES SALES CO., LTD. | ) | |
| **Serve:** | ) | |
| 4195 Chino Hills Parkway #1026 | ) | |
| Chino Hills, CA 91709 | ) | |
| | ) | |
| MJC AMERICA, LTD. | ) | |
| d/b/a SOLEUS INTERNATIONAL, INC. | ) | |
| **Serve:** | ) | |
| 280 S. Lemon Ave., #1507 | ) | |
| Walnut, CA 91788 | ) | |

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

|  |  |
|---|---|
| | ) |
| MJC AMERICA HOLDINGS CO., INC. | ) |
| **Serve:** | ) |
| 280 S. Lemon Ave., #1507 | ) |
| Walnut, CA 91788 | ) |
| | ) |
| Defendants. | ) |

## PETITION

COME NOW Plaintiffs, Brenda Hillmann, Andrew Zerr, Loretta Ament, individually and as the personal representative on behalf of the Estate of Kenneth Zerr, by and through their undersigned attorneys, Evans & Dixon, L.L.C., and for their causes of action, state the following:

### PARTIES

1.    Kenneth and Phyllis Zerr ("the Zerrs"), the natural parents of Brenda Hillmann, Andrew Zerr, and Loretta Ament, tragically passed away in a fire at their home, located at 828 Tall Cedar Court in Wentzville, Missouri 63385 (hereinafter "Subject Property" or "Zerr Residence") on November 10, 2022.

2.    Plaintiff Brenda Hillmann is a resident of the State of Missouri and is the natural daughter of decedents Kenneth and Phyllis Zerr.

3.    Plaintiff Andrew Zerr is a resident of the State of Missouri and is the natural son of decedents Kenneth and Phyllis Zerr.

4.    Plaintiff Loretta Ament is a resident of the State of Missouri and is the natural daughter of decedents Kenneth and Phyllis Zerr.

5.    Brenda Hillmann, Andrew Zerr, and Loretta Ament bring this action pursuant to Mo. Rev. Stat. § 537.080, commonly referred to as the "Missouri Wrongful Death Statute."

6.    Brenda Hillmann, Andrew Zerr, and Loretta Ament are the sole Class 1 members entitled to bring this cause of action under Mo. Rev. Stat. § 537.080.

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

7.      Loretta Ament was appointed as the Personal Representative of the Estate of Kenneth Anthony Zerr by the Probate Division of the Circuit Court of St. Charles County, Missouri on or about February 3, 2023, and is therefore entitled to bring this action on behalf of the Estate of Kenneth Anthony Zerr pursuant to Mo. Rev. Stat. § 537.010 to recover the property damage for the property owned by the decedents that was destroyed as a result of the fire.

8.      Brenda Hillmann resided in the basement of the Subject Property at the time of the fire and sustained damage to her contents and personal property as a direct result of the fire.

9.      Defendant Gree USA, Inc. ("Gree USA") is a California corporation with its principal place of business located at 4195 Chino Hills Parkway #1026 in Chino Hills, California 91709, and at all relevant times herein, was engaged in the business of marketing, distributing, and/or selling certain household appliances including, but not limited to, dehumidifiers, including the dehumidifier at issue in this lawsuit ("Subject Dehumidifier").

10.     Gree USA, Inc. is the agent of Gree Electric Appliances, Inc. of Zhuhai and Hong Kong Gree Electric Appliances Sales Co., Ltd. for purposes of service of process.

11.     Defendant Gree Electric Appliances, Inc. of Zhuhai ("Gree China") is a Chinese business entity that most resembles the U.S. business form of a corporation, with its principal place of business located at West Jinjixi Road, Zhuhai, China, and is a citizen of the People's Republic of China.  At all relevant times herein, Gree China designs, manufactures, sells and distributes dehumidifiers, including the Subject Dehumidifier at issue in this lawsuit.

12.     Gree China is, upon information and belief, engaged in the business of designing, manufacturing, marketing, distributing, branding, advertising, and/or selling certain appliances including, but not limited to, dehumidifiers, including the Subject Dehumidifier at issue in this lawsuit.

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

13.    Defendant Hong Kong Gree Electric Appliances Sales Co., Ltd. ("Gree Hong Kong") is a Hong Kong, China business entity that most resembles the U.S. business form of a corporation, with its principal place of business located at Unit 2612 Miramar Tower, 132 Nathan Road, Tsin Sha Tsui Kowloon, Hong Kong, S.A.R. Gree Hong Kong is a citizen of the People's Republic of China, and at all material times hereto, was in the business of selling and/or distributing electronic appliance products.

14.    Defendant Gree Hong Kong is, upon information and belief, engaged in the business of designing, manufacturing, marketing, distributing, branding, advertising, importing and/or selling certain appliances including, but not limited to, dehumidifiers, including the Subject Dehumidifier at issue in this lawsuit.

15.    Defendant MJC America Ltd. d/b/a Soleus International Inc. was, and still is, a domestic corporation duly organized and existing under the laws of the State of California with its principal place of business located at 280 S. Lemon Ave. #1507, Walnut, California 91788.

16.    Defendant MJC America Holdings Co., Inc. is and was at all times mentioned herein a privately held corporation incorporated under the laws of the State of California, having its principal place of business located at 20035 E. Walnut Drive North, City of Industry, California 91789.   Hereinafter, Defendants MJC America Ltd. d/b/a Soleus International Inc. and MJC America Holdings Co., Ltd. ("MJC America Holdings") are collectively referred to as "MJC".

17.    Gree USA, Gree China, Gree Hong Kong and MJC are collectively referred to as "Defendants."

18.    The United States Department of Justice indicted Gree USA, Gree China and Gree Hong Kong (collectively, "Gree") in the United States District Court for the Central District of California (No. 2:21-cr-00498) claiming, in summary, that Gree knew their dehumidifiers were

4

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

defective, failed to meet applicable safety standards, and could catch fire, but the companies failed to report that information to the Consumer Product Safety Commission ("CPSC").

19.     Gree admitted said charges by entering into a Deferred Prosecution Agreement (see **Exhibit 1**, Deferred Prosecution Agreement, attached hereto and incorporated herein), in which Gree admitted that between 2007 and 2013, they sold more than two million defective dehumidifiers in the United States that were manufactured by Gree China and imported by Gree Hong Kong that had defects that could cause them to overheat and catch fire, and that consumers had reported fires caused by the dehumidifiers.

20.     Those employees knew of the obligation to report dangerous consumer products to the CPSC, but despite that knowledge, Gree USA continued to sell the defective dehumidifiers in the United States for at least another six months.  Gree delayed reporting knowledge of the fires to the CPSC for approximately six months and did not report the defects in the dehumidifiers for approximately nine months.  Ultimately, Gree recalled the defective dehumidifiers more than one year after learning about the products' dangerous defects. (See a compilation of the recalls attached as **Exhibit 2**).

21.     As a result, Gree paid criminal fines and/or restitution in an amount in excess of $91,000,000 and agreed to probation with numerous conditions related to the manufacturing, sale and/or distribution of the defective dehumidifiers.  Probation is still ongoing.

22.     Plaintiffs purchased one of the recalled dehumidifiers and was never notified of the recalls, the defective conditions associated with the dehumidifiers, or the dangerous propensities of the dehumidifiers to cause fires.

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

## THE FIRE

23.     On November 10, 2022, shortly before 12:40 a.m., Kenneth and Phyllis Zerr were asleep in their residence at 828 Tall Cedar Court in Wentzville, Missouri 63385 when their Subject Gree Dehumidifier caught fire.

24.     The Zerrs were cornered back into a closet, both alive, trapped by flames and smoke, unable to escape, while on the phone with a 911 operator.  The 911 call is recorded.

25.     The Zerrs were watching the flames and smoke approach them, alert and communicative, knowing they could not escape the smoke and/or flames.

26.     With the flames and smoke approaching, the Zerrs fought to stay alive by hiding in a closet, and stuffing towels under the door to prevent smoke and/or fire intrusion.

27.     After some time, the Zerrs eventually died, side by side, never able to escape from the closet, as the flames continued to burn their home.

28.     The recalled and defective dehumidifier that the Defendants willfully and maliciously manufactured, sold and/or distributed, while knowing of the defective condition and propensity to start fires—the same dehumidifier that led to a criminal indictment and fines exceeding $91,000,000, as well as countless other fires throughout the United States of America—tragically killed the Zerrs.

29.     As a direct and proximate cause of the defective Subject Dehumidifier, Plaintiffs Brenda Hillmann, Andrew Zerr and Loretta Ament, in their capacities as Class I members under Mo. Rev. Stat. § 537.080, have suffered the following damages:

        a.   Annual pecuniary losses for the remainder of the Kenneth and Phyllis' lives;

        b.   Reasonable value of services for the remainder of Kenneth and Phyllis' lives;

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

c.  Funeral and burial expenses and other costs and expenses incurred in connection with Kenneth and Phyllis' death;

d.  Deprivation of Kenneth and Phyllis' services, consortium, companionship, comfort, instruction, guidance, counsel, training, and support for the remainder of Kenneth and Phyllis' life expectancy;

e.  Pain, suffering, fear, and mental trauma, which Kenneth and Phyllis experienced between the time of the Subject Fire and the time of their deaths;

f.  Medical bills, expenses, and costs; and

g.  Any and all damages allowable for wrongful death pursuant to Mo. Rev. Stat. § 537.080 and § 537.090.

30. As a direct and proximate cause of the defective Subject Dehumidifier, Loretta Ament, as the Personal Representative of the Estate of Kenneth Anthony Zerr, is entitled to bring this action on behalf of the Estate of Kenneth Anthony Zerr to recover for the property damage sustained as a result of the fire, which exceeds $2,000,000.

31. As a direct and proximate cause of the defective Subject Dehumidifier, Brenda Hillmann sustained damage to her personal property and contents located within the Zerr Residence and is therefore bringing this action to recover for her property damage sustained in the fire.

32. The actions of all Defendants were willful, malicious and in conscious disregard for the Zerrs, their property, and their relatives, among many others.

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

**GREE'S DISTRIBUTION OF DEFECTIVE DEHUMIDIFIERS IN THE USA**

33.    From 2007 to September 2013, Gree China was a large Chinese company that manufactured household appliances ("Gree appliances") for sale in and outside of China, including in the United States.  See **Exhibit 1**, Statement of Facts ¶ 1.

34.    From 2007 to September 2013, Gree Hong Kong was a Chinese subsidiary of Gree China that exported Gree appliances to the United States.  See **Exhibit 1**, Statement of Facts ¶ 2.

35.    From 2010 to September 2013, Gree USA was a California corporation with offices in City of Industry, California, and a subsidiary of Gree Hong Kong.  Gree USA sold Gree appliances that were manufactured by Gree China to retailers in the United States.  Those Gree appliances were manufactured by Gree China and imported into the United States by Gree Hong Kong and Gree USA.  See **Exhibit 1**, Statement of Facts ¶ 3.

36.    On April 23, 2010, MJC, a privately-held California-based manufacturer, importer, and distributer of home comfort products, entered into a joint venture agreement with Gree China to promote the sale of Gree China's products throughout the United States.  Pursuant to the joint venture agreement, MJC transferred its existing customer accounts—which included The Home Depot, Inc., Lowes Companies, Inc., Menard, Inc., BJ's Wholesale Club, Inc., and Sears Corp. – to Gree USA, a corporation formed as part of the joint venture, with 51 percent of its stock owned by Gree Hong Kong and the remaining 49 percent owned by MJC.  The parties agreed that Gree USA would primarily market and sell the products manufactured by Gree China.

37.    Gree USA was a joint venture between Gree Hong Kong and MJC America Holdings Co.  See **Exhibit 1**, Statement of Facts ¶ 3.

38.    Gree Hong Kong was the majority owner of Gree USA.  See **Exhibit 1**, Statement of Facts ¶ 3.

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

39.    Gree USA's Chief Executive Officer ("CEO"), Chief Financial Officer ("CFO"), who was the brother of Gree USA's CEO and Chief Administrative Officer ("CAO") were owners of MJC.  Gree USA's CEO, CFO and CAO effectively controlled Gree USA.  See **Exhibit 1**, Statement of Facts ¶ 3.

40.    From 2010 to September 2013, Gree USA sold in the United States dehumidifiers manufactured by Gree China and imported into the United States by Gree Hong Kong.  See **Exhibit 1**, Statement of Facts ¶ 4.

41.    Gree USA and Gree Hong Kong are the alter egos of Gree China, and all three entities operate as one and the same, with Gree China exerting substantial control over the day to day operations of all three entities and with Gree Hong Kong and Gree USA dependent upon Gree China for money, both entities incapable of operating financially without the backing of Gree China.

### JURISDICTION AND VENUE

42.    Venue is proper in this Court pursuant to Mo. Rev. Stat. § 508.010 as Kenneth and Phyllis Zerr, now deceased, both resided in St. Charles County and the acts complained of herein occurred in St. Charles County, Missouri; therefore, venue lies in this honorable Court.

43.    This Court has jurisdiction over this matter because, as alleged in greater detail herein, the Defendants routinely sell its products, including the Subject Dehumidifier, to Missouri consumers and businesses, thereby subjecting themselves to the jurisdiction of Missouri courts pursuant to Mo. Rev. Stat. § 506.500.

44.    Gree USA has an agency relationship for purposes of service of process and jurisdiction with both Gree Hong Kong and Gree China.

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

45.     Service of process upon Gree China and Gree Hong Kong can be accomplished in the United States and without implicating the Hague Convention, as demonstrated in at least the following cases in which Gree China and/or Gree Hong Kong were served in the United States, filed a motion to dismiss for improper service, and the motion was denied with service being deemed proper. *State Farm Fire & Cas. Co. v. Gree USA, Inc., et al.,* No. 3:18-cv-00349 RLM-MGG, 2019 WL 4674611 (N.D. Ind. Sept. 25, 2019); *Erie Ins. Exch. V. Gree USA, Inc., et al.,* No. 3:CV-18-2126, 2019 WL 1405854 (M.D. Pa. Mar. 28, 2019); *Nationwide Mut. Ins. Co. v. Gree USA, Inc., et al.,* No. CV 18-1105, 2019 WL 1244093 (W.D. Pa. Mar. 1, 2019), *report and recommendations adopted*, No. CV 18-1105, 2019 WL 1243280 (W.D. Pa. Mar. 18, 2019); *Nationwide Prop. & Cas. Ins. Co. v. Gree USA, Inc., et al.,* No. 2:18-cv-00881, 2018 WL 6419955, (S.D. Oh. Dec. 6, 2018); *Nationwide General Insurance Company v. Gree USA, Inc., et al.,* 3:18-cv-12607 (E.D. Mi. Nov. 7, 2018).   The Hague Convention is not implicated when service of process is made in the United States.

### GREE'S FALSIFICATION OF UL CERTIFICATION

46.     From at least January 2008 to late 2013, Defendants designed, manufactured, supplied, distributed, imported, marketed, and sold approximately 2.5 million consumer dehumidifiers throughout the United States which were included in a series of recalls initially announced in 2013, expanded in 2013, expanded again in 2014, and re-announced in 2016 (hereinafter the "Recalled Dehumidifiers").   The recalls were based on serious fire hazards associated with the Recalled Dehumidifiers.  See **Exhibit 2.**

47.     As part of its plan to penetrate the U.S. consumer market, Gree China needed a brand name that major U.S. retailers were familiar and comfortable with, so that these retailers would purchase products manufactured by Gree China.

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

48.     Starting in 2008/2009, Gree China, for the purpose of increasing sales in the United States and for the purpose of associating itself with a brand familiar to U.S. retailers, approached MJC in California about MJC selling and promoting Gree products to U.S. retailers, including Home Depot, Sears, Lowe's and other similar retail chains.

49.     Starting in 2010, Gree China and MJC agreed to brand dehumidifiers under the name "SoleusAir powered by Gree" as a test case to determine if MJC's Soleus brand could assist Gree China in penetrating the U.S. market.

50.     From January of 2010 until October of 2010, Gree China exported at least 421,000 dehumidifiers bearing the "SoleusAir powered by Gree" brand to MJC in California for distribution to U.S. retailers, including retailers in Missouri.

51.     Gree China and Gree Hong Kong represented to MJC, Gree USA, retailers and the general public that its dehumidifiers were certified by Underwriter's Laboratory ("UL") and that the design and materials used in the manufacturing of its dehumidifiers complied with UL Standard 474 and Standard 94.

52.     As part of the UL certification process, Gree China and Gree Hong Kong made representations to UL that the plastics used in the construction of its dehumidifiers complied with the fire rating in UL 94.

53.     UL 94 requires that consumer electric products, including dehumidifiers, use plastics that have specific burn and flame rates in order to prevent, reduce and limit the risk of fire hazards.

54.     In its application for UL certification under UL 474, Gree China represented that the materials and plastics used to manufacture and construct its dehumidifiers were compliant with UL 94.

11

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

55.    Gree China and Gree Hong Kong made these false and misleading representations knowing that the materials and plastics used to manufacture and construct its dehumidifiers were not compliant with UL 94's burn and flame rate requirements.

56.    Gree China and Gree Hong Kong made these false and misleading representations knowing that UL was unable to independently conduct the burn/flame resistance testing set forth in UL 94, and UL relied on Gree China's representations in the certification documents stating that Gree China had these tests performed and the dehumidifiers complied with UL 94.

57.    U.S. retailers will not purchase and sell dehumidifiers that are not certified by UL.

58.    U.S. consumers will not and cannot purchase dehumidifiers that are not certified by UL because U.S. retailers will not purchase or sell non-UL listed electric products.

59.    Gree China's and Gree Hong Kong's falsification of the UL Certification process was done for the purposes of misleading UL into improperly certifying the dehumidifiers and, in so doing, Gree China and Gree Hong Kong defrauded and misled U.S. retailers and consumers into purchasing its dehumidifiers on the false belief that the dehumidifiers were designed and manufactured in compliance with UL standards.

60.    Although the Defendants knew that the Recalled Dehumidifiers were not compliant with UL flammability standards, they sold, offered for sale, distributed in commerce, and imported the dehumidifiers bearing the UL mark, with the specific intent to defraud consumers, including the Zerrs and their family members.

61.    From 2008 until the present time, Gree China was an original equipment manufacturer for General Electric ("GE") branded dehumidifiers.

62.    In late 2010, GE instructed Gree China to make certain design changes and product improvements to GE branded, Gree China manufactured dehumidifiers.

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

63.    The design changes were mandated by GE due to product failure issues with the dehumidifiers, including overheating issues and fires.

64.    The GE mandated design changes required a) the removal of electrical terminal sleeves that used PVC materials; b) the use of UL 94 V0 rated plastics for structural components of the dehumidifiers, including the fan shroud base, center support and external cabinet; and c) the use of UL 94 flammability rated materials for the terminal cover.

65.    Starting in its January 2011 production run, Gree China made the above requested changes for GE dehumidifiers only.

66.    Gree China did not make the GE mandated design changes for dehumidifiers manufactured under other brand names, including the dehumidifiers that it was manufacturing and selling to Gree USA and MJC, including but not limited to the Subject Dehumidifier.

67.    Gree China did not make the GE mandated design changes despite actual knowledge that the design and materials defects identified by GE were causing Gree China's dehumidifiers to fail, overheat, and catch on fire.

68.    Since January of 2011, Gree China manufactured and sold approximately 1,400,000 dehumidifiers to Gree USA and MJC in California that Gree China knew were defective because they did not incorporate the GE mandated design and materials changes.

69.    As is set forth in detail above, the majority owner of Gree USA is Gree Hong Kong, a wholly owned subsidiary of Gree China.

70.    The common officers and directors of Gree China and Gree USA knew that the dehumidifiers were not compliant with UL standards as they had approved the GE design changes and they also approved the continued manufacture and sale of dehumidifiers for other brands without the GE mandated design changes.

13

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

**THE COVER-UP**

71.    In July of 2012, after receiving an unusually high number of consumer complaints, after having witnessed a YouTube video showing a Gree dehumidifier in flames, and after being contacted by the CPSC to respond to a consumer complaint of a dehumidifier that overheated and emitted smoke, Gree USA became concerned that the Gree China manufactured dehumidifiers were fire safety hazards.  See **Exhibit 1**, Statement of Facts ¶ 8.

72.    Gree USA sent the video to Gree Hong Kong, copying other Gree USA employees and a Gree China employee, labeling the email "urgent," and said the video was "scarey [sic] to just watch" and exhibited a "very serious issue with GREE product quality."  See **Exhibit 1**, Statement of Facts ¶ 8.

73.    Gree USA also stated that the video was the third reported instance of a Gree appliance catching fire since in or about June 2012 and that it could lead to lawsuits against Gree USA as well as a recall costing millions of dollars. See **Exhibit 1**, Statement of Facts ¶ 8.

74.     In response to these concerns, the owners of MJC and officers and directors of Gree USA, contacted Gree China to express their concerns and to request technical and engineering assistance.

75.    Gree Hong Kong replied to the email from Gree USA that same day and stated in his reply email that "[w]e also felt shock when we watched the video [,]" and that he had sent the video to Gree China's Quality Department and to Gree China's chief engineer who was also its senior vice president for research and development.  See **Exhibit 1**, Statement of Facts ¶ 9.

76.    From July of 2012 until September 2012, Gree China and Gree Hong Kong responded to the concerns expressed by Gree USA by stating that the product was not defective

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

and was not causing fires despite Gree China's actual knowledge of the falsified UL certification and the GE mandated design changes.

77.    On September 4, 2012, Gree USA emailed Gree Hong Kong about the Gree dehumidifiers, saying that Gree USA had tested its dehumidifier inventory in Gree USA's warehouse and the testing showed that these dehumidifiers burned.  See **Exhibit 1**, Statement of Facts ¶ 11.

78.    Gree USA added in the September 4, 2012 email that "the result is not like what you have told us" regarding how many units were involved because "the result shows the units all can catch the fire and apparently the material is not according to UL standard!  I don't think the factory is telling us the fact and truth…"  See **Exhibit 1**, Statement of Facts ¶ 11.

79.    On September 10, 2012, Gree USA emailed the highest-ranking person at Gree China, the chairperson of Gree China's board who also served as Gree China's President and CEO, stating that "GREE headquarters" had told him not to report that the Gree dehumidifiers may be defective and catch on fire and that they might have overheating parts and plastic parts that could burn because the plastic did not meet the UL standard for fire resistance.  Gree USA also warned in his email that any company or individual who withheld from the CPSC information about a dangerous product could cause severe punishment, including criminal prosecution.  Gree USA also asked how Gree China would pay future costs related to the Gree dehumidifiers, including any potential harm to MJC, a company owned by Gree USA's CEO, CFO and CAO which also sold the defective Gree dehumidifiers.  Nobody replied to this email. See **Exhibit 1**, Statement of Facts ¶ 13.

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

80.     In September of 2012, employees of Gree China and Gree Hong Kong traveled to California to meet with Gree USA for the purposes of discussing the dehumidifier safety issues. See **Exhibit 1**, Statement of Facts ¶ 15.

81.     During the September 19, 2012 meeting, Larry Lam, an employee of Gree Hong Kong, and an engineer known as Ju from Gree China, informed Gree USA that Gree China and Gree Hong Kong were aware that the plastics used in constructing the dehumidifiers were not compliant with UL 94 and UL 474. See **Exhibit 1**, Statement of Facts ¶ 16.

82.     During that September 19, 2012 meeting, Gree Hong Kong stated that Gree China's testing of the Gree dehumidifiers revealed two defects: (1) the dehumidifiers used plastics that did not meet UL standards for UL resistance; and (2) electrical arcing caused by the dehumidifiers' compressors overheating could burn the non-UL standard plastic used in these dehumidifiers.  See **Exhibit 1**, Statement of Facts ¶ 16.

83.     In this September 19, 2012 meeting, Larry Lam and engineer Ju admitted that Gree China knowingly submitted test sample dehumidifiers to UL which did not comply with UL 94 and UL 474 because Gree China knew that UL relied on manufacturers to test their products for UL 94 burn rate compliance and that UL would not conduct independent burn rate testing on Gree China's dehumidifiers. See **Exhibit 1**, Statement of Facts ¶ 18.

84.     At the conclusion of the meeting, Gree China, Gree USA, MJC and Gree Hong Kong agreed not to recall their defective products, or to report the defective design and defective materials issues to the CPSC, its retail customers or the general public to avoid adverse publicity and loss of sales. See **Exhibit 1**, Statement of Facts ¶ 17.

85.     The decision not to recall their defective products was based on the instructions given from Gree China and Gree Hong Kong to Gree USA and MJC.

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

86.    As part of this decision, Gree China and Gree Hong Kong wanted to delay any recall so that Gree China could continue to capture market share and sales and so that Gree China had time to change its manufacturing lines and supply chains to incorporate the design changes and then to use fire resistant materials. See **Exhibit 1**, Statement of Facts ¶ 17, 18.

87.    In late-October 2012, Gree USA sent two Gree dehumidifiers to an independent testing company for testing.  On November 5, 2012, the testing company wrote a report confirming and reiterating that the Gree dehumidifiers were defective because the compressors in the dehumidifiers could run continuously and thereby overheat to an "extreme high temperature."  Gree USA received this report on November 6, 2012 and immediately sent the report to Gree Hong Kong, who was responsible for the importation and sale of the Gree dehumidifiers in the U.S.  See **Exhibit 1**, Statement of Facts ¶ 27.

88.    From September of 2012 until September of 2013, Gree USA and MJC continued to receive consumer complaints of overheating and fires caused by their dehumidifiers. See **Exhibit 1**, Statement of Facts ¶ 21, 25.

89.    Gree USA, MJC, Gree China and Gree Hong Kong continued to sell their defective and unreasonably dangerous dehumidifiers throughout the United States until September of 2013, when the dehumidifiers were recalled pursuant to a voluntary recall program with the CPSC.

### THE RECALL OF GREE'S DEHUMIDIFIERS

90.    On September 12, 2013, after more than 471 fires and approximately $2,725,000 in property damage, Defendant Gree, along with the CPSC, announced a recall on approximately 2.2 million dehumidifiers distributed and sold in the U.S. from January 2005 through August 2013 because of fire and burn hazards. See **Exhibit 2.**

17

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

91.    More than a full year prior to the recall date, the Defendants were each aware of the dangerous defects with the Recalled Dehumidifiers.  Despite this actual knowledge, each of the Defendants failed to ask retailers to issue a "stop sale" of the products until June 2013.  Even then, not all retailers were notified.

92.    After the September 12, 2013 Recall, Gree issued press releases downplaying the severity of the recall.

93.    On January 30, 2014, the recall was expanded to include 350,000 GE-brand dehumidifiers that had been manufactured by Gree China and sold by Gree China between January of 2008 and December of 2010.

94.    The recall was re-announced on May 15, 2014 due to a significant increase in the number of overheating events and fires caused by the defective Gree dehumidifiers.

95.    In the months between September of 2013 and May of 2014, the number of overheating dehumidifiers increased from 171 to 471 and the number of fires almost tripled from 46 to 121.

### U.S. DEPARTMENT OF JUSTICE INVESTIGATION

96.    In response to information provided to the CPSC, the CPSC instituted a civil penalty investigation against Gree China, Gree Hong Kong and Gree USA.

97.    The civil penalty investigation alleged that the Defendants a) knowingly failed to report a defect and unreasonable risk of serious injury to the CPSC; b) knowingly made misrepresentations to CPSC staff during its investigation; and c) knowingly sold dehumidifiers bearing the UL safety certification mark knowing that the dehumidifiers did not meet UL flammability standards.

18

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

98.     On or about March 14, 2016, Gree China, Gree Hong Kong and Gree USA entered a Settlement Agreement with the CPSC ("CPSC/Gree Settlement Agreement").

99.     Pursuant to the CPSC/Gree Settlement Agreement, Gree China, Gree Hong Kong and Gree USA admitted that they knew that the dehumidifiers were not compliant with the UL flammability standards and sold, offered to sell, distributed in commerce and imported the dehumidifiers bearing the UL registered safety certification mark despite knowing that said dehumidifiers were not compliant with UL standards and was not authorized by UL in violation of section 19(a)(12) of the CPSA, 15 U.S.C. § 2068 (a)(12).

100.     On March 25, 2016, CPSC's Office of General Counsel obtained the provisionally accepted maximum penalty for each violation alleged by the CPSC, and the Gree Defendants hereto agreed to pay a civil monetary penalty of $15,450,000 and to implement a compliance program. This civil penalty is a record settlement, with the Defendants being the first alleged violators of CPSC rules to reach the per violation maximum imposed by the Consumer Product Safety Improvement Act of 2008.

101.     Audio recordings exist that demonstrate, in part, the lengths to which the Defendants went to cover up the defects with their Recalled Dehumidifiers becoming public and the unwillingness of Chairwoman Dong Ming Zhu to recall products all Defendants knew were defective no later than mid-2012.

102.     At the direction of "top management," Gree China instructed all of the Defendants to delay or prevent a recall, telling all Defendants the companies' priorities should be on the company's reputation and ensuring the company's revenues and profits were not impacted, regardless of the dangers posed to U.S. consumers.

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

103.    On November 29, 2016, more than four years after becoming aware of the hazards associated with their dehumidifiers, and after more than 450 fires, 2,000 reported incidents of dehumidifiers overheating, and nearly $20,000,000 in property damage, Gree, along with the CPSC, announced a recall of approximately 2.5 million dehumidifiers distributed and sold in the U.S. from January 2005 through August 2013 because of serious fire and burn hazards to consumers.

104.    The Subject Dehumidifier was included as part of the recalls.

### GREE CRIMINAL PROSECUTION

105.    Upon information and belief, in April 2019, individuals who were executives of MJC and Gree USA at times relevant to the facts pertaining to this lawsuit were indicted on federal criminal charges for actions related to defective dehumidifiers and associated cover-up of information.

106.    In October 2021, the Gree Defendants were criminally indicted. Gree USA pled guilty to a felony and Gree China and Gree Hong Kong entered into a deferred prosecution agreement, referenced herein, and marked as **Exhibit 1**. All three companies consented to a "Statement of Facts" included in their plea agreements demonstrating their criminal, unconscionable conduct.

107.    As part of a plea agreement with the U.S. Department of Justice, the Defendants admitted their actions were malicious, willful and wanton and were inflicted by the Defendants with malice, fraud, gross negligence, intentional disregard, and oppressiveness in at least the following ways:

20

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

a. Lying to the general public, the Plaintiffs and their parents, and the CPSC regarding the safety of the Recalled Dehumidifiers, including the Subject Dehumidifier;

b. Selling dehumidifiers they knew were unsafe, including the Subject Dehumidifier at issue in this case;

c. Refusing to alert retailers to known, extreme dangers with the Subject Dehumidifier and other similar products in order to stop their sale as quickly as possible;

d. Using the "UL" mark fraudulently and indicating the Subject Dehumidifier met certain standards that it did not;

e. Intentionally failing to comply with Section 15 of the Consumer Product Safety Act and/or to report the known defects with the product in a timely manner to the CPSC; and

f. Slow-pedaling and delaying a full and proper recall such that hundreds of thousands of additional dangerous, defective dehumidifiers, including the Subject Dehumidifier, reached the public that could have been prevented had the Defendants acted lawfully and otherwise taken appropriate action.

## <u>COUNT I – STRICT LIABILITY</u>
### (ALL DEFENDANTS)

108.    Plaintiffs incorporate herein by reference the allegations contained in paragraphs 1 through 107 of this Petition as if fully set forth herein.

109.    The Subject Dehumidifier was designed, assembled, installed, manufactured, sold, distributed, and introduced into the stream of commerce by Defendants in the course of its ordinary business.

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

110.    At the time of purchase, the Subject Dehumidifier was then in a defective condition and unreasonably dangerous when put to a reasonably anticipated use in that it was designed, assembled, installed, manufactured, sold and distributed by Defendants as defective.

111.    The Subject Dehumidifier was used in a manner reasonably anticipated and was in its original condition.

112.    As a direct and proximate result of such defective and unreasonably dangerous condition, the Subject Dehumidifier caused a fire and the following damages:

    a.  Plaintiffs, Brenda Hillman, Andrew Zerr and Loretta Ament, as Class 1 members in this wrongful death action, are entitled to recover what is fair and just for the death of their parents, plus funeral expenses, loss of the services, consortium, companionship, comfort, instruction, guidance, counsel, training and support, damages suffered by their parents between the time the fire started and their death, including but not limited to the trauma, terror, sensations, feelings and emotions a person experiences when death is imminent, and any and all damages allowable for wrongful death pursuant to Mo. Rev. Stat. § 537.080 and § 537.090, in an amount to be determined by a jury;

    b.  Loretta Ament, as the Personal Representative for the Estate of Kenneth Zerr, is entitled recover for the property damage to the Zerr Residence and their contents; and

    c.  Brenda Hillmann, individually, is entitled to recover for the damage sustained to her personal property and contents within the home, plus alternative living expenses.

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

WHEREFORE, Plaintiffs pray for damages against Defendants in an amount in excess of $25,000.00, plus costs, attorneys' fees, pre and post judgment interest, and for such other and further relief as the Court may deem just and proper under the circumstances.

### COUNT II – STRICT LIABILITY – FAILURE TO WARN
### (ALL DEFENDANTS)

113.    Plaintiffs incorporate herein by reference the allegations contained in paragraphs 1 through 112 of this Petition as if fully set forth herein.

114.    Defendants designed, manufactured, assembled, installed, sold, distributed and introduced into the stream of commerce the Subject Dehumidifier in the course of its business.

115.    At the time of purchase, the Subject Dehumidifier was then in a defective condition unreasonably dangerous when put to a reasonably anticipated use in that it was designed, manufactured, assembled, installed, sold, distributed, and introduced into the stream of commerce by Defendants as defective, and Defendants failed to have any devices to prevent defects such as the type which caused the dangerous condition or situation wherein a fire would be likely and inevitable.

116.    Defendants did not give an adequate warning of the unreasonable danger.

117.    The Subject Dehumidifier was used in a manner reasonably anticipated and was in its original condition.

118.    As a direct and proximate result of such defective and unreasonably dangerous condition, the Subject Dehumidifier caused a fire and the following damages:

> a. Plaintiffs, Brenda Hillman, Andrew Zerr and Loretta Ament, as Class 1 members in this wrongful death action, are entitled to recover what is fair and just for the death of their parents, plus funeral expenses, loss of the services, consortium, companionship, comfort, instruction, guidance,

23

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

counsel, training and support, damages suffered by their parents between the time the fire started and their death, including but not limited to the trauma, terror, sensations, feelings and emotions a person experiences when death is imminent, and any and all damages allowable for wrongful death pursuant to Mo. Rev. Stat. § 537.080 and § 537.090, in an amount to be determined by a jury;

b. Loretta Ament, as the Personal Representative for the Estate of Kenneth Zerr, is entitled recover for the property damage to the Zerr Residence and their contents; and

c. Brenda Hillmann, individually, is entitled to recover for the damage sustained to her personal property and contents within the home, plus alternative living expenses.

WHEREFORE, Plaintiffs pray for damages against Defendants in an amount in excess of $25,000.00, plus costs, attorneys' fees, pre and post judgment interest, and for such other and further relief as the Court may deem just and proper under the circumstances.

## COUNT III – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (ALL DEFENDANTS)

119. Plaintiffs incorporate herein by reference the allegations contained in paragraphs 1 through 118 of this Petition as if fully set forth herein.

120. Defendants designed, manufactured, sold, assembled, distributed, and introduced into the stream of commerce the Subject Dehumidifier in the process of its usual and customary business.

121. When Defendants designed, manufactured, sold, assembled, distributed, and introduced into the stream of commerce the Subject Dehumidifier, it was not fit for its ordinary

24

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

purpose because the Subject Dehumidifier was designed, manufactured, sold, distributed, and introduced into the stream of commerce by Defendants as defective, and the Zerrs used the Subject Dehumidifier for its ordinary purpose and gave Defendants notice that it was not fit for ordinary purposes.

122. As a result of the Subject Dehumidifier not being fit for its ordinary purpose, the Subject Dehumidifier caused a fire and the following damages:

    a. Plaintiffs, Brenda Hillman, Andrew Zerr and Loretta Ament, as Class 1 members in this wrongful death action, are entitled to recover what is fair and just for the death of their parents, plus funeral expenses, loss of the services, consortium, companionship, comfort, instruction, guidance, counsel, training and support, damages suffered by their parents between the time the fire started and their death, including but not limited to the trauma, terror, sensations, feelings and emotions a person experiences when death is imminent, and any and all damages allowable for wrongful death pursuant to Mo. Rev. Stat. § 537.080 and § 537.090, in an amount to be determined by a jury;

    b. Loretta Ament, as the Personal Representative for the Estate of Kenneth Zerr, is entitled recover for the property damage to the Zerr Residence and their contents; and

    c. Brenda Hillmann, individually, is entitled to recover for the damage sustained to her personal property and contents within the home, plus alternative living expenses.

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

WHEREFORE, Plaintiffs pray for damages against Defendants in an amount in excess of $25,000.00, plus costs, attorneys' fees, pre and post judgment interest, and for such other and further relief as the Court may deem just and proper under the circumstances.

## COUNT IV – PRODUCT LIABILITY – NEGLIGENCE
### (ALL DEFENDANTS)

123.    Plaintiffs incorporate herein by reference the allegations contained in paragraphs 1 through 122 of this Petition as if fully set forth herein.

124.    Defendants designed, manufactured, assembled, tested, inspected, sold, distributed and placed into the stream of commerce the Subject Dehumidifier in the process of its usual and customary business and had a duty to protect Plaintiffs from foreseeable and unreasonable risk of harm.

125.    Defendants, individually and through the acts of its actual and apparent agents, breached this duty, by among other things, negligently designing, manufacturing, assembling, testing, inspecting, selling, and/or distributing the Subject Dehumidifier that was defective.

126.    As set forth more fully above, Defendants knew or should have known that the Subject Dehumidifier it designed, manufactured, assembled, tested, inspected, sold, distributed and placed into the stream of commerce, in ordinary and foreseeable use, created unreasonable safety risks and would fail to perform as intended, resulting in fires, deaths and related property damage.

127.    Defendants knew or should have known that the Subject Dehumidifier created dangerous and unreasonable safety risks as the Subject Dehumidifier had defects which caused it to overheat, smoke, catch fire, and ignite other combustible materials in homes and businesses that could cause catastrophic deaths, personal injuries, and/or property damage.

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

128.    Based on this knowledge, Defendants had a duty to disclose to the Plaintiffs the serious safety risks created by the Subject Dehumidifier, and a duty to disclose the defective nature of the Subject Dehumidifier.

129.    Defendants further had a duty not to put the defective Subject Dehumidifier on the market and a continued duty to replace their unsafe Dehumidifier, remove their unsafe Dehumidifier from the market and recall their unsafe Dehumidifier.

130.    Defendants failed to exercise reasonable care with respect to the design, manufacture, production, testing, inspection, marketing, distribution, and sale of the Subject Dehumidifier, by among other things, failing to design and manufacture the Subject Dehumidifier in compliance with UL requirements, failing to design and manufacture the Subject Dehumidifier in a manner to ensure that under normal intended usage the Subject Dehumidifier would not fail and catch fire, and by failing to undertake a reasonable recall of the Subject Dehumidifier.

131.    Defendants failed to exercise reasonable care in that they failed to adequately and sufficiently warn consumers and users, either directly or indirectly, of the uniform defects in the Subject Dehumidifier.

132.    Defendants failed to exercise reasonable care when they knew of the safety risks posed by the Subject Dehumidifier and actively concealed those risks from the Zerrs and the Plaintiffs, among others.

133.    Defendants failed to recall the Subject Dehumidifier when they had actual knowledge that the Subject Dehumidifier was a fire hazard.

134.    As a direct and proximate result of the negligent acts set forth above, the Subject Dehumidifier was purchased without knowledge of these defects or their serious safety risks.

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

135.    As a direct and proximate result of Defendants' negligence, the Subject Dehumidifier caused a fire and the following damages:

    a.  Plaintiffs, Brenda Hillman, Andrew Zerr and Loretta Ament, as Class 1 members in this wrongful death action, are entitled to recover what is fair and just for the death of their parents, plus funeral expenses, loss of the services, consortium, companionship, comfort, instruction, guidance, counsel, training and support, damages suffered by their parents between the time the fire started and their death, including but not limited to the trauma, terror, sensations, feelings and emotions a person experiences when death is imminent, and any and all damages allowable for wrongful death pursuant to Mo. Rev. Stat. § 537.080 and § 537.090, in an amount to be determined by a jury;

    b.  Loretta Ament, as the Personal Representative for the Estate of Kenneth Zerr, is entitled recover for the property damage to the Zerr Residence and their contents; and

    c.  Brenda Hillmann, individually, is entitled to recover for the damage sustained to her personal property and contents within the home, plus alternative living expenses.

WHEREFORE, Plaintiffs pray for damages against Defendants in an amount in excess of $25,000.00, plus costs, attorneys' fees, pre and post judgment interest, and for such other and further relief as the Court may deem just and proper under the circumstances.

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

## COUNT V – BREACH OF EXPRESS WARRANTY
### (ALL DEFENDANTS)

136. Plaintiffs incorporate herein by reference the allegations contained in paragraphs 1 through 135 of this Petition as if fully set forth herein.

137. Defendants designed, manufactured, assembled, installed, sold, distributed, and introduced into the stream of commerce the Subject Dehumidifier in the ordinary course of its business.

138. Defendants represented that the Subject Dehumidifier was in good working order and was fit for use as a dehumidifier.

139. The aforesaid representations were material factors in inducing the Plaintiffs to acquire the Subject Dehumidifier.

140. The Subject Dehumidifier did not conform to the aforesaid representations, in that, among other things, the Subject Dehumidifier was designed, manufactured, sold, assembled, distributed, and introduced into the stream of commerce by Defendants as defective and unreasonably dangerous.

141. The aforesaid non-conformities caused the Subject Dehumidifier to fail, allowing it to become defective and catch on fire so that Plaintiffs were not able to use the Subject Dehumidifier in a reasonable manner.

142. Plaintiffs notified Defendants of said non-conformities.

143. As a direct and proximate result of such breach, the Subject Dehumidifier caused a fire and the following damages:

> a. Plaintiffs, Brenda Hillman, Andrew Zerr and Loretta Ament, as Class 1 members in this wrongful death action, are entitled to recover what is fair and just for the death of their parents, plus funeral expenses, loss of the

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

services, consortium, companionship, comfort, instruction, guidance, counsel, training and support, damages suffered by their parents between the time the fire started and their death, including but not limited to the trauma, terror, sensations, feelings and emotions a person experiences when death is imminent, and any and all damages allowable for wrongful death pursuant to Mo. Rev. Stat. § 537.080 and § 537.090, in an amount to be determined by a jury;

b.  Loretta Ament, as the Personal Representative for the Estate of Kenneth Zerr, is entitled recover for the property damage to the Zerr Residence and their contents; and

c.  Brenda Hillmann, individually, is entitled to recover for the damage sustained to her personal property and contents within the home, plus alternative living expenses.

WHEREFORE, Plaintiffs pray for damages against Defendants in an amount in excess of $25,000.00, plus costs, attorneys' fees, pre and post judgment interest, and for such other and further relief as the Court may deem just and proper under the circumstances.

## COUNT VI – VIOLATION OF MISSOURI MERCHANDISING PRACTICES ACT
### (PLAINTIFF BRENDA HILLMANN v. ALL DEFENDANTS)

144.    Plaintiff Brenda Hillmann incorporates herein by reference the allegations contained in paragraphs 1 through 143 of this Petition as if fully set forth herein.

145.    Plaintiff Brenda Hillmann purchased the Subject Dehumidifier from Defendants and Defendants represented to Plaintiff Brenda Hillmann that the Subject Dehumidifier was free from defects in material or workmanship.

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

146.     Plaintiff Brenda Hillmann purchased the Subject Dehumidifier from Defendants to be used primarily for personal or household purposes.

147.     In connection with the sale, advertisement and distribution of the Subject Dehumidifier, Defendants misrepresented that the Subject Dehumidifier was free from defects in material or workmanship in that the Subject Dehumidifier was defective and susceptible to failing, in violation of Mo. Rev. Stat. § 407.020 and Mo. Rev. Stat. § 407.025.

148.     Because of Defendants breach of the implied or expressed warranty, Plaintiff Brenda Hillmann was damaged in an amount in excess of $25,000.

149.     In addition, pursuant to of Mo. Rev. Stat. § 407.025, Plaintiff Brenda Hillmann is entitled to punitive damages, attorneys' fees, and costs, plus all other equitable relief as it deems necessary or proper to protect Plaintiff from these unlawful acts.

WHEREFORE, Plaintiff Brenda Hillmann prays for damages against Defendants in an amount in excess of $25,000.00, plus costs, attorneys' fees and punitive damages as permitted under the Missouri Merchandising Practices Act (Mo. Rev. Stat. § 407.020 and Mo. Rev. Stat. § 407.025), pre and post judgment interest, and for such other and further relief as the Court may deem just and proper under the circumstances.

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

Respectfully submitted,

_____

Richard D. Gerber #34384
Matt R. Leffler #62110
Matthew M. McArthur #63068
EVANS & DIXON, L.L.C.
211 N. Broadway, Suite 2500
St. Louis, Missouri 63102
(314) 552-4063
(314) 884-4463 (fax)
ATTORNEYS FOR PLAINTIFF
rgerber@evans-dixon.com
mleffler@evans-dixon.com
mmcarthur@evans-dixon.com

#5810241

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JOSEPH O. JOHNS (Cal. Bar No. 144524)
DENNIS MITCHELL (Cal. Bar No. 116039)
Assistant United States Attorneys
Environmental & Community Safety
Crimes Section
  1300 United States Courthouse
  312 North Spring Street
  Los Angeles, California 90012
  Telephone:  (213) 894-4536
  Facsimile:  (213) 894-6436
  E-mail:  joseph.johns@usdoj.gov

GUSTAV W. EYLER
Director
United States Department of Justice
Consumer Protection Branch
ALLAN GORDUS
NATALIE N. SANDERS
MARYANN N. MCGUIRE
Trial Attorneys
  450 5th St NW, Suite 6400 South
  Washington, DC 20001
  Telephone: (202) 307-1862
  Facsimile: (202) 514-8742
  E-mail: allan.gordus@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>     v.<br><br>GREE ELECTRIC APPLIANCES, INC.<br>  OF ZHUHAI, and<br>HONG KONG GREE ELECTRIC<br>  APPLIANCES SALES CO., LTD.,<br><br>   Defendants. | No. 2:21-CR-00498-MCS<br><br>DEFERRED PROSECUTION AGREEMENT FOR DEFENDANTS GREE ELECTRIC APPLIANCES, INC. OF ZHUHAI, AND HONG KONG GREE ELECTRIC APPLIANCES SALES CO., LTD. |

EXHIBIT
1

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

1. This constitutes the deferred prosecution agreement between defendant GREE ELECTRIC APPLIANCES, INC. OF ZHUHAI ("Gree Zhuhai") and defendant HONG KONG GREE ELECTRIC APPLIANCES SALES CO., LTD. ("Gree Hong Kong") and the United States Department of Justice's Consumer Protection Branch ("CPB") and the United States Attorney's Office for the Central District of California ("USAO" and collectively with the CPB, the "government") in the above-captioned case. This agreement is limited to the CPB and the USAO, on the one hand, and Gree Zhuhai and Gree Hong Kong, on the other, and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

<u>GREE ZHUHAI'S AND GREE HONG KONG'S OBLIGATIONS</u>

2. Gree Zhuhai and Gree Hong Kong agree to:

a. No later than ten (10) business days after the Effective Date of this agreement, pay the forfeiture and monetary penalty described in Paragraphs 27 and 28 of this agreement respectively.

b. Pay restitution as set forth in Paragraphs 17-26 of this agreement.

c. Sign, file, and enter a Stipulation Regarding Request for (1) Continuance of Trial Date and (2) Findings of Excludable Time Periods Pursuant to Speedy Trial Act, in the form attached to this agreement as Exhibit E or a substantially similar form.

d. Comply with all terms in this agreement and the Enhanced Compliance Measures attached hereto as Exhibit D, which is incorporated herein by reference.

2

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

e. Admit, accept, and acknowledge responsibility for the acts of their officers, employees, and agents as set forth in this agreement and the Statement of Facts attached hereto as Exhibit B.

f. Not contest or contradict any facts or information agreed to in this agreement and the Statement of Facts attached hereto as Exhibit B or their admissibility in proceedings related to this agreement.

g. Appear for all court appearances, obey all conditions of any bond, and obey any other ongoing court order in this matter.

h. Cooperate with the government as set forth in Paragraph 16 of this agreement.

i. Not commit any federal, state, or local crime.

j. Be truthful at all times with the government and the Court.

<u>THE GOVERNMENT'S OBLIGATIONS</u>

3. The government agrees to:

a. Sign, file, and enter a Stipulation Regarding Request for (1) Continuance of Trial Date and (2) Findings of Excludable Time Periods Pursuant to Speedy Trial Act, in the form attached to this agreement as Exhibit E or a substantially similar form.

b. If Gree Zhuhai and Gree Hong Kong are in full compliance with all of their obligations under this agreement at the conclusion of the deferred prosecution term described in Paragraphs 6-10, within 15 calendar days of the conclusion of the term, move to dismiss the one-count Information.

c. Except for criminal tax violations (including conspiracy to commit such violations chargeable under 18 U.S.C. § 371), not further criminally prosecute Gree Zhuhai or Gree Hong

3

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

Kong for criminal and/or civil violations arising out of their conduct described in this agreement and the Statement of Facts attached to this agreement as Exhibit B (the "Covered Conduct"). Gree Zhuhai and Gree Hong Kong understand that the government is free to prosecute them criminally for any other unlawful past conduct or any unlawful conduct that occurs after the date of this agreement.

WAIVER OF INDICTMENT AND VENUE

4.    Gree Zhuhai and Gree Hong Kong acknowledge and agree that the government will file a one-count information in the United States District Court for the Central District of California, in the form attached to this agreement as Exhibit A or a substantially similar form, that charges Gree Zhuhai and Gree Hong Kong with Failure to Furnish Information Required by 15 U.S.C. § 2064(b), in violation of 15 U.S.C. §§ 2068(a)(4) and 2070 (the "Information").

5.    Having been fully advised by their attorneys, Gree Zhuhai and Gree Hong Kong hereby knowingly, voluntarily, and intelligently waive, relinquish, and give up:

a.    Any right to indictment on the charge in the Information;

b.    All rights to a speedy trial on the charge in the Information pursuant to the Sixth Amendment to the United States Constitution, Title 18, United States Code, Section 3161, and Federal Rule of Criminal Procedure 48(b); and

c.    Any objection to venue in the United States District Court for the Central District of California for the charge in the Information or any other charge arising out of the Covered Conduct.

4

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

TERM OF AGREEMENT

6. This agreement is effective on the date on which the Information is filed (the "Effective Date").

7. Unless voided or extended as allowed in Paragraphs 8-10 below, this agreement shall remain in effect for a period of three years after the Effective Date (the "Term").

8. If, after the filing of the Information, the Court does not continue the trial date and make findings of excludable time periods pursuant to the Speedy Trial Act, then the parties agree that, with the exception of the parties' waiver of the statute of limitations in Paragraph 36, this agreement is null and void.

9. Gree Zhuhai and Gree Hong Kong agree that, in the event the government determines, in its sole discretion, that either Gree Zhuhai or Gree Hong Kong has failed to perform or fulfill any obligation in this agreement, an extension or extensions of the Term of this agreement for both Gree Zhuhai and Gree Hong Kong may be imposed by the government, in its sole discretion, for up to a total additional time period of twelve months, without prejudice to the government's right to proceed as provided in Paragraph 38.b below. Any extension of this agreement is effective for both Gree Zhuhai and Gree Hong Kong and extends all terms of this agreement, including the terms of the Enhanced Compliance Measures in Exhibit D, for an equivalent period.

10. In the event the government determines that an extension of the Term of this agreement is or may be warranted, the government will notify Gree Zhuhai and Gree Hong Kong in writing of its determination no later than ninety (90) days prior to the expiration of the Term. Within forty-five (45) days of receipt of that notice,

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

Gree Zhuhai and/or Gree Hong Kong may respond to the government in writing to explain the nature and circumstances of any alleged failure to perform or fulfill any obligation in this agreement, as well as the actions they have taken to address and remediate the situation.  The government agrees to consider such explanation in determining whether to extend the Term of this agreement.

CIRCUMSTANCES OF THIS AGREEMENT

11.  The government enters into this agreement based on the individual facts and circumstances presented in this case, including:

a.   The nature and seriousness of the Covered Conduct;

b.   The changes made by Gree Zhuhai since 2013 to improve the safety of its products and to prevent violations of the Consumer Product Safety Act, 15 U.S.C. § 2051 *et seq.* ("CPSA"), including Gree Zhuhai's investments in expanded employee training and updated policies, procedures, and supervisory structures with an emphasis on preventing, detecting, and remediating defective products;

c.   Gree Zhuhai's enhancement and commitment to continuing to enhance its compliance and product safety programs and internal controls to ensure that they satisfy the elements set forth in the Enhanced Compliance Measures in Exhibit D to this agreement, thereby safeguarding the safety of their consumer products;

d.   Based on Gree Zhuhai's remediation and the current state of its product safety and compliance programs, the fact that the Covered Conduct ended in 2013, and Gree Zhuhai's agreement to report to the government as set forth in the Enhanced Compliance Measures in Exhibit D to this agreement, the government determined that an independent compliance monitor was unnecessary;

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

e.   the acknowledgment by Gree Zhuhai and Gree Hong Kong of their conduct and their acceptance of responsibility for that conduct;

f.   the cooperation by Gree Zhuhai and Gree Hong Kong in the investigation of this matter and their commitment to continue that cooperation as provided in Paragraph 16 below; and

g.   the commitment by Gree Zhuhai and Gree Hong Kong to fulfill all of their obligations in this agreement.

CORPORATE AUTHORIZATION

12.   Gree Zhuhai and Gree Hong Kong represent that they are authorized to enter into this agreement.  Within five (5) business days of the signing and execution of this agreement by all parties, Gree Zhuhai and Gree Hong Kong shall provide the government a legal document certifying that each of them is authorized to enter into and comply with all of the provisions of this agreement.  Such legal document shall designate a company representative who is authorized to take the actions specified in this agreement, and shall also state that all legal formalities for such authorizations have been observed in the form attached to this agreement as Exhibit C.  Within five (5) business days of the filing of the Information, Gree Zhuhai and Gree Hong Kong shall file with the Court the same authorization documents previously provided to the government.

ORGANIZATIONAL CHANGES AND APPLICABILITY

13.   This agreement shall bind Gree Zhuhai and Gree Hong Kong, their successor entities (if any), parent companies, and any other person or entity that assumes the liabilities contained herein ("successors-in-interest").  Gree Zhuhai and Gree Hong Kong, or their successors-in-interest, if applicable, shall provide the government

7

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

and the Court with notice in writing at least fifteen (15) days before of any name change, business reorganization, sale or purchase of assets, divestiture of assets, or similar action impacting their ability to perform or fulfill any of their obligations in this agreement, including their ability to pay the monetary penalty or forfeiture in this agreement.  No change in name, change in corporate or individual control, business reorganization, change in ownership, merger, change of legal status, sale or purchase of assets, or similar action shall alter Gree Zhuhai's or Gree Hong Kong's responsibilities under this agreement.  Neither Gree Zhuhai nor Gree Hong Kong shall engage in any action to seek to avoid the obligations and conditions set forth in this agreement.

NATURE OF THE OFFENSE

14.  Gree Zhuhai and Gree Hong Kong understand that for each of them to be guilty of the crime charged in the Information, that is, Failure to Furnish Information Required by 15 U.S.C. § 2064(b)(3) and (4), in violation of Title 15, United States Code, Sections 2068(a)(4) and 2070, the following must be true: each of them knowingly and willfully failed immediately to inform the United States Consumer Product Safety Commission ("CPSC") upon obtaining information which reasonably supported the conclusion that their dehumidifiers contained a defect which created a substantial product hazard, that is, a substantial risk of injury to the public, and created an unreasonable risk of serious injury or death.

PENALTIES

15.  Gree Zhuhai and Gree Hong Kong understand that the statutory maximum sentence that the Court can impose on each of them for a violation of Title 15, United States Code, Sections 2068(a)(4)

8

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

and 2070, is: a five (5) year period of probation; a fine of five hundred thousand dollars ($500,000) or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of four hundred dollars ($400).

### COOPERATION

16. Gree Zhuhai and Gree Hong Kong agree to cooperate fully with the government and any other government agency designated by the government in any and all matters relating to the Covered Conduct until the date upon which all investigations and prosecutions arising out of the Covered Conduct are concluded, whether or not those investigations and prosecutions are concluded within the Term specified in Paragraphs 7-10. Gree Zhuhai and Gree Hong Kong's cooperation pursuant to this paragraph is subject to applicable laws and regulations, as well as valid claims of attorney-client privilege or attorney work product doctrine. However, Gree Zhuhai and Gree Hong Kong must provide to the government a log of any document or information that is not provided based on an assertion of law, regulation, or privilege, and Gree Zhuhai and Gree Hong Kong bear the burden of establishing the validity of any such assertions. This cooperation shall include, but is not limited to the following:

a. Gree Zhuhai and Gree Hong Kong shall truthfully disclose all information not protected by a valid claim of attorney-client privilege with respect to their activities and those of any of their present and former directors, officers, employees, agents, representatives, and any others concerning all matters about which the government may inquire. This obligation of truthful disclosure includes Gree Zhuhai's and Gree Hong Kong's obligation to assemble, organize, and provide the government all non-privileged documents,

9

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

records, or other tangible evidence in their custody or control as the government may reasonably request.

b. Gree Zhuhai and Gree Hong Kong shall provide testimony or information necessary to identify or establish the original location, authenticity, or other basis for admission into evidence of documents or other tangible evidence in any criminal, legal, court or other proceeding as the government may request.

c. Gree Zhuhai and Gree Hong Kong shall, using their reasonable best efforts, make available their present and former officers, directors and employees to provide information and/or testimony as the government may request, including testimony before a grand jury, a trial court, or other legal or court proceeding, as well as interviews with law enforcement authorities. Gree Zhuhai's and Gree Hong Kong's cooperation under this paragraph shall include identification of witnesses who have material information relating to the Covered Conduct, including identification of witnesses who have particular types of material information requested by the government. It is further understood that Gree Zhuhai and Gree Hong Kong must at all times provide complete, truthful, and accurate information.

d. Gree Zhuhai and Gree Hong Kong (and their directors, officers, employees, agents, and representatives) shall testify truthfully before the grand jury and at any trial or other proceeding with respect to any matters about which they may be questioned. Gree Zhuhai and Gree Hong Kong (and their directors, officers, employees, agents, and representatives) shall at all times give complete, truthful, and accurate information and testimony. Gree Zhuhai and Gree Hong Kong (and their directors, officers, employees, agents, and representatives) shall neither attempt to protect any person who has

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

been involved in criminal activity, nor falsely implicate anyone in criminal activity.

## RESTITUTION

17.  Gree Zhuhai and Gree Hong Kong agree to pay restitution to individuals who were directly and proximately harmed, either through physical injury or financial loss, by a fire or overheating caused by one of their dehumidifiers that were manufactured in 2007 through 2013, sold in the United States, and subject to the recall that Gree Zhuhai announced on September 12, 2013, expanded on January 30, 2014, and re-announced on November 29, 2016.  Gree Zhuhai and Gree Hong Kong agree to pay restitution to such individuals in the amounts determined by the United States Magistrate Judge or Special Master through the procedures in Paragraphs 20-25 below.  The restitution owed to such individuals shall be reduced by the amount of compensation that they have already received for their losses through earlier payments from Gree Zhuhai, Gree Hong Kong, Gree USA, Inc. ("Gree USA"), or other sources, including but not limited to, insurance.

18.  Gree Zhuhai and Gree Hong Kong agree to pay restitution to entities that were directly and proximately harmed by a fire or overheating that was caused by one of their dehumidifiers that were manufactured in 2007 through 2013, sold in the United States, and subject to the recall that Gree Zhuhai announced on September 12, 2013, expanded on January 30, 2014, and re-announced on November 29, 2016.  Gree Zhuhai and Gree Hong Kong agree to pay restitution to such entities in the amounts determined by the United States Magistrate Judge or Special Master through the procedures in Paragraphs 20-25 below.  The restitution owed to such entities shall

11

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

be reduced by the amount of compensation that they have already received for their losses through earlier payments from Gree Zhuhai, Gree Hong Kong, Gree USA, or other sources, including but not limited to, insurance.

19. Gree Zhuhai and Gree Hong Kong agree that all such individuals and entities mentioned in Paragraphs 17 and 18 are victims of the crime of which they are charged or other uncharged crimes related to that charged crime.

20. Gree Zhuhai and Gree Hong Kong agree to the appointment of a United States Magistrate Judge or Special Master to determine the proper payment of the restitution set forth in Paragraphs 17 and 18. Gree Zhuhai and Gree Hong Kong agree that the United States Magistrate Judge or Special Master, as determined by the Court, should make findings of fact regarding:

a. Who should receive restitution under Paragraphs 17 and 18; and

b. The restitution amounts that these individuals and entities should receive.

21. In connection with the administration and disposition of restitution in this matter, Gree Zhuhai and Gree Hong Kong agree that the United States Magistrate Judge or Special Master should:

a. Notify potential claimants of the restitution claim process within one hundred twenty (120) days of Gree USA's sentencing proceeding;

b. Collect restitution claims for a period of one hundred eighty (180) days after the date of the last notice to potential claimants. Restitution claims submitted later than one hundred

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

eighty (180) days after the date of the last notice to potential claimants are not eligible for restitution;

c. Determine the validity of each submitted restitution claim, and for each valid claim, determine the amount of restitution owed for that claim;

d. Implement appropriate procedures necessary to carry out the foregoing duties within one hundred twenty (120) days of Gree USA's sentencing proceeding;

e. Promptly notify Gree Zhuhai, Gree Hong Kong, Gree USA and the government of all claims received; and

f. Report to the Court every sixty (60) days following Gree USA's sentencing proceeding on the status of the United States Magistrate Judge's or Special Master's work to date, anticipated future efforts, and any matters the United States Magistrate Judge or Special Master believes require the Court's attention.

22. If the United States Magistrate Judge or Special Master decides that restitution is owed on a claim, Gree Zhuhai and Gree Hong Kong will pay that claim within ten (10) days after the United States Magistrate's or Special Master's decision becomes final. The United States Magistrate Judge's or Special Master's decision becomes final forty-five (45) days after the first notice to Gree Zhuhai, Gree Hong Kong or Gree USA of the decision.

a. Gree Zhuhai and Gree Hong Kong will pay any restitution award of fifty thousand dollars ($50,000) or less within ten days after the United States Magistrate Judge's or Special Master's decision becomes final. Gree Zhuhai and Gree Hong Kong have no right to appeal any decision awarding restitution of fifty thousand dollars ($50,000) or less.

13

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

b.    Gree Zhuhai and Gree Hong Kong may appeal in a court of competent jurisdiction any decision awarding restitution greater than fifty thousand dollars ($50,000).  If Gree Zhuhai or Gree Hong Kong appeal or challenge the United States Magistrate Judge's or Special Master's decision within forty-four (44) days after the first notice of the decision to Gree Zhuhai, Gree Hong Kong or Gree USA, the United States Magistrate Judge's or Special Master's decision does not become final until all of Gree Zhuhai's and Gree Hong Kong's appeals have been exhausted.

c.    All decisions by the United States Magistrate Judge or Special Master will be vested in their discretion and, if contested, will be reviewed under the arbitrary-and-capricious standard set forth in 5 U.S.C. § 706(2)(A).  Review of any decision by the United States Magistrate Judge or Special Master will be based exclusively on the written record before the United States Magistrate Judge or Special Master at the time of the decision.  No discovery will be taken in a challenge to the United States Magistrate Judge's or Special Master's decision.

23.  Gree Zhuhai and Gree Hong Kong will have a reasonable opportunity to investigate and challenge any claim before the United States Magistrate Judge or Special Master makes a decision on a claim.  Gree Zhuhai's and Gree Hong Kong's reasonable opportunity to investigate and challenge a claim will not exceed six (6) months from the first notification to Gree Zhuhai, Gree Hong Kong or Gree USA of the claim, unless the United States Magistrate Judge or Special Master decides to extend the time for Gree Zhuhai or Gree Hong Kong to investigate and challenge a claim.  In no event will Gree Zhuhai's and Gree Hong Kong's opportunity to investigate and challenge a claim

14

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

exceed twelve (12) months after the first notification to Gree Zhuhai, Gree Hong Kong or Gree USA of the claim.

24. The United States Magistrate Judge or Special Master may request from the Court a reasonable extension of the time periods in the preceding paragraphs as circumstances warrant.

25. Gree Zhuhai and Gree Hong Kong shall promptly provide to the United States Magistrate Judge or Special Master all documentary materials or testimonial information reasonably requested by the United States Magistrate Judge or Special Master, subject to applicable laws and regulations, as well as valid claims of attorney-client privilege or attorney work product doctrine. However, Gree Zhuhai and Gree Hong Kong must provide to the government a log of any document or information that is not provided based on an assertion of law, regulation, or privilege, and Gree Zhuhai and Gree Hong Kong bear the burden of establishing the validity of any such assertions.

26. Gree Zhuhai and Gree Hong Kong shall pay in full any costs, fees, and expenses the United States Magistrate Judge or Special Master incurs in carrying out his or her duties separate and apart from any restitution paid to victims with valid restitution claims.

<u>FORFEITURE</u>

27. As a result of the Covered Conduct, Gree Zhuhai and Gree Hong Kong agree to pay to the United States thirty-nine million dollars ($39,000,000) (the "Stipulated Forfeiture Amount") representing the assets associated with their violation of 15 U.S.C. §§ 2068(a)(4) and 2070.

    a. Gree Zhuhai and Gree Hong Kong agree that:

        i. the facts set forth in the Statement of Facts attached as Exhibit B to this agreement are sufficient to establish

15

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

that the Stipulated Forfeiture Amount is subject to civil forfeiture to the United States; and

ii. this agreement and the Statement of Facts may be attached to and incorporated into the Civil Forfeiture Complaint to be filed against the Stipulated Forfeiture Amount.

b. By this agreement, Gree Zhuhai and Gree Hong Kong waive service of said Civil Forfeiture Complaint and agree that a Final Order of Forfeiture may be entered against the Stipulated Forfeiture Amount.

c. Upon payment of the Stipulated Forfeiture Amount, Gree Zhuhai and Gree Hong Kong shall:

i. release any and all claims they may have to such funds; and

ii. execute such documents as necessary to accomplish the forfeiture of the funds.

d. Gree Zhuhai and Gree Hong Kong agree that they will not file a claim with the Court or otherwise contest the civil forfeiture of the Stipulated Forfeiture Amount and will not assist a third party in asserting any claim to the Stipulated Forfeiture Amount.

e. The forfeiture of the Stipulated Forfeiture Amount shall be final and shall not be refunded.

f. Gree Zhuhai or Gree Hong Kong shall transfer thirty-nine million dollars ($39,000,000) to the United States within ten (10) business days of the Effective Date of this agreement. Such transfer shall be made by wire transfer to the United States, pursuant to wire instructions provided by the government.

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

g.     It is understood that nothing in this agreement constitutes an agreement by the government that the forfeiture amount in this paragraph is the maximum forfeiture that may be imposed in any future prosecution of Gree Zhuhai or Gree Hong Kong, and that the government is not precluded from then arguing or presenting evidence in any future prosecution that the Court should impose a higher forfeiture amount.  However, it is further understood that in the event of a future prosecution, the government agrees that it will recommend to the Court that any amount forfeited by Gree Zhuhai under this agreement should be offset against any forfeiture or fine that the Court might impose as part of a future judgment.

MONETARY PENALTY

28.  Gree Zhuhai, Gree Hong Kong and the government agree that the appropriate total monetary penalty is fifty-two million two hundred thousand dollars ($52,200,000)(the "Total Monetary Penalty"), of which five hundred thousand dollars ($500,000) will be paid as a criminal fine on behalf of Gree Zhuhai's and Gree Hong Kong's United States subsidiary Gree USA, in connection with Gree USA's guilty plea and plea agreement filed simultaneously herewith.

a.     Gree Zhuhai, Gree Hong Kong, and the government agree that the Total Monetary Penalty is appropriate given the facts and circumstances of this case.

b.     The government recognizes that Gree Zhuhai, Gree Hong Kong, and Gree USA have already paid fifteen million four hundred and fifty thousand dollars ($15,450,000) to the United States in connection with their settlement of the CPSC's related civil penalty action against them.  The government agrees that this payment of fifteen million four hundred and fifty thousand dollars ($15,450,000)

17

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

to the United States shall be credited against the Total Monetary Penalty pursuant to the "Coordination of Corporate Resolution Penalties and/or Joint Investigations and Proceedings Arising from the Same Misconduct" Policy in the Department of Justice Manual 1-12.100.

c.   Gree Zhuhai and Gree Hong Kong agree to pay thirty-six million two hundred and fifty thousand dollars ($36,250,000) of the Total Monetary Penalty to the United States within ten (10) business days of the Effective Date of this agreement.  Gree Zhuhai or Gree Hong Kong will make this payment by wire transfer according to the wire instructions provided by the government.

d.   Gree Zhuhai and Gree Hong Kong agree to pay five hundred thousand dollars ($500,000) of the Total Monetary Penalty as a criminal fine on behalf of Gree USA (the "Criminal Fine Payment") no later than ten (10) business days after the entry of judgment of Gree USA's sentence by the Court.  Gree Zhuhai and Gree Hong Kong agree to make the Criminal Fine Payment as a related company of Gree USA.  Gree Zhuhai or Gree Hong Kong will make this payment by wire transfer according to the wire instructions to be provided by the government.

e.   All Total Monetary Penalty payments are final and shall not be refunded.

f.   If Gree Zhuhai and Gree Hong Kong fail to timely make the payments required in this paragraph, interest (at the rate specified in Title 28, United States Code, Section 1961) shall accrue on the unpaid balance through the date of payment.

g.   Nothing in this agreement shall be deemed an agreement by the government that fifty-two million two hundred thousand dollars

18

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

($52,200,000) is the maximum penalty that may be imposed in any future prosecution of Gree Zhuhai or Gree Hong Kong, and the government is not precluded from arguing in any future prosecution that the Court should impose a higher fine, although the government agrees that it will recommend to the Court that any amount paid under this agreement should be offset against any forfeiture or fine that the Court might impose as part of a future judgment.

<u>SUSPENSION, REVOCATION, AND DEBARMENT</u>

29.  Gree Zhuhai and Gree Hong Kong understand that if either of them hold any regulatory licenses or permits, this agreement may result in the suspension or revocation of those licenses and permits. The government makes no representation or promise concerning suspension or debarment of Gree Zhuhai or Gree Hong Kong from contracting with the United States or with any office, agency, or department thereof.  Suspension and debarment of organizations is a discretionary administrative action solely within the authority of the federal contracting agencies.  Gree Zhuhai and Gree Hong Kong understand that unanticipated collateral consequences such as this will not serve as grounds to withdraw from this agreement.

<u>FACTUAL BASIS</u>

30.  Gree Zhuhai, Gree Hong Kong, and the government agree to the Statement of Facts attached hereto as Exhibit B and incorporated herein by this reference, and agree that the Statement of Facts is sufficient to support a conviction to the charges described in this agreement.  The attached Statement of Facts is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to the parties that relate to that conduct.

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

31.   Gree Zhuhai and Gree Hong Kong admit, accept, and acknowledge that they are responsible under United States law for the acts of their officers, directors, employees, and agents, including the officers, directors, employees, and agents of Gree USA, as set forth in the Statement of Facts, and that the facts in the Statement of Facts are true and accurate.  Should the government pursue the prosecution that is deferred by this agreement, Gree Zhuhai and Gree Hong Kong stipulate to the admissibility of the Statement of Facts in any proceeding, including any trial, guilty plea, or sentencing proceeding, and will not contradict anything in the Statement of Facts at any such proceeding.

COMPLIANCE PROGRAM

32.   Gree Zhuhai and Gree Hong Kong further agree to comply with the terms of the Enhanced Compliance Measures, as set forth in Exhibit D and incorporated by reference herein, and to institute and maintain, at a minimum, the policies and procedures as described therein, which are intended to prevent future violations of law, including the CPSA and its implementing regulations.

NOTICE

33.   Any notice to Gree Zhuhai or Gree Hong Kong under this agreement shall be given by: (1) email to an email address provided by Gree Zhuhai and Gree Hong Kong; and (2) personal delivery, overnight delivery by a recognized delivery service, or registered or certified mail, addressed to:

James M. Koukios
Sophia H. Cash
Morrison & Foerster LLP
2100 L Street, NW, Suite 900
Washington, DC 20037

20

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

34.  Any notice to the government under this agreement shall be given by: (1) email to an email address provided by the government; and (2) personal delivery, or overnight delivery by a recognized delivery service addressed to the following:

> Director, Consumer Protection Branch
> U.S. Department of Justice
> 450 5th St NW, Suite 6400 South
> Washington, DC 20001
>
> and
>
> Chief, Environmental & Community
> Safety Crimes Section
> U.S. Attorney's Office
> Central District of California
> 1300 United States Courthouse
> 312 North Spring Street
> Los Angeles, California 90012

35.  Notice shall be effective upon actual receipt by the government or Gree Zhuhai or Gree Hong Kong.

### WAIVER OF STATUTE OF LIMITATIONS AND OTHER TIME DEFENSES

36.  Having been fully advised by their attorneys regarding the application of the statute of limitations, the United States Constitution regarding prejudicial pre-indictment delay and the Speedy Trial Act to the Covered Conduct, Gree Zhuhai and Gree Hong Kong hereby knowingly, voluntarily, and intelligently waive, relinquish, and give up:

a.  Any right that each of them might have not to be prosecuted for any federal criminal offenses arising out of the Covered Conduct, including, but not limited to, the charge in the Information, because of the expiration of the statute of limitations for the offenses before the filing of the Information or indictment alleging the offenses; and

21

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

b.    any defense, claim, or argument each of them could raise or assert that prosecution for any federal criminal offenses arising out of the Covered Conduct, including, but not limited to, the charge in the Information, is barred by the expiration of the applicable statute of limitations, pre-indictment delay, or any speedy trial violation.

### BREACH OF AGREEMENT

37.    Gree Zhuhai and Gree Hong Kong agree that if either of them fails to perform or fulfill any of their obligations in this agreement ("a breach"), the government may declare this agreement breached.

a.    All of Gree Zhuhai's and Gree Hong Kong's obligations in this agreement are material.  A single breach of this agreement by either Gree Zhuhai or Gree Hong Kong is sufficient for the government to declare a breach of this agreement as to both Gree Zhuhai and Gree Hong Kong.

b.    The government's determination of whether Gree Zhuhai or Gree Hong Kong has breached this agreement is within the government's sole discretion and is not subject to review in any court or tribunal.  The government's determination of whether conduct or statements of any current director, officer or employee, or any person acting on behalf of, or at the direction of, Gree Zhuhai or Gree Hong Kong, will be imputed to either Gree Zhuhai or Gree Hong Kong for the purpose of determining whether either of them has breached this agreement shall be in the government's sole discretion.

c.    If the government receives evidence that either Gree Zhuhai or Gree Hong Kong has breached this agreement, the government agrees to give both of them written notice of any alleged breach

22

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

before making a determination of whether the agreement has been breached.  Within forty-five (45) days of receipt of such notice, Gree Zhuhai and Gree Hong Kong shall have the opportunity to respond to the government in writing to explain the nature and circumstances of such alleged breach, as well as the actions they have taken to address and remediate the situation.  The government shall consider their written explanation(s) before making a determination of whether either of them has breached this agreement.

38.  If the government declares this agreement breached, the following shall occur:

a.   the government will be relieved of all of its obligations in this agreement; and

b.   Gree Zhuhai and Gree Hong Kong will thereafter be subject to:

i.   prosecution for any federal criminal violation of which the government has knowledge, including, but not limited to, the charge in the Information and any other federal criminal violations relating to the Covered Conduct, which the government may bring in the United States District Court for the Central District of California or any other appropriate venue;

ii.  any civil, administrative, or regulatory action that was either dismissed or not filed because of this agreement; and

iii. the imposition of monetary penalties ("Stipulated Penalties") as set forth in Paragraph 39 below.

39.  Gree Zhuhai and Gree Hong Kong agree that the government, in its sole discretion, may seek the imposition of monetary penalties ("Stipulated Penalties") for any failure by either Gree Zhuhai or Gree Hong Kong to perform or fulfill any of their obligations in this

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

agreement, including, but not limited to, any obligations set forth in the Enhanced Compliance Measures attached to this agreement in Exhibit D.  Stipulated Penalties shall be calculated as five thousand dollars ($5,000) per day for each unperformed or unfulfilled obligation and assessed as follows:

a.  Upon the government's determination that either Gree Zhuhai or Gree Hong Kong has failed to perform or fulfill an obligation in this agreement, the government shall notify them in writing of their failure and the government's exercise of its contractual right to demand payment of the Stipulated Penalties (the "Demand Letter").  The Demand Letter shall set forth:

i.  The obligation that either Gree Zhuhai or Gree Hong Kong has failed, in the government's determination, to perform or fulfill;

ii.  The date on which either Gree Zhuhai or Gree Hong Kong first failed, in the government's determination, to perform or fulfill the obligation;

iii. A description of the obligation not met sufficient to permit Gree Zhuhai or Gree Hong Kong to cure (as described below); and

iv.  the amount of Stipulated Penalties claimed by the government as of the date of the Demand Letter.

b.  Within forty-five (45) days after receipt of the Demand Letter, or such other period as the government may agree in writing, Gree Zhuhai and/or Gree Hong Kong shall cure their failure to perform or fulfill the obligation identified by the government in the Demand Letter ("Cure Period").  If the failure is of a type that can be cured and either Gree Zhuhai or Gree Hong Kong cure the

24

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

failure within the Cure Period, no Stipulated Penalties shall be due. If neither Gree Zhuhai nor Gree Hong Kong cures the failure during the Cure Period, but one of them then subsequently cures the failure, Stipulated Penalties calculated from the date on which Gree Zhuhai and/or Gree Hong Kong first failed to perform or fulfill the obligation to the date of cure shall be immediately payable to the government. If the failure is one that cannot be cured, then Stipulated Penalties calculated from the date on which Gree Zhuhai and/or Gree Hong Kong first failed to perform or fulfill the obligation until the date that one of them remediates the failure to the government's satisfaction shall be immediately payable to the government.

c. Determination of whether Gree Zhuhai and/or Gree Hong Kong have failed to perform or fulfill an obligation in this agreement shall be in the government's sole discretion. Determinations of whether a failure to perform or fulfill an obligation in this agreement can be cured or has been cured, and determinations of when a failure has been cured or remediated shall all be in the government's sole discretion.

d. The Stipulated Penalties shall be paid by electronic fund transfer according to wire transfer instructions that will be provided by the government.

e. Gree Zhuhai and Gree Hong Kong agree that the United States District Court for the Central District of California shall have jurisdiction over any action to collect such a penalty.

f. If Gree Zhuhai or Gree Hong Kong fail timely to make a required payment of Stipulated Penalties, interest (at the rate

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

specified in 28 U.S.C. § 1961) shall accrue on the unpaid balance through the date of payment.

40. For any criminal, civil, administrative, or regulatory action brought by the government against Gree Zhuhai or Gree Hong Kong pursuant to Paragraph 38.b, including to collect Stipulated Penalties, Gree Zhuhai and Gree Hong Kong agree that:

a. Any such action may be premised on information provided by Gree Zhuhai or Gree Hong Kong;

b. Any applicable statute of limitations for any such action is tolled between October 25, 2017, and the filing commencing any such action;

c. In addition to Gree Zhuhai's and Gree Hong Kong's waivers in Paragraph 36, Gree Zhuhai and Gree Hong Kong knowingly, voluntarily, and intelligently waive, relinquish, and give up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any action brought pursuant to Paragraph 38.b, except to the extent that such defenses existed as of October 25, 2017;

d. All statements made by or on behalf of either Gree Zhuhai or Gree Hong Kong to the government or to the Court, including the Statement of Facts attached to this agreement as Exhibit B, and any testimony given by either Gree Zhuhai or Gree Hong Kong before a grand jury, a court, or any tribunal, or at any legislative hearings, whether before or after this agreement, and any leads derived from such statements or testimony, shall be admissible in evidence against either Gree Zhuhai or Gree Hong Kong in any and all actions brought by the government against either Gree Zhuhai or Gree Hong Kong pursuant to Paragraph 38.b; and

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

e.  Gree Zhuhai and Gree Hong Kong knowingly, voluntarily, and intelligently waive, relinquish, and give up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements in Paragraph 40.d or any evidence derived from those statements should be suppressed or are inadmissible and neither Gree Zhuhai nor Gree Hong Kong shall assert any claim under the United States Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that any such statements or testimony made by or on behalf of either Gree Zhuhai or Gree Hong Kong before or after this agreement, or any leads derived therefrom, should be suppressed or are otherwise inadmissible.

41.  Gree Zhuhai and Gree Hong Kong acknowledge that the government has made no representations, assurances, or promises concerning what sentence may be imposed by the Court if the government declares this agreement breached and this matter proceeds to judgment.  Gree Zhuhai and Gree Hong Kong further acknowledge that any such sentence is solely within the discretion of the Court and that nothing in this agreement binds or restricts the Court in the exercise of such discretion.

PUBLIC STATEMENTS BY GREE ZHUHAI AND GREE HONG KONG

42.  Gree Zhuhai and Gree Hong Kong agree that they shall not, through their present or future attorneys, officers, directors, agents, management level employees, or any other person authorized to speak for them, make any public statement, in litigation or otherwise, contradicting in whole or in part the facts described in

27

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

the Statement of Facts attached to this agreement in Exhibit B. The decision whether any public statement by any such person contradicting a fact contained in the Statement of Facts will be imputed to Gree Zhuhai or Gree Hong Kong shall be at the sole discretion of the government.

<u>COURT AND PROBATION OFFICE NOT PARTIES</u>

43. Gree Zhuhai and Gree Hong Kong understand that the Court and the United States Probation Office are not parties to this agreement.

<u>PUBLICATION</u>

44. Within ten (10) days of the Effective Date of this agreement, Gree Zhuhai and Gree Hong Kong agree to make the Information, this agreement, and the Statement of Facts conspicuously available to the public on the Gree website (https://global.gree.com/usa/) for two (2) years after the Effective Date of this agreement.

<u>NO ADDITIONAL AGREEMENTS</u>

45. Gree Zhuhai and Gree Hong Kong understand that, except as set forth herein, there are no promises, understandings, or agreements between the government and Gree Zhuhai or Gree Hong Kong or their attorneys, and that no additional promise, understanding, or agreement may be entered into unless in writing and signed by all parties or on the record in court.

///
///
///
///
///

28

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

AGREED AND ACCEPTED

**UNITED STATES ATTORNEY'S OFFICE FOR THE CENTRAL DISTRICT OF CALIFORNIA**

TRACY L. WILKISON
Acting United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

JOSEPH O. JOHNS    *by AAG*
DENNIS MITCHELL
Assistant United States Attorneys

10/26/21
Date

**UNITED STATES DEPARTMENT OF JUSTICE
CONSUMER PROTECTION BRANCH**

GUSTAV W. EYLER
Director
Consumer Protection Branch

ALLAN GORDUS
NATALIE N. SANDERS
MARYANN N. MCGUIRE
Trial Attorneys
Consumer Protection Branch
U.S. Department of Justice

10/26/21
Date

29

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

**DEFENDANT HONG KONG GREE ELECTRIC APPLIANCES SALES CO., LTD.**

_____       2021.10.20
NAME:  Guoqing Gan                     Date
TITLE: Director
Authorized Representative of
Defendant
HONG KONG GREE ELECTRIC
APPLIANCES SALES CO., LTD.

_____       10/21/2021
MORRISON & FOERSTER LLP                Date
JAMES M. KOUKIOS
SOPHIA H. CASH
On Behalf of Defendant
HONG KONG GREE ELECTRIC
APPLIANCES SALES CO., LTD.

30

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

DEFENDANT GREE ELECTRIC APPLIANCES, INC. OF ZHUHAI

_____          2021. 10. 20
NAME: Mingjing Li                          _____
TITLE: Deputy Director,                    Date
Legal Department
Authorized Representative of
Defendant
GREE ELECTRIC APPLIANCES, INC. OF
ZHUHAI

_____          10/ 21/ 2021
MORRISON & FOERSTER LLP                    _____
JAMES M. KOUKIOS                           Date
SOPHIA H. CASH
On Behalf of Defendant
GREE ELECTRIC APPLIANCES, INC. OF
ZHUHAI

31

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

**Exhibit C**

CERTIFICATION OF GREE ZHUHAI DEFENDANT

I have been authorized by defendant GREE ELECTRIC APPLIANCES, INC. OF ZHUHAI ("defendant") to enter into this agreement on behalf of defendant. I have read this agreement in its entirety. This agreement has been read to me in Mandarin, the language which I understand best. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with defendant's attorney. I understand the terms of this agreement, and I voluntarily agree to those terms on behalf of defendant. I have discussed the evidence with defendant's attorney, and defendant's attorney has advised me of defendant's rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me or to defendant other than those contained in this agreement. No one has threatened or forced me or defendant in any way to enter into this agreement. I am satisfied with the representation of defendant's attorney in this matter.

_____        2021.10.20
NAME: Mingjing Li                        _____
                                         Date
Title: Deputy Director,
Legal Department
Authorized Representative of
Defendant GREE ELECTRIC
APPLIANCES, INC. OF ZHUHAI

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

CERTIFICATION OF INTERPRETER

I, [Ling Liu], am fluent in the written and spoken English and Mandarin languages. I accurately translated this entire agreement from English into Mandarin to defendant GREE ELECTRIC APPLIANCES, INC. OF ZHUHAI on this date.

_Ling Liu_ _____  _2021.10.12_ _____

INTERPRETER                              Date

33

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

CERTIFICATION OF GREE ZHUHAI'S ATTORNEY

I am defendant GREE ELECTRIC APPLIANCES, INC. OF ZHUHAI's attorney. I have carefully and thoroughly discussed every part of this agreement with the authorized representative of my client. Further, I have fully advised my client and its authorized representative of its rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support conviction to the charge specified in this agreement.

_____     10/21/2021
MORRISON & FOERSTER LLP                Date
JAMES M. KOUKIOS
SOPHIA H. CASH
On Behalf of Defendant
GREE ELECTRIC APPLIANCES, INC. OF
ZHUHAI

34

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

CERTIFICATION OF GREE HONG KONG DEFENDANT

I have been authorized by defendant HONG KONG GREE ELECTRIC APPLIANCES SALES CO., LTD. ("defendant") to enter into this agreement on behalf of defendant. I have read this agreement in its entirety. This agreement has been read to me in Mandarin, the language which I understand best. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with defendant's attorney. I understand the terms of this agreement, and I voluntarily agree to those terms on behalf of defendant. I have discussed the evidence with defendant's attorney, and defendant's attorney has advised me of defendant's rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me or to defendant other than those contained in this agreement. No one has threatened or forced me or defendant in any way to enter into this agreement. I am satisfied with the representation of defendant's attorney in this matter.

_____        ___2021. 10. 20___
NAME: Guoqing Gan                       Date

TITLE: Director

Authorized Representative of
Defendant HONG KONG GREE ELECTRIC
APPLIANCES SALES CO., LTD.

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

CERTIFICATION OF INTERPRETER

I, [Ling Liu], am fluent in the written and spoken English and Mandarin languages.  I accurately translated this entire agreement from English into Mandarin to defendant HONG KONG GREE ELECTRIC APPLIANCES SALES CO., LTD. on this date.

_Ling Liu_____          _2021.10.12_____
INTERPRETER                                Date

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

CERTIFICATION OF GREE HONG KONG'S ATTORNEY

I am defendant HONG KONG GREE ELECTRIC APPLIANCES SALES CO., LTD.'s attorney. I have carefully and thoroughly discussed every part of this agreement with the authorized representative of my client. Further, I have fully advised my client and its authorized representative of its rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support conviction to the charge specified in this agreement.

_____     ___10/21/2021_____
MORRISON & FOERSTER LLP                Date
JAMES M. KOUKIOS
SOPHIA H. CASH
On Behalf of Defendant
HONG KONG GREE ELECTRIC
APPLIANCES SALES CO., LTD.

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

## CERTIFICATE OF CORPORATE RESOLUTIONS FOR GREE ZHUHAI

WHEREAS, Gree Electric Appliances, Inc. of Zhuhai ("Gree Zhuhai") has been engaged in discussions with the United States Department of Justice's Consumer Protection Branch ("CPB") and the United States Attorney's Office for the Central District of California (the "USAO") regarding issues relating to a knowing and willful failure to report information regarding consumer product safety defects, hazards, and risks to the United States Consumer Product Safety Commission (the "CPSC");

WHEREAS, in order to resolve such discussions, it is proposed that Gree Zhuhai agrees to the terms and obligations of a deferred prosecution agreement among Gree Zhuhai, Hong Kong Gree Electric Appliances Sales Co., Ltd. ("Gree Hong Kong"), CPB, and the USAO (the "Deferred Prosecution Agreement"), and to certain terms of a plea agreement among Gree USA, Inc. ("Gree USA"), CPB, and the USAO (the "Plea Agreement");

WHEREAS, the Legal Representative and Chairman of the Board of Directors of Gree Zhuhai:

- possesses the authority to approve execution of the Deferred Prosecution Agreement and the Plea Agreement under Chinese law;

- has been extensively briefed on discussions with CPB and USAO regarding an agreement to resolve this matter;

- was informed of the principal terms of the Deferred Prosecution Agreement and the Plea Agreement by Gree Zhuhai's inside counsel, together with outside counsel for Gree Zhuhai, and agrees that Gree Zhuhai should enter into an agreement on those terms;

1

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

- has been provided with the Deferred Prosecution Agreement and the Plea Agreement and their attachments for review;

- has reviewed documents relevant to the Deferred Prosecution Agreement and the Plea Agreement and has discussed the final terms of the Deferred Prosecution Agreement and the Plea Agreement with Gree Zhuhai's inside counsel, together with outside counsel for Gree Zhuhai, who have provided advice of Gree Zhuhai's rights, possible defenses, the Sentencing Guidelines' provisions, and the consequences of agreeing to such terms and obligations of the Deferred Prosecution Agreement and the Plea Agreement;

Therefore, on behalf of Gree Zhuhai, the Legal Representative and Chairman of the Board of Directors of Gree Zhuhai, Mingzhu Dong, has APPROVED the following:

1.     Gree Zhuhai: (a) acknowledges the filing of the Information against Gree Zhuhai, Gree Hong Kong, and Gree USA, charging each company with one count of failure to furnish information required by Title 15, United States Code Section 2064(b)(3) and (4), in violation of Title 15, United States Code, Section 2068(a)(4) and 2070; (b) waives indictment on such charge and agrees to the obligations under the Deferred Prosecution Agreement and certain obligations under the Plea Agreement; (c) agrees that a total monetary penalty of $52,200,000, which will be reduced by $15,450,000 as credit for a civil penalty previously paid to the CPSC, for an adjusted total monetary penalty of $36,750,000 will be paid by Gree Zhuhai or Gree Hong Kong; (d) agrees that $500,000 of the total monetary penalty will be paid by Gree Zhuhai or Gree Hong Kong as a criminal fine on behalf of Gree USA; (e) agrees that a forfeiture amount of $39,000,000 will be paid by Gree Zhuhai or Gree Hong Kong; and (f) agrees to accept the restitution provisions of the Deferred Prosecution Agreement and the Plea Agreement;

2

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

2.      Gree Zhuhai accepts the terms and conditions of the Deferred Prosecution Agreement and the Plea Agreement, including but not limited to: (a) a knowing waiver of Gree Zhuhai's rights to a speedy trial pursuant to the Sixth Amendment to the United States Constitution, Title 18, United States Code, Section 3161, and the Federal Rule of Criminal Procedure 48(b); (b) a knowing waiver for purposes of the Deferred Prosecution Agreement and the Plea Agreement and any charges by the United States arising out of the conduct described in the Statement of Facts attached to the Deferred Prosecution Agreement and the Plea Agreement of any objection with respect to venue and consents to the filing of the Information against Gree Zhuhai, as provided under the terms of the Deferred Prosecution Agreement and the Plea Agreement, in the United States District Court for the Central District of California; and (c) a knowing waiver of any defenses based on the statute of limitations for any prosecution arising out of the conduct described in the Statement of Facts attached to the Deferred Prosecution Agreement and the Plea Agreement;

3.      The Deputy Director, Legal Department for Gree Zhuhai, Mingjing Li, is hereby authorized, empowered, and directed, on behalf of Gree Zhuhai, to agree to the terms of the Deferred Prosecution Agreement and to certain terms and obligations of the Plea Agreement substantially in such form as reviewed by the Legal Representative and Chairman of the Board of Directors of Gree Zhuhai, with such changes as the Deputy Director, Legal Department for Gree Zhuhai may approve;

4.      The Deputy Director, Legal Department for Gree Zhuhai, Mingjing Li, is hereby authorized, empowered, and directed to take any and all actions as may be necessary or appropriate and to approve the forms, terms, or provisions of any agreement or other documents as may be

3

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

necessary or appropriate to carry out and effectuate the purpose and intent of the foregoing resolutions;

5.      All of the actions of the Deputy Director, Legal Department for Gree Zhuhai, Mingjing Li, which would have been authorized by the foregoing resolutions except that such actions were taken prior to the adoption of such resolutions, are hereby severally ratified, confirmed, approved, and adopted as actions on behalf of Gree Zhuhai and its subsidiaries and affiliates; and

6.      The Deputy Director, Legal Department for Gree Zhuhai, Mingjing Li, and Jian Chen are hereby authorized, empowered, and directed to appear on behalf of Gree Zhuhai at any court appearances in connection with the Deferred Prosecution Agreement and the Plea Agreement.

Date:  2021. 10 .20                                  By: _____

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

**CERTIFICATE OF CORPORATE RESOLUTIONS FOR GREE HONG KONG**

WHEREAS, Hong Kong Gree Electric Appliances Sales Co., Ltd. ("Gree Hong Kong") has been engaged in discussions with the United States Department of Justice's Consumer Protection Branch ("CPB") and the United States Attorney's Office for the Central District of California (the "USAO") regarding issues relating to a knowing and willful failure to report information regarding consumer product safety defects, hazards, and risks to the United States Consumer Product Safety Commission (the "CPSC");

WHEREAS, in order to resolve such discussions, it is proposed that Gree Hong Kong agrees to certain terms and obligations of a deferred prosecution agreement among Gree Electric Appliances, Inc. of Zhuhai ("Gree Zhuhai"), Gree Hong Kong, CPB, and the USAO (the "Deferred Prosecution Agreement"), and to certain terms of a plea agreement among Gree USA, Inc. ("Gree USA"), CPB, and the USAO (the "Plea Agreement");

WHEREAS, the Chairman of the Board of Directors of Gree Hong Kong:

- possesses the authority to approve execution of the Deferred Prosecution Agreement and the Plea Agreement under Chinese law;

- has been extensively briefed on discussions with CPB and USAO regarding an agreement to resolve this matter;

- was informed of the principal terms of the Deferred Prosecution Agreement and the Plea Agreement by Gree Hong Kong's inside counsel, together with outside counsel for Gree Hong Kong, and agrees that Gree Hong Kong should enter into an agreement on those terms;

- has been provided with the Deferred Prosecution Agreement and the Plea Agreement and their attachments for review;

5

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

- has reviewed documents relevant to the Deferred Prosecution Agreement and the Plea Agreement and has discussed the final terms of the Deferred Prosecution Agreement and the Plea Agreement with Gree Hong Kong's inside counsel, together with outside counsel for Gree Hong Kong, who have provided advice of Gree Hong Kong's rights, possible defenses, the Sentencing Guidelines' provisions, and the consequences of agreeing to such terms and obligations of the Deferred Prosecution Agreement and the Plea Agreement;

Therefore, on behalf of Gree Hong Kong, the Chairman of the Board of Directors of Gree Hong Kong, Mingzhu Dong, has APPROVED the following:

1. Gree Hong Kong: (a) acknowledges the filing of the Information against Gree Zhuhai, Gree Hong Kong, and Gree USA, charging each company with one count of failure to furnish information required by Title 15, United States Code Section 2064(b)(3) and (4), in violation of Title 15, United States Code, Section 2068(a)(4) and 2070; (b) waives indictment on such charge and agrees to the obligations under the Deferred Prosecution Agreement and certain obligations under the Plea Agreement; (c) agrees that a total monetary penalty of $52,200,000, which will be reduced by $15,450,000 as credit for a civil penalty previously paid to the CPSC, for an adjusted total monetary penalty of $36,750,000 will be paid by Gree Zhuhai or Gree Hong Kong; (d) agrees that $500,000 of the total monetary penalty will be paid by Gree Zhuhai or Gree Hong Kong as a criminal fine on behalf of Gree USA; (e) agrees that a forfeiture amount of $39,000,000 will be paid by Gree Zhuhai or Gree Hong Kong; and (f) agrees to accept the restitution provisions of the Deferred Prosecution Agreement and the Plea Agreement;

2. Gree Hong Kong accepts the terms and conditions of the Deferred Prosecution Agreement and the Plea Agreement, including but not limited to: (a) a knowing waiver of Gree

6

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

Hong Kong's rights to a speedy trial pursuant to the Sixth Amendment to the United States Constitution, Title 18, United States Code, Section 3161, and the Federal Rule of Criminal Procedure 48(b); (b) a knowing waiver for purposes of the Deferred Prosecution Agreement and the Plea Agreement and any charges by the United States arising out of the conduct described in the Statement of Facts attached to the Deferred Prosecution Agreement and the Plea Agreement of any objection with respect to venue and consents to the filing of the Information against Gree Hong Kong, as provided under the terms of this Deferred Prosecution Agreement and the Plea Agreement, in the United States District Court for the Central District of California; and (c) a knowing waiver of any defenses based on the statute of limitations for any prosecution arising out of the conduct described in the Statement of Facts attached to the Deferred Prosecution Agreement and the Plea Agreement;

3.     The Director for Gree Hong Kong, Guoqing Gan, is hereby authorized, empowered, and directed, on behalf of Gree Hong Kong, to agree to the terms of the Deferred Prosecution Agreement and to certain terms and obligations of the Plea Agreement substantially in such form as reviewed by the Chairman of the Board of Directors of Gree Hong Kong, with such changes as the Director for Gree Hong Kong may approve;

4.     The Director for Gree Hong Kong, Guoqing Gan, is hereby authorized, empowered, and directed to take any and all actions as may be necessary or appropriate and to approve the forms, terms or provisions of any agreement or other documents as may be necessary or appropriate to carry out and effectuate the purpose and intent of the foregoing resolutions;

5.     All of the actions of the Director for Gree Hong Kong, Guoqing Gan, which would have been authorized by the foregoing resolutions except that such actions were taken prior to the

7

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

adoption of such resolutions, are hereby severally ratified, confirmed, approved, and adopted as actions on behalf of Gree Hong Kong and its subsidiaries and affiliates; and

6.      The Director for Gree Hong Kong, Guoqing Gan, and Jian Chen are hereby authorized, empowered, and directed to appear on behalf of Gree Hong Kong at any court appearances in connection with the Deferred Prosecution Agreement and the Plea Agreement.

Date: ___2021·10·20___                                    By: _____

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

**EXHIBIT A**

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>      v.<br><br>GREE ELECTRIC APPLIANCES, INC.<br>   OF ZHUHAI,<br>HONG KONG GREE ELECTRIC<br>   APPLIANCES SALES CO., LTD.,<br>   and<br>GREE USA, INC.,<br><br>      Defendants. | CR No.<br><br>I N F O R M A T I O N<br><br>[15 U.S.C. §§ 2068(a)(4), 2070:<br>Knowing and Willful Failure to<br>Report Information Regarding<br>Consumer Product Safety Defects,<br>Hazards, and Risks; 15 U.S.C.<br>§ 2070(c)(1), 18 U.S.C.<br>§ 981(a)(1)(C), 21 U.S.C. § 853,<br>28 U.S.C. § 2461(c): Criminal<br>Forfeiture] |

The United States Department of Justice's Consumer Protection Branch and the Acting United States Attorney for the Central District of California charge:

[15 U.S.C. §§ 2068(a)(4), 2070]

[ALL DEFENDANTS]

A.   INTRODUCTORY ALLEGATIONS

1.   By at least September 2012, in Los Angeles County, within the Central District of California, and elsewhere, defendants GREE ELECTRIC APPLIANCES, INC. OF ZHUHAI, HONG KONG GREE ELECTRIC APPLIANCES SALES CO., LTD., and GREE USA, INC., obtained information

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

which reasonably supported the conclusion that dehumidifiers manufactured, distributed, and sold in interstate commerce by the defendants contained a defect that caused those dehumidifiers to overheat and catch fire, creating a substantial product hazard, and created an unreasonable risk of serious injury and death to United States consumers who operated the dehumidifiers in their homes and businesses.

2. Despite knowing that they were required immediately to inform the United States Consumer Product Safety Commission of the defects and risks of those dehumidifiers they manufactured, distributed, and sold in interstate commerce, defendants GREE ELECTRIC APPLIANCES, INC. OF ZHUHAI, HONG KONG GREE ELECTRIC APPLIANCES SALES CO., LTD., and GREE USA, INC., knowingly and willfully failed to inform the United States Consumer Product Safety Commission of those dehumidifiers' defects and risks until in or about June 2013.

B. KNOWING AND WILLFUL FAILURE TO REPORT INFORMATION REGARDING CONSUMER PRODUCT SAFETY DEFECTS, HAZARDS, AND RISKS

3. From on or about September 19, 2012, through at least on or about June 2013, in Los Angeles County, within the Central District of California, and elsewhere, defendants GREE ELECTRIC APPLIANCES, INC. OF ZHUHAI, HONG KONG GREE ELECTRIC APPLIANCES SALES CO., LTD., and GREE USA, INC., knowingly and willfully failed to immediately report to the United States Consumer Product Safety Commission upon receiving information that reasonably supported the conclusion that the Chinese dehumidifiers contained a defect that could create a substantial product hazard, and created an unreasonable risk of

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

serious injury and death, as required by Title 15, United States Code, Section 2064(b)(3) and (4).

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

FORFEITURE ALLEGATIONS

[15 U.S.C. § 2070(c)(1); 18 U.S.C. § 981(a)(1)(C); 21 U.S.C. § 853; 28 U.S.C. § 2461(c)]

4.   Pursuant to Rule 32.2, Fed. R. Crim. P., notice is hereby given to the defendants that the United States will seek forfeiture as part of any sentence in accordance with Title 15, United States Code, Section 2070(c)(1) and Title 28, United States Code, Section 2461(c) in the event of any defendant's conviction under the sole count of this Information:

5.   Defendants shall forfeit the following property to the United States of America:

a.   all right, title, and interest in any and all property associated with any violation of the sole count of this Information; and

b.   to the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subsection a.

7.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), each defendant shall forfeit substitute property, up to the total value of the property described in the preceding paragraph, if, as a result of

//

//

//

//

//

//

//

4

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

any act or omission of a defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

TRACY L. WILKISON
Acting United States Attorney

GUSTAV W. EYLER
Director
Consumer Protection Branch


SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

JOSEPH O. JOHNS
DENNIS MITCHELL
Assistant United States Attorneys
Environmental & Community Safety
   Crimes Section

ALLAN GORDUS
NATALIE N. SANDERS
MARYANN N. MCGUIRE
Trial Attorneys
Consumer Protection Branch
Civil Division
U.S. Department of Justice

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

**Exhibit B**

**<u>Statement of Facts</u>**

Defendants Gree Electric Appliances, Inc. of Zhuhai ("Gree Zhuhai"), Gree USA, Inc. ("Gree USA"), and Hong Kong Gree Electric Appliances Sales Co., Ltd. ("Gree Hong Kong") (collectively the "Gree Companies") hereby agree and stipulate that the following information is true and accurate. The Gree Companies admit, accept, and acknowledge that they are responsible for the acts of their officers, directors, employees, and agents as set forth below. The Gree Companies also admit, accept, and acknowledge that, had this matter proceeded to trial, the government would have proven beyond a reasonable doubt, by admissible evidence, the facts set forth below.

<u>The Gree Companies</u>

1. From 2007 to September 2013, Gree Zhuhai was a large Chinese company that manufactured household appliances ("Gree appliances") for sale in and outside of China, including in the United States.

2. From 2007 to September 2013, Gree Hong Kong was a Chinese subsidiary of Gree Zhuhai that exported Gree appliances to the United States.

3. From 2010 to September 2013, Gree USA was a California corporation with offices in City of Industry, California, and a subsidiary of Gree Hong Kong. Gree USA sold Gree appliances to retailers in the United States. Those Gree appliances were manufactured by Gree Zhuhai and imported into the United States by Gree Hong Kong and Gree USA. Gree USA was a joint venture between Gree Hong Kong and another company, MJC America Holdings Co., Inc. ("MJC America Holdings"). Gree Hong Kong was the majority owner of

1

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

Gree USA. Gree USA's Chief Executive Officer ("CEO"), Chief Financial Officer ("CFO"), who was the brother of Gree USA's CEO, and Chief Administrative Officer ("CAO") were owners of MJC America Holdings. Gree USA's CEO, CFO and CAO effectively controlled Gree USA.

4. From 2010 to September 2013, Gree USA sold in the United States dehumidifiers manufactured by Gree Zhuhai and imported into the United States by Gree Hong Kong ("Gree dehumidifiers").

The Consumer Product Safety Commission and

the Consumer Product Safety Act

5. The Consumer Product Safety Act (the "CPSA") was enacted to protect the public from dangerous consumer products.

6. The United States Consumer Product Safety Commission (the "CPSC") is the federal agency responsible for protecting consumers from dangerous consumer products and is the lead federal agency responsible for the implementation, enforcement, and administration of the CPSA. The CPSC can order mandatory recalls of dangerous products.

7. The CPSA requires companies that manufacture, import, distribute, or sell consumer products to inform the CPSC, among other things, about any consumer product about which information reasonably supports the conclusion that such product contains a defect that could create a substantial product hazard, or creates an unreasonable risk of serious injury or death. This duty to report also applies to the individual directors, officers, and agents of those companies. A company's or an individual's knowing and willful failure to report an unsafe product to the CPSC is punishable as a felony violation of the CPSA.

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

<u>The Gree Companies Learn that Their Dehumidifiers</u>

<u>Are Catching Fire</u>

8.  On or about July 26, 2012, the CEO of Gree USA saw a video of a burning Gree dehumidifier.  On July 26, 2012, Gree USA's CEO sent the video to a Gree Hong Kong manager ("Gree Hong Kong Manager #1"), who was also a director of Gree Hong Kong and in charge of exporting Gree appliances for sale in the United States, copying other Gree USA employees and a Gree Zhuhai employee.  In sending the video, Gree USA's CEO labeled the email "urgent," and said that the video was "scarey [sic] to just watch" and a "very serious issue with GREE product quality."  Gree USA's CEO also stated that the video was the third reported instance of a Gree appliance catching fire since in or about June 2012 and that it could lead to lawsuits against Gree USA as well as a recall costing millions of dollars. Gree USA's CEO knew that the Gree Companies had an obligation to inform the CPSC immediately of any consumer product that contained a defect creating a substantial product hazard or that created an unreasonable risk of serious injury or death.

9. Gree Hong Kong Manager #1, replied to the July 26, 2012 email from Gree USA's CEO that same day.  In his reply email, Gree Hong Kong Manager #1 said that "[w]e also felt shock when we watched the video[,]" and that he had sent the video to Gree Zhuhai's Quality Department and to Gree Zhuhai's chief engineer who was also its senior vice president for research and development.

<u>The Gree Companies Learn that Two Defects in</u>

<u>Their Dehumidifiers are Causing Them to Catch Fire</u>

10. During August 2012, Gree USA and Gree Zhuhai employees, engineers and officers investigated the Gree dehumidifiers for

3

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

potential defects that could cause them to catch fire. No employee of Gree USA or Gree Zhuhai informed the CPSC of a defect or risk associated with the Gree dehumidifiers in August 2012.

11. On September 4, 2012, Gree USA's CEO emailed Gree Hong Kong Manager #1 about the Gree dehumidifiers. The CEO stated that Gree USA had tested its dehumidifier inventory in Gree USA's warehouse and the testing showed that these dehumidifiers burned. The CEO stated "the result is not like what you have told us" regarding how many units were involved because "the result shows the units all can catch the fire and apparently the material is not according to UL standard! I don't think the factory is telling us the fact and truth. . . ." The CEO stated that, because of Gree USA's test results, he would have the dehumidifiers further tested for compliance with UL (formerly Underwriters Laboratory) standards and was planning to inform the CPSC about the Gree dehumidifiers.

12. On September 5, 2012, Gree Hong Kong Manager #1 emailed Gree USA's CEO instructing "Gree USA to resolve the claim and CPSC case" and stating that Gree Zhuhai would "fully indemnify Gree USA for any expense and responsibility." That same day, Gree USA's CEO replied and requested more details regarding who would pay the costs that could result from the Gree dehumidifiers and when they would pay, and offered to handle reporting the Gree dehumidifiers to the CPSC if Gree Zhuhai would agree to pay all future costs related to the dehumidifiers' defects. Gree Hong Kong Manager #1 replied on September 6, 2012, stating that they were willing to agree to compensate expenses in a timely manner and that Gree USA "would be the single entity to reply insurance company and CPSC, [and] we will provide the necessary supports of test records and technical

4

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

information if you need any." After these communications, no one from the Gree Companies informed the CPSC about the Gree dehumidifiers or their defects.

13. On September 10, 2012, Gree USA's CEO emailed the highest ranking person at Gree Zhuhai, the chairperson of Gree Zhuhai's board who also served as Gree Zhuhai's President and CEO, copying no one else from Gree Zhuhai or Gree Hong Kong. In this email, Gree USA's CEO stated that "GREE headquarters" had told him not to report the Gree dehumidifiers to the CPSC. Specifically, the Gree USA CEO stated that "GREE headquarters" had told him not to report that the Gree dehumidifiers may be defective and catch on fire and that they might have overheating parts and plastic parts that could burn because the plastic did not meet the UL standard for fire resistance. Gree USA's CEO warned in his email that any company or individual who withheld from the CPSC information about a dangerous product could face severe punishment, including criminal prosecution. Gree USA's CEO asked how Gree Zhuhai would pay future costs related to the Gree dehumidifiers, including any potential harm to MJC America Ltd. ("MJC America"), a company owned by Gree USA's CEO, CFO and CAO which also sold the defective Gree dehumidifiers. Gree USA's CEO stated that if Gree Zhuhai did not give him clear instructions on how to handle the Gree dehumidifiers within a matter of days, then he would inform the CPSC about the dehumidifiers. No one replied to this email.

14. On September 13, 2012, Gree USA's CEO sent another email to Gree Hong Kong Manager #1. In this email, Gree USA's CEO discussed how a recall of the defective Gree dehumidifiers might be handled and attached the CPSC's "Recall Handbook." Gree USA's CEO also

5

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

discussed the financial costs and lost sales that could result from a recall. He did not express any consideration or concern about how defective Gree dehumidifiers could harm consumers. Gree USA's CEO asked Gree Hong Kong Manager #1 to forward this email to Gree Zhuhai's chief engineer.

15. On September 19, 2012, Gree Hong Kong Manager #1 came to Gree USA's offices in City of Industry, California, to meet with Gree USA's CEO. A Gree Zhuhai engineer and three other Gree USA officers also participated in the meeting. This meeting was audio recorded by agreement.

16. At this September 19 meeting, Gree Hong Kong Manager #1 stated that Gree Zhuhai's testing of the Gree dehumidifiers was not able to reproduce the reported fire, but had revealed two defects: (1) the dehumidifiers used plastics that did not meet UL standards for fire resistance; and (2) electrical arcing caused by the dehumidifiers' compressors overheating could burn the non-UL standard plastic used in these dehumidifiers. The Gree Zhuhai engineer at the meeting also discussed these defects. Gree Hong Kong Manager #1 stated that he was aware of at least five consumer reports of Gree dehumidifiers overheating and catching fire but that Gree Zhuhai "still believe[d] that the fire case is a relatively isolated case . . . associated with atrocious conditions." He also stated that Gree Zhuhai would modify the manufacture of all future dehumidifiers to fix this problem so they would not catch fire.

<u>The Gree Companies Decide To Delay Reporting and Recalling</u>

<u>Their Defective Dehumidifiers</u>

17. At this same September 19 meeting, Gree Hong Kong Manager #1 said that the meeting participants' decisions on what to do about

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

the Gree dehumidifiers should be guided by the principle of minimizing the costs and loss of reputation to the Gree Companies. Gree Hong Kong Manager #1 said that Gree Zhuhai wanted to delay any recall of the dehumidifiers for 6 to 9 months because delaying a recall would reduce the recall's effect on Gree dehumidifier sales. Gree Hong Kong Manager #1 stated that an immediate recall would have a significant, and negative, effect on 2012 and 2013 Gree dehumidifier sales. Gree Hong Kong Manager #1 stated that a recall could be delayed 6 to 9 months because cooler fall and winter temperatures would help prevent Gree dehumidifiers from overheating and catching fire, and that there should be very few, if any, dehumidifier fires in the 6 to 9 months following September 2012.

18. In response to what Gree Hong Kong Manager #1 said, Gree USA's CEO said at the meeting that the Gree dehumidifiers' defects were very significant and had important legal implications. But the Gree USA CEO did not push to inform the CPSC of the dehumidifiers. Rather, Gree USA's CEO recommended only that the Gree Companies have another company test the Gree dehumidifiers and then decide whether to delay the recall. Gree Hong Kong Manager #1 responded by urging the Gree USA officers not to conduct such a test of the Gree dehumidifiers because that test would show that the dehumidifiers used plastic that did not meet UL standards for fire resistance. Gree USA's CEO said that the Gree USA officers understood what Gree Zhuhai was asking them to do and needed time to think before making a decision about how to proceed.

19. Two days after the September 19, 2012 meeting, Gree USA's CEO sent an email to Gree Zhuhai's chief engineer and copied the email to Gree Zhuhai's board chairperson. In his September 21, 2012

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

email, Gree USA's CEO said that he understood that Gree Zhuhai wanted to delay a recall of the Gree dehumidifiers for 6 to 9 months.  Gree USA's CEO also said that he thought that the Gree dehumidifiers were still likely to catch fire, and that, after careful consideration, Gree USA's officers had decided to report the Gree dehumidifiers to the United States government.

20. The next day, Gree Zhuhai's chief engineer replied to the September 21, 2012 email from Gree USA's CEO without copying Gree Zhuhai's board chairperson.  In his September 22, 2012 email, Gree Zhuhai's chief engineer said that Gree Zhuhai had clearly expressed its opinion about how to handle the defective Gree dehumidifiers, and that he hoped Gree USA's CEO would follow that opinion.  Gree Zhuhai's chief engineer said that he had no authority to approve what Gree USA's CEO proposed in his September 21, 2012 email and that he hoped Gree USA's CEO would report his decision on how to handle the defective Gree dehumidifiers to Gree Zhuhai's board chairperson and listen to her opinion.

21. On September 28, 2012, Gree USA's CEO sent an email to Gree Zhuhai's board chairperson, copying no one else from Gree Zhuhai or Gree Hong Kong.  In his email, Gree USA's CEO stated again that Gree's dehumidifiers had two known defects: (1) the compressors in the dehumidifiers could overheat; and (2) the plastic in the dehumidifiers did not meet UL standards for fire resistance, meaning that the plastic would burn when overheated.  Gree USA's CEO said that it was known that these two defects could cause the dehumidifiers to catch fire and that there were numerous consumer complaints about the dehumidifiers in fact catching fire.  Gree USA's CEO also said that the Gree Companies had sold millions of

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

these defective dehumidifiers.  Gree USA's CEO further related that he believed the Gree Companies should recall the dehumidifiers and warn consumers that using them could result in personal injuries and property damage, but that Gree Zhuhai had not agreed to a recall.  Gree USA's CEO warned that a recall could cost hundreds of millions of dollars, would harm the reputation of Gree products, and would reduce the Gree Companies' market share.  But Gree USA's CEO also warned that if Gree Zhuhai did not reach an agreement with Gree USA on the recall of the dehumidifiers, then Gree USA unilaterally would report the Gree dehumidifiers to the United States government.  Gree USA's CEO concluded his email by saying that this was a very important and urgent matter.  Neither Gree Zhuhai's board chairperson nor anyone else at Gree Zhuhai replied to this email.

22. Despite the Gree USA's CEO's September 4, 10, 21, and 28, 2012 emails, no employee of the Gree Companies reported the Gree dehumidifiers' defects or risks, or the known consumer complaints of fires related to the dehumidifiers, to the CPSC in September 2012.

23. In September 2012, Gree USA sold at least 24,999 defective Gree dehumidifiers to retailers in the United States for approximately $2,558,019.  The Gree Companies knew that the retailers wanted dehumidifiers that met all UL standards and did not burn when overheated.  The Gree Companies knew that Gree USA represented to its retailers that the Gree dehumidifiers met all UL standards.  Gree USA's CEO, CFO and CAO knew that Gree USA's representations that these Gree dehumidifiers met all UL standards were false when these dehumidifiers were sold.

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

<u>The Gree Companies Continue to Sell</u>

<u>Their Defective Dehumidifiers in the United States</u>

<u>Without Reporting Them to the CPSC</u>

24. On October 19, 2012, a sales representative for Gree USA met in person with Gree Zhuhai's board chairperson in China. During this meeting, the sales representative discussed the defective Gree dehumidifiers with Gree Zhuhai's board chairperson. Gree Zhuhai's board chairperson said that she would send a new Gree Hong Kong manager ("Gree Hong Kong Manager #2") to the United States to address the problems associated with the dehumidifiers.

25. In October 2012, Gree USA sent to Gree Zhuhai new consumer reports of fires related to the Gree dehumidifiers. These reports contradicted Gree Hong Kong Manager #1's statements at the September 19 meeting that a recall could be delayed 6 to 9 months because cooler fall and winter temperatures would help prevent dehumidifiers from overheating and catching fire and that there should be very few, if any, dehumidifier fires in the 6 to 9 months following September 2012. Despite these new consumer reports of fires caused by Gree dehumidifiers, no employee of the Gree Companies informed the CPSC about the dehumidifiers' defects or risks in October 2012.

26. In October 2012, Gree USA sold at least 2,938 defective Gree dehumidifiers to retailers in the United States for approximately $429,426. The Gree Companies knew that the retailers wanted dehumidifiers that met all UL standards and did not burn when overheated. The Gree Companies knew that Gree USA represented to its retailers that the Gree dehumidifiers met all UL standards. Gree USA's CEO, CFO and CAO knew that Gree USA's representations

10

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

that these Gree dehumidifiers met all UL standards were false when these dehumidifiers were sold.

The Gree Companies Receive Another Test Report Showing

That Their Dehumidifiers are Defective and Dangerous

27. In late October 2012, Gree USA sent two Gree dehumidifiers to an independent testing company for testing.  On November 5, 2012, the testing company wrote a report confirming and reiterating that the Gree dehumidifiers were defective because the compressors in the dehumidifiers could run continuously and thereby overheat to an "extreme high temperature."  Gree USA's CEO received this report on November 6, 2012.  Gree USA's CEO immediately sent the report to Gree Hong Kong Manager #2, who had taken over responsibility for the importation and sale of the Gree dehumidifiers in the United States from Gree Hong Kong Manager #1.

The Gree Companies Continue to Sell

Their Defective Dehumidifiers in the United States

Without Reporting Them to the CPSC

28. At the end of November 2012, Gree USA's CEO told Gree Hong Kong Manager #2 that an attorney advised him to inform the CPSC immediately of all consumer reports of fires related to the Gree dehumidifiers.  Despite this legal advice and the November 5, 2012 test report reiterating that the Gree dehumidifiers were dangerously defective, no employee of the Gree Companies informed the CPSC about the dehumidifiers' defects, risks, or reported fires in November 2012.

29. In November 2012, Gree USA sold at least 6,817 defective Gree dehumidifiers to retailers in the United States for approximately $792,067.  The Gree Companies knew that the retailers

11

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

wanted dehumidifiers that met all UL standards and did not burn when overheated. The Gree Companies knew that Gree USA represented to its retailers that the Gree dehumidifiers met all UL standards. Gree USA's CEO, CFO and CAO knew that Gree USA's representations that these Gree dehumidifiers met all UL standards were false when these dehumidifiers were sold.

### The Gree Companies Have Yet Another Meeting to Discuss Their Defective Dehumidifiers But Still Do Not Inform the CPSC

30. On December 18, 2012, Gree USA's CEO and another Gree USA officer went with an attorney to Hong Kong to meet with Gree Hong Kong Manager #2, a Gree Zhuhai engineer, Gree Zhuhai's Chief Financial Officer ("CFO") and three attorneys representing Gree Zhuhai. At this meeting, Gree USA's CEO discussed the November 5, 2012 test report with Gree Hong Kong Manager #2, the Gree Zhuhai engineer and the Gree Zhuhai CFO. Gree Hong Kong Manager #2, the Gree Zhuhai engineer and the Gree Zhuhai CFO told Gree USA's CEO that Gree Zhuhai would test the Gree dehumidifiers and let him know the results of their testing.

31. No employee of the Gree Companies informed the CPSC about the dehumidifiers' defects, risks, or reported fires in December 2012.

32. In December 2012, Gree USA sold at least 1,395 defective Gree dehumidifiers to retailers in the United States for approximately $201,835. The Gree Companies knew that the retailers wanted dehumidifiers that met all UL standards and did not burn when overheated. The Gree Companies knew that Gree USA represented to its retailers that the Gree dehumidifiers met all UL standards. Gree USA's CEO, CFO and CAO knew that Gree USA's representations

12

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

that these Gree dehumidifiers met all UL standards were false when these dehumidifiers were sold.

The Gree Companies Decide to Keep Selling

Their Defective Dehumidifiers in the United States

Without Reporting Them to the CPSC

33. On January 23, 2013, a Gree USA officer sent an email to Gree Hong Kong Manager #2.  The email stated that Gree USA's and MJC America's insurance company suggested that Gree USA report the Gree dehumidifiers to the CPSC and recall all of the defective Gree dehumidifiers.  The email also stated that the insurance company "wanted to know if any actions were taken to test the product design in case it is defective" and was told that "the product was submitted to several different testing and no faulty [sic] in the design was found[,] also that new production has an extra protection[.]"  The Gree USA officer further reported in her email that Gree USA had received a new consumer report of a dehumidifier fire and asked how Gree USA should handle this report.

34. Also on January 23, 2013, Gree Zhuhai told Gree USA in writing that it had tested its dehumidifiers and that they were not defective and could be sold in the United States.  Gree Zhuhai did not provide Gree USA with any details on its testing or explain the inconsistency in its test results with those of all prior tests of the Gree dehumidifiers.

35. Despite the recommendation of Gree USA's insurance company to report the Gree dehumidifiers to the CPSC and recall the defective Gree dehumidifiers, and the new consumer report of fire, no employee of the Gree Companies informed the CPSC about the

13

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

dehumidifiers' defects, risks, or reported fires in January or February 2013.

36. Gree USA sold at least 7,609 and 29,857 defective Gree dehumidifiers in January and February 2013, respectively, to retailers in the United States for approximately $905,291, and $3,255,542, respectively. The Gree Companies knew that the retailers wanted dehumidifiers that met all UL standards and did not burn when overheated. The Gree Companies knew that Gree USA represented to its retailers that the Gree dehumidifiers met all UL standards. Gree USA's CEO, CFO and CAO knew that Gree USA's representations that these Gree dehumidifiers met all UL standards were false when these dehumidifiers were sold.

### The Gree Companies Finally Report Their Defective Dehumidifiers to the CPSC but Continue to Sell Those Dehumidifiers in the United States

37. On March 14, 2013, Gree USA, Gree Zhuhai, and MJC America made an initial report to the CPSC about their dehumidifiers. The initial report stated that they had sold approximately 1.6 million Gree dehumidifiers in the United States since 2010, and that consumers who had purchased those dehumidifiers had reported fires, overheating, smoke, odors, and property damage related to these dehumidifiers. The initial report did not mention the defects in the Gree dehumidifiers that caused the dehumidifiers to burn.

38. Gree USA sold at least 6,025 and 7,596 defective Gree dehumidifiers in March and April 2013, respectively, to retailers in the United States for approximately $571,702 and $799,244, respectively. The Gree Companies knew that the retailers wanted dehumidifiers that met all UL standards and did not burn when

14

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

overheated.  The Gree Companies knew that Gree USA represented to its retailers that the Gree dehumidifiers met all UL standards. Gree USA's CEO, CFO and CAO knew that Gree USA's representations that these Gree dehumidifiers met all UL standards were false when these dehumidifiers were sold.

39. On April 23, 2013, the Chief Administrative Officer of Gree USA received an independent test report showing that the plastic used in four Gree dehumidifiers made in 2010, 2011, and 2012 did not meet UL standards for fire resistance.

40. On April 30, 2013, Gree USA, Gree Zhuhai, and MJC America made a second, more comprehensive report to the CPSC about their defective Gree dehumidifiers.  This report stated that Gree USA, Gree Zhuhai, and MJC America sold approximately 1.84 million of the Gree dehumidifiers and that they had not concluded that these Gree dehumidifiers posed a substantial product hazard or that the dehumidifiers needed to be recalled.  This report listed nineteen known consumer reports of fires involving Gree dehumidifiers with all but one of the fires occurring between June 14, 2012 and April 15, 2013.

41. After their April 30, 2013 report to the CPSC, the Gree Companies continued to receive consumer reports of fires caused by Gree dehumidifiers.

42. The Gree Companies received at least $9,500,000 from the distribution and wholesale of defective Gree dehumidifiers from September 2012 through April 2013.  Additionally, the Gree Companies received at least $29,500,000 from the distribution and wholesale of other non-defective Gree dehumidifiers from September 2012 through April 2013.

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

43. United States consumers lost at least $17,400,000 by purchasing defective and dangerous Gree dehumidifiers manufactured, distributed, or sold by the Gree Companies from September 2012 through April 2013.

44. From September 2012 to April 2013, United States consumers sustained at least $2,100,000 worth of property damaged or destroyed in fires caused by the defective Gree dehumidifiers.

<u>The Gree Companies Imported Their Defective Dehumidifiers</u>

<u>With False UL Certifications</u>

45. Between 2010 and at least until September 2012, the Gree Companies imported into the United States Gree dehumidifiers with certifications that the dehumidifiers met all UL standards, when in fact the dehumidifiers did not meet UL standards.

<u>The Gree Companies Finally Recall</u>

<u>Their Defective Dehumidifiers</u>

46. By mid-July 2013, Gree Zhuhai decided to recall its defective Gree dehumidifiers and notified the CPSC of this decision. After making this decision, Gree Zhuhai started to plan for the recall.

47. On September 12, 2013, Gree Zhuhai and the CPSC announced a voluntary recall of 2.2 million Gree dehumidifiers in the United States.

48. Despite its recall, Gree Zhuhai has received hundreds of consumer reports of fires and overheating caused by defective Gree dehumidifiers. Consumers have reported more than 2,000 incidents involving Gree dehumidifiers, including 450 fires and more than $19,000,000 in property damage.

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

49. No later than September 19, 2012, each of the Gree Companies had information which reasonably supported the conclusion that their Gree dehumidifiers: (1) contained defects which created a substantial product hazard, that is, a substantial risk of injury to the public; and (2) created an unreasonable risk of serious injury or death.  After learning this information, each of the Gree Companies knowingly and willfully failed immediately to inform the United States Consumer Product Safety Commission about these dangerous defects in their Gree dehumidifiers or the dangerous risks posed by their Gree dehumidifiers.

50. As a result of the Gree Companies' failure to report immediately their defective Gree dehumidifiers to the United States Consumer Product Safety Commission, the Gree Companies were able to continue to distribute and wholesale their dehumidifiers, including defective Gree dehumidifiers, from September 2012 through April 2013, and received more than $39,000,000 in proceeds from this distribution and wholesale of Gree dehumidifiers.  For purposes of forfeiture, the approximately $39,000,000 that the Gree Companies received are assets associated with their failure to report immediately their defective Gree dehumidifiers to the United States Consumer Product Safety Commission in violation of 15 U.S.C. §§ 2068(a)(4) and 2070.

17

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

**Exhibit D**

**Enhanced Compliance Measures**

**I.    Compliance Program**

So as to address and further reduce the risk of any recurrence of the misconduct at issue in this matter, Defendants Gree Electric Appliances, Inc. of Zhuhai ("Gree Zhuhai"), Hong Kong Gree Electric Appliances Sales Co., Ltd. ("Gree Hong Kong"), and Gree USA, Inc. ("Gree USA") (collectively the "Gree Companies") hereby agree as part of Gree USA's Plea Agreement and Gree Zhuhai's and Gree Hong Kong's Deferred Prosecution Agreement with the United States Department of Justice's Consumer Protection Branch and the United States Attorney's Office for the Central District of California ("the government") to adopt and maintain, or modify as necessary, compliance programs, including internal controls, compliance policies, and procedures (collectively the "Compliance Program") to ensure product safety and compliance with the Consumer Product Safety Act, 15 U.S.C. § 2051 *et seq.* ("CPSA"), and regulations and agreements enforced by the United States Consumer Product Safety Commission ("CPSC") with respect to any consumer product manufactured, imported, distributed, or sold by the Gree Companies in the United States.  The Compliance Program, at a minimum, shall contain the following elements:

Written Standards, Policies and Procedures

1.    The Gree Companies shall establish and maintain, or modify as necessary, written standards, policies, and procedures with sufficient resources for responding to, investigating, and documenting allegations of potential product hazards, and violations of the CPSA, its implementing regulations, and agreements with the

1

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

CPSC, and which provides for the appropriate forwarding to personnel at the Gree Companies with authority to act ("Compliance Officer") of all information that may relate to, or affect, product safety and CPSA compliance, including all reports and complaints involving consumer products, whether an injury is referenced or not, and that may relate to, or affect, UL certification or listing, whether confirmatory testing has been conducted or not.

2. The Gree Companies shall implement, maintain, and enforce an effective system of internal controls and procedures, to the extent that they do not yet exist, designed to ensure that, with respect to all consumer products manufactured, imported, or distributed by the Gree Companies and sold in the United States:

a. information required to be disclosed by the Gree Companies to the CPSC is recorded, processed, and reported in accordance with applicable law;

b. all required reporting made to the CPSC is timely, truthful, complete, accurate, and in accordance with applicable law; and

c. prompt disclosure is made to the Gree Companies' relevant senior management of any deficiencies in the design or operation of such internal controls and procedures that are reasonably likely to adversely affect, in any material respect, the Gree Companies' ability to record, process, and report to the CPSC in accordance with applicable law.

<u>Confidential Employee Reporting</u>

3. The Gree Companies shall establish or modify as necessary a confidential reporting program for their employees and agents who wish to disclose any concerns related to consumer product safety or

2

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

quality to a Compliance Officer or another senior manager with authority to act as necessary.

4.    The Gree Companies shall publicize the existence of the confidential reporting program annually to their employees and agents through emails, posting on Company intranets, live or online training, or other effective means.  The confidential reporting program shall include a non-retribution, non-retaliation policy, and shall facilitate anonymous and confidential communications for which appropriate confidentiality shall be maintained.

5.    Upon receipt of a disclosure related to consumer product safety or quality, a Compliance Officer or a senior manager with authority to act as necessary shall make a diligent, good-faith inquiry into the disclosure to ensure that he or she has obtained all the information necessary to determine whether a further review should be conducted.  The Compliance Officer or senior manager shall conduct such further review of for any disclosure that is sufficiently specific to:

a.    permit determination of the appropriateness of the alleged impropriety; and

b.    provide an opportunity for taking corrective action.

6.    The Compliance Officer or senior manager shall maintain a disclosure log, which shall include a record and an accurate and complete summary of each disclosure related to consumer product safety or quality received (whether anonymous or not), the status of the respective reviews, and any corrective action taken in response to the reviews.  All information gathered by the confidential reporting program shall be maintained for at least five (5) years following closure of the review and corrective action.

3

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

<u>Training and Enforcement</u>

7. The Gree Companies shall implement and maintain, or modify as necessary, mechanisms designed to ensure that the Compliance Program is effectively communicated to all applicable directors, officers, employees, and where necessary and appropriate, agents, vendors, and business partners.

8. The Gree Companies shall establish and maintain, or modify as necessary, an effective system for providing guidance, training and advice to directors, officers, employees, and where necessary and appropriate, agents, vendors, and business partners, on complying with the CPSA, its implementing regulations, agreements with the CPSC, and the Compliance Program, including when they need advice on an urgent basis.

<u>Management Responsibility and Accountability</u>

9. The Gree Companies shall assign continuing responsibility for the implementation and oversight of the Compliance Program to one or more senior corporate executives who, by reason of background, experience, education, or training are competent to oversee product safety and regulatory compliance-related matters. Such corporate executive(s) shall have the authority to report directly to independent monitoring bodies, including internal auditors, the Company's Board of Directors, or any appropriate committee of the Board of Directors, and shall have an adequate level of autonomy from management as well as sufficient resources and authority to maintain such autonomy.

<u>Record Retention and Provision</u>

10. The Gree Companies shall ensure retention of all CPSA compliance-related records for at least five (5) years and shall

4

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

make such records available to the government or CPSC staff upon reasonable request, subject to applicable laws and regulations, as well as valid claims of attorney-client privilege or attorney work product doctrine.  However, the Gree Companies must provide to the government a log of any document or information that is not provided based on an assertion of law, regulation, or privilege, and the Gree Companies bear the burden of establishing the validity of any such assertions.

11.  Upon reasonable request of the government or CPSC staff, the Gree Companies shall provide written documentation of their compliance-related improvements, processes, and controls, including, but not limited to, the effective dates of such improvements, processes, and controls.  Upon reasonable request, the Gree Companies shall cooperate fully and truthfully with the government and CPSC staff to make available, in a manner agreed to by the parties, all non-privileged information and materials, and personnel deemed necessary by the government or CPSC staff, to identify and evaluate records related to the Gree Companies' compliance with the CPSA, its implementing regulations, agreements with the CPSC, and the Compliance Program.  The Gree Companies' cooperation pursuant to this paragraph is subject to applicable laws and regulations, as well as valid claims of attorney-client privilege or attorney work product doctrine.  However, the Gree Companies must provide to the government a log of any document or information that is not provided based on an assertion of law, regulation, or privilege, and the Gree Companies bear the burden of establishing the validity of any such assertions.

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

<u>Compliance Expert</u>

12. The Gree Companies shall retain, at the Gree Companies' expense, an independent person or persons (the "Expert"), without personal or financial ties (other than the retention agreement between the parties) to the Gree Companies and/or the families of their senior management, who by reason of background, experience, education, and training, is qualified to advise the Gree Companies on product safety and regulatory compliance issues under the CPSA and its implementing regulations. The Expert's qualifications shall include, but not be limited to, creating comprehensive product safety and regulatory compliance policies, designing employee training programs, and conducting regulatory compliance audits and inspections. The Gree Companies shall notify the government in writing of the name(s) and qualifications of the Expert as soon as they retain the Expert.

13. Within six months of the Effective Date of the Deferred Prosecution Agreement with Gree Zhuhai and Gree Hong Kong, the Expert shall, in consultation with the Gree Companies, start the process of auditing and advising the Gree Companies on the following aspects of their Compliance Program:

a. written standards, policies and procedures that provide for the appropriate forwarding to compliance personnel of all information that may relate to, or impact, CPSA compliance, including all reports and complaints involving consumer products manufactured, imported, or distributed by the Gree Companies and sold in the United States, whether an injury is referenced or not;

b. a mechanism for confidential employee reporting of compliance-related questions or concerns to either a compliance

6

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

officer or to another senior manager with authority to act as necessary;

c. effective communication of compliance-related policies and procedures regarding the CPSA to all applicable employees through training programs or otherwise;

d. senior management responsibility for CPSA compliance and accountability for violations of the CPSA and its implementing regulations; and

e. retention of all CPSA compliance-related records for at least five (5) years, and availability of such records to the government or CPSC staff upon reasonable request.

14. The Expert shall report to the government periodically, at no less than twelve-month intervals during a three-year term (the "Term"), regarding the Gree Companies' remediation and implementation of their Compliance Program and these Enhanced Compliance Measures. The Term shall begin on the Effective Date of the Deferred Prosecution Agreement with Gree Zhuhai and Gree Hong Kong. During the Term, the Expert shall submit an initial report and at least two (2) follow-up reports (collectively the "Expert Reports").

a. By no later than twelve (12) months from the Effective Date of the Deferred Prosecution Agreement with Gree Zhuhai and Gree Hong Kong, the Expert shall submit to the government a written report (the "initial Expert Report") setting forth a description of the Gree Companies' remediation efforts to date, and when necessary and appropriate, their proposals reasonably designed to improve their Compliance Program for ensuring consumer product safety and compliance with the CPSA. The initial Expert Report

7

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

shall include an evaluation of the aspects of the Gree Companies' Compliance Program set forth in Paragraph 13 above.

b.   The Expert shall submit to the government at least two (2) follow-up written reports (the "follow-up Expert Reports"). The first follow-up Expert Report shall be completed and delivered to the government no later than twelve (12) months after the initial Expert Report is submitted to the government.  The second follow-up Export Report shall be completed and delivered to the government no later than thirty (30) days before the end of the Term or twelve (12) months after the first follow-up Expert Report, whichever is earlier.  The follow-up Expert Reports shall assess whether the Gree Companies' Compliance Program is reasonably designed to ensure consumer product safety and compliance with the CPSA, and include an evaluation of the aspects of the Gree Companies' Compliance Program set forth in Paragraph 13 above.

c.   The Expert Reports likely will include proprietary, financial, confidential, and competitive business information. Public disclosure of the Expert Reports could discourage cooperation or impede pending or potential government investigations and thus undermine the objectives of the reporting requirement.  For these reasons, among others, the Expert Reports and contents thereof are intended to remain and shall remain non-public, except as otherwise agreed to by the Gree Companies and the government in writing, or except to the extent that the government determines in its sole discretion that disclosure would be in furtherance of the government's discharge of its duties and responsibilities or is otherwise required by law.

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

d. The Expert or the Gree Companies may submit a timely written request for an extension of time to provide any of the Expert Reports. A written request is timely if received by the government at least five (5) days before the date the report is due. Timely requests for extension will not be unreasonably denied.

## II. Gree Reporting Requirements

15. The Gree Companies shall report to the government periodically, at no less than twelve-month intervals during the three-year Term, regarding their remediation and implementation of the Compliance Program and these Enhanced Compliance Measures. As with the Expert Reports, the Term shall begin on the Effective Date of the Deferred Prosecution Agreement with Gree Zhuhai and Gree Hong Kong. During the Term, the Gree Companies shall:

a. Conduct an initial review and submit an initial report; and

b. Conduct and prepare at least two (2) follow-up reviews and reports, as described below.

16. By no later than twelve (12) months from the Effective Date of the Deferred Prosecution Agreement with Gree Zhuhai and Gree Hong Kong, the Gree Companies shall submit to the government a written report (the "initial Gree Report") setting forth a complete description of their remediation efforts to date, and when necessary and appropriate, their proposals reasonably designed to improve the Gree Companies' Compliance Program for ensuring consumer product safety and compliance with the CPSA, and the proposed scope of the subsequent reviews.

17. The Gree Companies shall undertake at least two (2) follow-up reviews and reports (the "follow-up Gree Reports"),

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

incorporating the government's views on the Gree Companies' previous reviews and reports, to further monitor and assess whether the Gree Companies' Compliance Program is reasonably designed to ensure consumer product safety and detect and prevent violations of the CPSA.

18.  The first follow-up Gree Report shall be completed and delivered to the government no later than twelve (12) months after the initial Gree Report is submitted to the government.  The second follow-up Gree Report shall be completed and delivered to the government no later than thirty (30) days before the end of the Term or twelve (12) months after the first follow-up Gree Report, whichever is earlier.

19.  The initial and follow-up Gree Reports may rely on, reference, or incorporate, in whole or in part, the Expert Reports.

20.  The Gree Reports likely will include proprietary, financial, confidential, and competitive business information. Public disclosure of the Gree Reports could discourage cooperation or impede pending or potential government investigations and thus undermine the objectives of the reporting requirement.  For these reasons, among others, the Gree Reports and contents thereof are intended to remain and shall remain non-public, except as otherwise agreed to by the Gree Companies and the government in writing, or except to the extent that the government determines in its sole discretion that disclosure would be in furtherance of the government's discharge of its duties and responsibilities or is otherwise required by law.

21.  The Gree Companies may submit a timely written request for an extension of time to provide any of the Gree Reports.  A written

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

request is timely if received by the government at least five (5) days before the date the report is due.  Timely requests for extension will not be unreasonably denied.

### III. Certifications and Resolutions

22.  In addition to the Gree Companies' reporting requirements set forth in Paragraphs 15-21, the Gree Companies shall make annual compliance-related certifications and resolutions to the government as described below:

a.   The Gree Companies shall conduct the reviews described in this paragraph and Paragraph 23 for each of three (3) Review Periods.  The duration of each Review Period shall be twelve (12) months, beginning with the first twelve (12) month period following the Effective Date of the Deferred Prosecution Agreement with Gree Zhuhai and Gree Hong Kong.  The Gree Companies shall provide the certifications and resolutions described in this paragraph and Paragraph 23 to the government within one hundred twenty (120) days following the end of each of the Review Periods.

b.   Following the end of each Review Period, the President or Chief Executive Officer ("President") of Gree Zhuhai shall conduct a review of the Gree Companies' compliance with their obligations under the Compliance Program and these Enhanced Compliance Measures.  Based on his or her review, the President shall submit to the government a certification stating that, to the best of his or her knowledge based on a reasonable inquiry, during the preceding Review Period, the Gree Companies complied with all its obligations under the Compliance Program and these Enhanced Compliance Measures.  The certification shall summarize the review described above.  If the President is unable to provide any part of

11

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

this certification as specified herein, he or she shall provide a detailed explanation of why he or she is unable to provide such certification.  The certification and detailed explanation shall be sworn to under the pains and penalty of perjury in the United States (and, if applicable, under the pains and penalty of perjury in the jurisdiction where the President makes the certification or detailed explanation ("Other Jurisdiction")) and shall set forth that the representations contained therein may be provided to, relied upon, and material to the United States (and, if applicable, the Other Jurisdiction), and that a knowing false statement could result in criminal or civil liability for the signatory in the United States (and, if applicable, the Other Jurisdiction).

23.  Following the end of each Review Period, the Board of Directors of Gree Zhuhai or a designated Committee thereof (the "Board"), shall conduct a review of the Gree Companies' compliance with their obligations under the Compliance Program and these Enhanced Compliance Measures.  The Board shall evaluate the Gree Companies' compliance by, at a minimum, receiving updates about the activities of management employees responsible for ensuring compliance with the Compliance Program and these Enhanced Compliance Measures, and updates about the adoption and implementation of policies, procedures, and practices as it relates to such compliance.  Based on its review, the Board shall submit to the government a resolution that summarizes its review and oversight as set forth above and that includes, at a minimum, the following language:

> The Board of Directors of Gree Zhuhai (or a designated
> Committee of the Board) has made a reasonable inquiry

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

as described in Paragraph 23 of the Enhanced Compliance Measures Exhibit D to the Plea Agreement with Gree USA and the Deferred Prosecution Agreement with Gree Zhuhai and Gree Hong Kong concerning the Gree Companies' compliance with their obligations under the Compliance Program and the Enhanced Compliance Measures in Exhibit D for the preceding Review Period, [insert date range], including the performance of management employees responsible for ensuring such compliance. Based on its reasonable inquiry and review, the Board has concluded that, to the best of its knowledge, the Gree Companies have complied with all their obligations under the Compliance Program and the Enhanced Compliance Measures in Exhibit D to the Plea Agreement with Gree USA and the Deferred Prosecution Agreement with Gree Zhuhai and Gree Hong Kong.

If the Board is unable to provide any part of this statement, it shall include in the resolution a written explanation of the reasons why it is unable to provide such a statement.

24. The Gree Companies may submit a timely written request for an extension of time to provide the annual President certification or Board resolution required in Paragraphs 22 and 23. A written request is timely if received by the government at least five (5) days prior to the date by which the certification or resolution is due. Timely requests for extension will not be unreasonably denied.

25. All certifications, resolutions, reports, notifications and other materials and information that must be provided to the government as a part of these Enhanced Compliance Measures shall be delivered by: (1) email to an email address provided by the government; and (2) personal delivery, or overnight delivery by a recognized delivery service addressed to the following:

Director, Consumer Protection Branch
U.S. Department of Justice
450 5th Street, NW, Suite 6400 South
Washington, DC 20001

13

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

and

Chief, Environmental and Community Safety Crimes Section
U.S. Attorney's Office
Central District of California
1300 United States Courthouse
312 North Spring Street
Los Angeles, CA 90012

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

**Exhibit E**

TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JOSEPH O. JOHNS (Cal. Bar No. 144524)
DENNIS MITCHELL (Cal. Bar No. 116039)
Assistant United States Attorneys
Environmental and Community Safety
Crimes Section
    1300 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:  (213) 894-4536
    Facsimile:  (213) 894-6436
    E-mail:  joseph.johns@usdoj.gov

GUSTAV W. EYLER
Director
United States Department of Justice
Consumer Protection Branch
ALLAN GORDUS
NATALIE N. SANDERS
MARYANN N. MCGUIRE
Trial Attorneys
Consumer Protection Branch
U.S. Department of Justice
    P.O. Box 386
    Washington, DC 20044
    Telephone: (202) 307-1862
    Facsimile: (202) 514-8742
    Email:    allan.gordus@usdoj.gov
Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. CR 21- |
|---|---|
| Plaintiff, | STIPULATION REGARDING REQUEST FOR (1) CONTINUANCE OF TRIAL DATE AND (2) FINDINGS OF EXCLUDABLE TIME PERIODS PURSUANT TO SPEEDY TRIAL ACT; [proposed] ORDER |
| v. | |
| GREE ELECTRIC APPLIANCES, INC. OF ZHUHAI, and HONG KONG GREE ELECTRIC APPLIANCES SALES CO., LTD., | |
| Defendants. | |

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

Plaintiff United States of America, by and through its counsel of record, the United States Department of Justice's Consumer Protection Branch and the United States Attorney's Office for the Central District of California (collectively, the "government"), and defendants GREE ELECTRIC APPLIANCES, INC. OF ZHUHAI ("GREE ZHUHAI") and HONG KONG GREE ELECTRIC APPLIANCES SALES CO., LTD. ("GREE HONG KONG"), both individually and by and through their counsel of record, James M. Koukios and Sophie Cash, hereby stipulate as follows:

1. The Information and Deferred Prosecution Agreement in this case were filed on October 26, 2021. The Speedy Trial Act, 18 U.S.C. § 3161, originally required that the trial commence on or before January 4, 2022.

2. By this stipulation, the government, GREE ZHUHAI, and GREE HONG KONG move to continue the trial date to October 26, 2024. This is the first request for a continuance of the trial date.

3. The government, GREE ZHUHAI, and GREE HONG KONG request the continuance based upon the following facts, which the parties believe demonstrate good cause to support the appropriate findings under the Speedy Trial Act:

a. GREE ZHUHAI and GREE HONG KONG are charged with Failure to Furnish Information Required by 15 U.S.C. § 2064(b), in violation of 15 U.S.C. §§ 2068(a)(4) and 2070.

b. GREE ZHUHAI and GREE HONG KONG have entered into a Deferred Prosecution Agreement with the government, which was filed on October 26, 2021.

c. In light of the foregoing, the parties represent that additional time is necessary for GREE ZHUHAI and GREE HONG KONG to

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

demonstrate their compliance with the provisions of the Deferred Prosecution Agreement during the term of the agreement.

d. The government, GREE ZHUHAI, and GREE HONG KONG believe that failure to grant the continuance would be likely to make a continuation of the proceeding impossible or result in a miscarriage of justice.

e. The requested continuance is not based on congestion of the Court's calendar, lack of diligent preparation on the part of the attorneys for the government or the defense, or failure on the part of the attorneys for the government to obtain available witnesses.

4. For purposes of computing the date under the Speedy Trial Act by which GREE ZHUHAI's and GREE HONG KONG's trial must commence, the parties agree that the time period of October 26, 2021 to October 26, 2024, inclusive, should be excluded pursuant to 18 U.S.C. §§ 3161(h)(7)(A), (h)(7)(B)(i), and (h)(7)(B)(iv) because the delay results from a continuance granted by the Court at the government's, GREE ZHUHAI's, and GREE HONG KONG's request on the basis of the Court's finding that: (i) the ends of justice served by the continuance outweigh the best interest of the public and GREE ZHUHAI and GREE HONG KONG in a speedy trial; and (ii) failure to grant the continuance would be likely to make a continuance of the proceeding impossible, or result in a miscarriage of justice.

5. In addition, the parties agree that the time period of October 26, 2021 to October 26, 2024, inclusive, should be excluded pursuant to 18 U.S.C. § 3161(h)(2) because the delay constitutes a period during which prosecution is deferred by the attorneys for the government pursuant to a written agreement with GREE ZHUHAI and GREE

3

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

HONG KONG, with the approval of the Court, for the purpose of allowing GREE ZHUHAI and GREE HONG KONG to demonstrate their good conduct.

6. Nothing in this stipulation shall preclude a finding that other provisions of the Speedy Trial Act dictate that additional time periods be excluded from the period within which trial must commence. Moreover, the same provisions and/or other provisions of the Speedy Trial Act may in the future authorize the exclusion of additional time periods from the period within which trial must commence.

IT IS SO STIPULATED.

Dated: October 26, 2021    Respectfully submitted,

| UNITED STATES ATTORNEY'S OFFICE FOR THE CENTRAL DISTRICT OF CALIFORNIA | UNITED STATES DEPARTMENT OF JUSTICE CONSUMER PROTECTION BRANCH |
|---|---|
| TRACY L. WILKISON<br>Acting United States Attorney | GUSTAV W. EYLER<br>Director<br>Consumer Protection Branch |
| SCOTT M. GARRINGER<br>Assistant U.S. Attorney<br>Chief, Criminal Division | |

*Joseph O. Johns*

JOSEPH O. JOHNS
DENNIS MITCHELL **by AAG**
Assistant U.S. Attorneys

*10/26/21*
Date

*Allan Gordus*

ALLAN GORDUS
NATALIE N. SANDERS
MARYANN N. MCGUIRE
Trial Attorneys

*10/26/21*
Date

4

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

I am GREE ELECTRIC APPLIANCES, INC. OF ZHUHAI's attorney. I have carefully discussed every part of this stipulation and the continuance of the trial date with my client. I have fully informed my client of its Speedy Trial rights. To my knowledge, my client understands those rights and agrees to waive them. I believe that my client's decision to give up the right to be brought to trial earlier than October **26**, 2024 is an informed and voluntary one.

_____     10/21/2021
MORRISON FOERSTER LLP                 Date
JAMES M. KOUKIOS
SOPHIA H. CASH
Attorneys for Defendant
GREE ELECTRIC APPLIANCES, INC. OF
ZHUHAI

5

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

I have been authorized by defendant GREE ELECTRIC APPLIANCES, INC. OF ZHUHAI ("GREE ZHUHAI") to enter into this stipulation. I have read this stipulation and have carefully discussed it with GREE ZHUHAI's attorney. I understand GREE ZHUHAI's Speedy Trial rights. On behalf of GREE ZHUHAI, I voluntarily agree to the continuance of the trial date, and give up GREE ZHUHAI's right to be brought to trial earlier than October **26**, 2024.

_____    2021.10.20
NAME: Mingjing Li              Date

TITLE: Deputy Director,
Legal Department

Authorized Representative of
Defendant
GREE ELECTRIC APPLIANCES, INC. OF
ZHUHAI

6

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

CERTIFICATION OF INTERPRETER

I, [Ling Liu], am fluent in the written and spoken English and Mandarin languages. I accurately translated this entire document from English into Mandarin to defendant GREE ELECTRIC APPLIANCES, INC. OF ZHUHAI on this date.

Ling Liu

_____     2021.10.12
INTERPRETER                          Date

7

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

I am HONG KONG GREE ELECTRIC APPLIANCES SALES CO., LTD.'s attorney. I have carefully discussed every part of this stipulation and the continuance of the trial date with my client. I have fully informed my client of its Speedy Trial rights. To my knowledge, my client understands those rights and agrees to waive them. I believe that my client's decision to give up the right to be brought to trial earlier than October **26**, 2024 is an informed and voluntary one.

_____    10/21/2021
MORRISON & FOERSTER LLP              Date
JAMES M. KOUKIOS
SOPHIA H. CASH
Attorneys for Defendant
HONG KONG GREE ELECTRIC APPLIANCES
SALES CO., LTD.

8

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

I have been authorized by defendant HONG KONG GREE ELECTRIC APPLIANCES SALES CO., LTD. ("GREE HONG KONG") to enter into this stipulation. I have read this stipulation and have carefully discussed it with GREE HONG KONG's attorney. I understand GREE HONG KONG's Speedy Trial rights. On behalf of GREE HONG KONG, I voluntarily agree to the continuance of the trial date, and give up GREE HONG KONG's right to be brought to trial earlier than October 26, 2024.

_____          2021·10·20
NAME:   Guoqing Gan                        Date

TITLE: Director

Authorized Representative of
Defendant
HONG KONG GREE ELECTRIC APPLIANCES
SALES CO., LTD.

9

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

CERTIFICATION OF INTERPRETER

I, [Ling Liu], am fluent in the written and spoken English and Mandarin languages.  I accurately translated this entire document from English into Mandarin to defendant HONG KONG GREE ELECTRIC APPLIANCES SALES CO., LTD. on this date.

_Ling Liu_ 
INTERPRETER

_2021. 10.12_ 
Date

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JOSEPH O. JOHNS (Cal. Bar No. 144524)
DENNIS MITCHELL (Cal. Bar No. 116039)
Assistant United States Attorneys
Environmental and Community Safety
Crimes Section
    1300 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:  (213) 894-4536
    Facsimile:  (213) 894-6436
    E-mail:  joseph.johns@usdoj.gov

GUSTAV W. EYLER
Director
United States Department of Justice
Consumer Protection Branch
ALLAN GORDUS
NATALIE N. SANDERS
MARYANN N. MCGUIRE
Trial Attorneys
    450 5th St NW, Suite 6400 South
    Washington, DC 20001
    Telephone: (202) 307-1862
    Facsimile: (202) 514-8742
    E-mail: allan.gordus@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. CR 21- |
|---|---|
| Plaintiff, | [proposed] ORDER CONTINUING TRIAL DATE AND FINDINGS REGARDING EXCLUDABLE TIME PERIODS PURSUANT TO SPEEDY TRIAL ACT |
| v. | |
| GREE ELECTRIC APPLIANCES, INC. OF ZHUHAI, and HONG KONG GREE ELECTRIC APPLIANCES SALES CO., LTD., | |
| Defendants. | |

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

The Court has read and considered the Stipulation Regarding Request for (1) Continuance of Trial Date and (2) Findings of Excludable Time Periods Pursuant to Speedy Trial Act, filed by the parties in this matter on October 26, 2021. The Court hereby finds that the Stipulation, which this Court incorporates by reference into this Order, demonstrates facts that support a continuance of the trial date in this matter, and provides good cause for a finding of excludable time pursuant to the Speedy Trial Act, 18 U.S.C. § 3161.

The Court further finds that: (i) the ends of justice served by the continuance outweigh the best interest of the public and defendants in a speedy trial; (ii) failure to grant the continuance would be likely to make a continuation of the proceeding impossible, or result in a miscarriage of justice; and (iii) pursuant to 18 U.S.C. § 3161(h)(2), because the parties have entered into and filed a deferred prosecution agreement and the time period would allow defendants to demonstrate their good conduct.

THEREFORE, FOR GOOD CAUSE SHOWN:

1.   The trial in this matter is continued to October 26, 2024.

2.   The time period of October 26, 2021 to October 26, 2024, inclusive, is excluded in computing the time within which the trial must commence, pursuant to 18 U.S.C. § 3161(h)(2), (h)(7)(A), (h)(7)(B)(i), and (h)(7)(B)(iv).

3.   Nothing in this Order shall preclude a finding that other provisions of the Speedy Trial Act dictate that additional time periods are excluded from the period within which trial must commence. Moreover, the same provisions and/or other provisions of the Speedy Trial Act may in the future authorize the exclusion of

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

additional time periods from the period within which trial must commence.

    IT IS SO ORDERED.


_____          _____
 DATE                                      HONORABLE
                                           UNITED STATES DISTRICT JUDGE


Presented by:

       /s/
_____
 JOSEPH O. JOHNS
 DENNIS MITCHELL
 Assistant United States Attorneys

3

2311-CC00536
Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM



United States
**CONSUMER PRODUCT
SAFETY COMMISSION**

# Gree Recalls 12 Brands of Dehumidifiers Due to Serious Fire and Burn Hazards; More Than $2 Million in Property Damage Reported

Note: Four additional models of SoleusAir dehumidifiers have been added, several date code ranges have been expanded and 160 additional incidents and 25 more fires reported. (Oct. 30, 2013) This recall was expanded on January 30, 2014 to include 350,000 GE-brand dehumidifiers made by Gree.

EXHIBIT
2

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM



Fire Damage

consumers.

**Remedy:**

Refund

**Recall Date:**

September 12, 2013

**Units:**

About 2.2 million in the United States and 52,500 in Canada

## Consumer Contact

Gree toll-free at (866) 853-2802 from 8 a.m. to 6 p.m. ET Monday through Friday or online at greedehumidifierrecall.com and click on Recall for more information.

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

# Recall Details

**In Conjunction With:**



canada Flag

**Description:**

This recall involves 20, 25, 30, 40, 45, 50, 65 and 70-pint dehumidifiers with brand names Danby, De'Longhi, Fedders, Fellini, Frigidaire, Gree, Kenmore, Norpole, Premiere, Seabreeze, SoleusAir and SuperClima.  Recalled model numbers and date codes are listed below. The brand name and the pint capacity are printed on the front of the dehumidifier. The model number and date code are printed on a sticker on the back, front or side of the unit. The dehumidifiers are white, beige, gray or black plastic and measure between 19 and 24 inches tall, 13 and 15 inches wide, and 9 and 11 inches deep.

## Danby or Premiere

| Model number | Capacity | Date code range |
| --- | --- | --- |
| DDR3011 | 30-pint | All units |
| DDR30P | 30-pint | All units |
| DDR4511 | 45-pint | All units |
| DDR45P | 45-pint | All units |

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

| DDR6511 | 65-pint | All units |
|---------|---------|-----------|
| DDR65CHP | 65-pint | All units |

## De'Longhi or SuperClima

| Model number | Capacity | Date code range |
|--------------|----------|-----------------|
| DDSE30 | 30-pint | All units |
| DDSE40 | 40-pint | All units |
| DG50 | 50-pint | All units |

## Fedders

| Model number | Capacity | Date code range |
|--------------|----------|-----------------|
| FEDH-MAH030-C15 | 30-pint | All units |
| FEDH-MAH070-C15 | 70-pint | All units |

## Fellini

| Model number | Capacity | Date code range |
|--------------|----------|-----------------|
| 13-06030 | 50-pint | All units |
| 13-06031 | 70-pint | All units |

## Frigidaire

| Model number | Pint capacity | Date code range |
|--------------|---------------|-----------------|
| FDB30R1 | 30-pint | 01/07 through 09/08 |

| FDB50R1 | 50-pint | 01/07 through 09/08 |
| FDB70R1 | 70-pint | 01/07 through 09/08 |
| FDD25S1 | 25-pint | 01/07 through 09/08 |
| FDF50S1 | 50-pint | 01/07 through 09/08 |
| FDF70S1 | 70-pint | 01/07 through 09/08 |
| FDL30R1 | 30-pint | 01/07 through 09/08 |
| FDL50R1 | 50-pint | 01/07 through 09/08 |
| FDL50S1 | 50-pint | 01/07 through 09/08 |
| FDL70R1 | 70-pint | 01/07 through 09/08 |
| FDL70S1 | 70-pint | 01/07 through 09/08 |
| FDM30R1 | 30-pint | 01/07 through 09/08 |
| FDR30S1 | 30-pint | 01/07 through 09/08 |

**Gree**

| Model number | Capacity | Date code range |
| --- | --- | --- |
| 13-06090 | 30-pint | All units |
| 13-06091 | 45-pint | All units |

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

Gree Recalls 12 Brands of Dehumidifiers Due to Serious Fire and Burn Hazards; More Than $2 Million in Property Damage Repor…

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

| | | |
|---|---|---|
| 13-06092 | 50-pint | All units |
| 13-06093 | 70-pint | All units |
| GDN20AH-K4EAB1A | 20-pint | All units |
| GDN20AH-K5EBB3A | 20-pint | All units |
| GDN30AE-A3EBA8A | 30-pint | All units |
| GDN30AH-A4EBB1A | 30-pint | All units |
| GDN40AH-A4EBB1A | 40-pint | All units |
| GDN45AH-A3EBB2A | 45-pint | All units |
| GDN50AF-A3EBA8A | 50-pint | All units |
| GDN50AF-A3EBA8B | 50-pint | All units |
| GDN70AF-A3EBA8A | 70-pint | All units |
| GDN70AF-A3EBB3A | 70-pint | All units |
| GDN70AI-A3EBB2A | 70-pint | All units |

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

| GDNE30AEBA1A8A | 30-pint | All units |
| GDNE40AEBA1A8A | 40-Pint | All units |
| GDNE50AFBA1A8A | 50-pint | All units |
| GDNE65AFBA1A8A | 65-pint | All units |

### Kenmore

| Model number | Capacity | Date code range |
|---|---|---|
| 407.52301210 | 30-pint | 2012-04 through 2012-09 |
| 407.52501210 | 50-pint | 2012-04 through 2012-09 |
| 407.52701210 | 70-pint | 2012-04 through 2012-09 |
| 407.52702210 | 70-pint | 2012-04 through 2012-08 |

### Norpole

| Model number | Capacity | Date code range |
|---|---|---|
| NPDH30PG | 30-pint | All units |

### Seabreeze

Gree Recalls 12 Brands of Dehumidifiers Due to Serious Fire and Burn Hazards; More Than $2 Million in Property Damage Repor…

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

| Model number | Capacity | Date code range |
| --- | --- | --- |
| DH450S | 50-pint | All units |
| DH470S | 70-pint | All units |

### SoleusAir

| Model Number | Capacity | Date code range |
| --- | --- | --- |
| CFM-25E | 25-pint | All units |
| CFM-40E | 40-pint | All units |
| DPI-30-03 | 30-pint | All units |
| DPI-40-03 | 40-pint | All units |
| DPI-50-03 | 50-pint | All units |
| DPI-50-30A | 50-pint | All units |
| DPI-70-03 | 70-pint | All Units |
| GL-DEH-30-1 | 30-pint | 1211 through 0612 |
| GL-DEH-45-2 | 45-pint | 1211 through 0612 |
| GL-DEH-50-2L2 | 50-pint | 1211 through 0612 |
| GL-DEH-50-2Q2 | 50-pint | 1211 through 0612 |
| GL-DEH-70-2S2 | 70-pint | 1211 through 0612 |
| GL-DEH-70P-2S2 | 70-pint | 0112 through 0612 |
| GM-DEH-30M-1L2 | 30-pint | 010512 through 061412 |

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

| | | |
|---|---|---|
| GM-DEH-30M-1R2 | 30-pint | 010512 through 061412 |
| GM-DEH-45-1 | 45-pint | 122511 through 062112 |
| GM-DEH-70-1S2 | 70-pint | 010512 through 062112 |
| SG-DEH-25-4 | 25-pint | 032711 through 081712 |
| SG-DEH-30-2 | 30-pint | 032711 through 050712 |
| SG-DEH-30B-1 | 30-pint | 011210 through 041310 |
| SG-DEH-30M-1 | 30-pint | 010210 through 071512 |
| SG-DEH-30M-1A | 30-pint | 121510 through 111011 |
| SG-DEH-30M-1L2 | 30-pint | 010510 through 071512 |
| SG-DEH-30M-1R2 | 30-pint | 010510 through 071512 |
| SG-DEH-45-1 | 45-pint | 010210 through 071512 |
| SG-DEH-45-1A | 45-pint | 121510 through 111011 |
| SG-DEH-45-2 | 45-pint | 032711 through 050712 |
| SG-DEH-50-2 | 50-pint | 010712 through 010712 |
| SG-DEH-70-1 | 70-pint | 010210 through 071512 |
| SG-DEH-70-1A | 70-pint | 121510 through 111011 |

Gree Recalls 12 Brands of Dehumidifiers Due to Serious Fire and Burn Hazards; More Than $2 Million in Property Damage Repor...

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

| SG-DEH-70-2 | 70-pint | 032711 through 050712 |
|---|---|---|
| SG-DEH-70-2S2 | 70-pint | 032711 through 050712 |

**Remedy:**

Consumers should immediately turn off and unplug the dehumidifiers and contact Gree to receive a refund.

**Incidents/Injuries:**

The firms have received reports of 325 incidents, including 71 fires and $2,725,000 in property damage.

**Sold At:**

AAFES, HH Gregg, Home Depot, Kmart, Lowe's, Menards, Mills Fleet Farm, Sam's Club, Sears and other stores nationwide and in Canada, and online at Amazon.com and Ebay.com, from January 2005 through August 2013 for between $110 and $400.

**Distributor(s):**

Airwell of France; CNA of Wood Dale, Ill.; Danby of Ontario, Canada; De'Longhi of Italy; Frigidaire, of Charlotte, N.C.; Gree USA Sales Ltd. of City of Industry, Calif.; IRP of Pineville, N.C.; MJC America Ltd. dba Soleus International Inc. of Walnut, Calif.; and Sunrise of Quebec, Canada.

**Manufactured In:**

China

**Recall number:**

13-283

Note: Individual Commissioners may have statements related to this topic. Please visit www.cpsc.gov/commissioners to search for statements related to this or other topics.

Case: 4:23-cv-00830-SEP    Doc. #: 1-3    Filed: 06/28/23    Page: 139 of 168 PageID #: 183

Gree Reannounces Dehumidifier Recall Following 450 Fires and $19 Million in Property Damage; Brand Names Include Frigida…

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

United States
**CONSUMER PRODUCT SAFETY COMMISSION**

# Gree Reannounces Dehumidifier Recall Following 450 Fires and $19 Million in Property Damage; Brand Names Include Frigidaire, Soleus Air, Kenmore and Others



Fedders



**Name of Product:**

Dehumidifiers

**Hazard:**

The **dehumidifier** can overheat, smoke and catch fire, posing serious fire and burn hazards to consumers.

**Remedy:**

Refund

**Recall Date:**

November 29, 2016

**Units:**

About 2.5 million (in addition, 55,000 were sold in Canada) This recall was first announced in September 2013, updated in October 2013 and expanded in January 2014.

> ## Consumer Contact
>
> Gree toll-free at (866) 853-2802 from 8 a.m. to 6 p.m. ET Monday through Friday or online at greedehumidifierrecall.com  and click on Recall for more information.

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

Gree Reannounces Dehumidifier Recall Following 450 Fires and $19 Million in Property Damage; Brand Names Include Frigida…

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

Electronically Filed - St Charles Circuit Civil Div - May 26, 2023 - 01:47 PM

# Recall Details

**Description:**

This recall involves 20, 25, 30, 40, 45, 50, 65 and 70-pint dehumidifiers with brand names Danby, De'Longhi, Fedders, Fellini, Frigidaire, GE, Gree, Kenmore, Norpole, Premiere, Seabreeze, SoleusAir and SuperClima.  Recalled model numbers and date codes are listed below. The brand name and the pint capacity are printed on the front of the dehumidifier. The model number and date code are printed on a sticker on the back, front or side of the unit. The dehumidifiers are white, beige, gray or black plastic and measure between 19 and 24 inches tall, 13 and 15 inches wide, and 9 and 11 inches deep.

**Danby or Premiere**

| Model number | Capacity | Date code range |
| --- | --- | --- |
| DDR3011 units | 30-pint | All |
| DDR30P units | 30-pint | All |
| DDR4511 | 45-pint | All |

Case: 4:23-cv-00830-SEP    Doc. #: 1-3    Filed: 06/28/23    Page: 143 of 168 PageID #: 187

Gree Reannounces Dehumidifier Recall Following 450 Fires and $19 Million in Property Damage; Brand Names Include Frigida…

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

units

| DDR45P | 45-pint | All units |
| DDR6511 | 65-pint | All units |
| DDR65CHP | 65-pint | All units |

### De'Longhi or SuperClima

| Model number | Capacity | Date code range |
| --- | --- | --- |
| DDSE30 | 30-pint | All units |
| DDSE40 | 40-pint | All units |
| DG50 | 50-pint | All units |

### Fedders

| Model number | Capacity | Date code range |
| --- | --- | --- |

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

| FEDH-MAH030-C15 All units | 30-pint |
|---|---|
| FEDH-MAH070-C15 All units | 70-pint |
| | |

## Fellini

| Model number | Capacity | Date code range |
|---|---|---|
| 13-06030 units | 50-pint | All |
| 13-06031 units | 70-pint | All |
| | | |

## Frigidaire

| Model number | Pint capacity | Date code range |
|---|---|---|
| FDB30R1 through 09/08 | 30-pint | 01/07 |
| FDB50R1 through 09/08 | 50-pint | 01/07 |

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

| | | |
|---|---|---|
| FDB70R1 through 09/08 | 70-pint | 01/07 |
| FDD25S1 01/07 through 09/08 | 25-pint | |
| FDF50S1 01/07 through 09/08 | 50-pint | |
| FDF70S1 through 09/08 | 70-pint | 01/07 |
| FDL30R1 01/07 through 09/08 | 30-pint | |
| FDL50R1 01/07 through 09/08 | 50-pint | |
| FDL50S1 01/07 through 09/08 | 50-pint | |
| FDL70R1 through 09/08 | 70-pint | 01/07 |
| FDL70S1 through 09/08 | 70-pint | 01/07 |
| FDM30R1 | 30-pint | 01/07 |

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

through 09/08

| FDR30S1 01/07 through 09/08 | 30-pint | |
| --- | --- | --- |
| | | |

**GE**

| Model number | Pint capacity | Date code range |
| --- | --- | --- |
| ADER30LN through 12/10 | 30 pint | 01/08 |
| ADEW30LN 12/10 | 30 pint | 01/08 through |
| AHR30LL through 12/10 | 30 pint | 01/08 |
| AHR30LM through 12/10 | 30 pint | 01/08 |
| AHW30LM through 12/10 | 30 pint | 01/08 |
| ADER40LN through 12/10 | 40 pint | 01/08 |
| | | |

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

| AHH40LL through 12/10 | 40 pint | 01/08 |
|---|---|---|
| AHR40LL through 12/10 | 40 pint | 01/08 |
| AHR40LM through 12/10 | 40 pint | 01/08 |
| ADEH50LN through 12/10 | 50 pint | 01/08 |
| ADER50LN through 12/10 | 50 pint | 01/08 |
| ADEW50LN 12/10 | 50 pint | 01/08 through |
| AHH50LM through 12/10 | 50 pint | 01/08 |
| AHR50LL through 12/10 | 50 pint | 01/08 |
| AHR50LM through 12/10 | 50 pint | 01/08 |
| AHW50LM | 50 pint | 01/08 |

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

| | | |
|---|---|---|
| through 12/10 | | |
| ADER65LN through 12/10 | 65 pint | 01/08 |
| ADEW65LN through 12/10 | 65 pint | 01/08 |
| AHR65LL through 12/10 | 65 pint | 01/08 |
| AHR65LM through 12/10 | 65 pint | 01/08 |
| AHW65LM through 12/10 | 65 pint | 01/08 |

**Gree**

| Model number | Capacity | Date code range |
|---|---|---|
| 13-06090 | 30-pint | All units |
| 13-06091 | 45-pint | All units |
| 13-06092 | 50-pint | All units |
| GDN40AH-A4EBB1A | 40-pint | All units |

Case: 4:23-cv-00830-SEP    Doc #: -1-3    Filed: 06/28/23    Page: 149 of 168 PageID #: 193

Gree Reannounces Dehumidifier Recall Following 450 Fires and $19 Million in Property Damage; Brand Names Include Frigida…

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

| GDN45AH-A3EBB2A | 45-pint | All units |
|---|---|---|
| GDN50AF-A3EBA8A | 50-pint | All units |
| GDN50AF-A3EBA8B | 50-pint | All units |
| GDN70AF-A3EBA8A | 70-pint | All units |
| GDN70AF-A3EBB3A | 70-pint | All units |
| GDN70AI-A3EBB2A | 70-pint | All units |
| GDNE30AEBA1A8A | 30-pint | All units |
| GDNE40AEBA1A8A | 40-Pint | All units |
| GDNE50AFBA1A8A | 50-pint | All units |
| GDNE65AFBA1A8A | 65-pint | All units |
| | | |

**Kenmore**

| **Model number** | **Capacity** | **Date code range** |
|---|---|---|

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

| 407.52301210 through 2012-09 | 30-pint | 2012-04 |
| 407.52501210 through 2012-09 | 50-pint | 2012-04 |
| 407.52701210 through 2012-09 | 70-pint | 2012-04 |
| 407.52702210 through 2012-08 | 70-pint | 2012-04 |
| | | |

## Norpole

| Model number | Capacity | Date code range |
|---|---|---|
| NPDH30PG units | 30-pint | All |
| | | |

## Seabreeze

| Model number | Capacity | Date code range |
|---|---|---|
| DH450S units | 50-pint | All |

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

| DH470S | 70-pint | All |
| units | | |

## SoleusAir

| Model Number | Capacity | Date code range |
| --- | --- | --- |
| CFM-25E units | 25-pint | All |
| CFM-40E units | 40-pint | All |
| DP1-30-03 | 30-pint | All units |
| DP1-40-03 | 40-pint | All units |
| DP1-50-03 | 50-pint | All units |
| DP1-50-03A units | 50-pint | All |
| DP1-70-03 | 70-pint | All units |
| GL-DEH-30-1 pint | 30- 1211 through 0612 | |
| GL-DEH-45-2 | 45- | |

Gree Reannounces Dehumidifier Recall Following 450 Fires and $19 Million in Property Damage; Brand Names Include Frigida…

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

| | | |
|---|---|---|
| pint | 1211 through 0612 | |
| GL-DEH-50-2L2 through 0612 | 50-pint | 1211 |
| GL-DEH-50-2Q2 through 0612 | 50-pint | 1211 |
| GL-DEH-70-2S2 through 0612 | 70-pint | 1211 |
| GL-DEH-70P-2S2 through 0612 | 70-pint | 0112 |
| GM-DEH-30M-1L2 through 061412 | 30-pint | 010512 |
| GM-DEH-30M-1R2 through 061412 | 30-pint | 010512 |
| GM-DEH-45-1 through 062112 | 45-pint | 122511 |
| GM-DEH-70-1S2 through 062112 | 70-pint | 010512 |
| SG-DEH-25-4 032711 through 081712 | 25-pint | |

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

| Model | Capacity | Date Code |
|---|---|---|
| SG-DEH-30-2 032711 through 050712 | 30-pint | |
| SG-DEH-30B-1 011210 through 041310 | 30-pint | |
| SG-DEH-30M-1 010210 through 071512 | 30-pint | |
| SG-DEH-30M-1A through 111011 | 30-pint | 121510 |
| SG-DEH-30M-1L2 through 071512 | 30-pint | 010510 |
| SG-DEH-30M-1R2 through 071512 | 30-pint | 010510 |
| SG-DEH-45-1 010210 through 071512 | 45-pint | |
| SG-DEH-45-1A 121510 through 111011 | 45-pint | |
| SG-DEH-45-2 032711 through 050712 | 45-pint | |
| SG-DEH-50-2 | 50-pint | |

Case: 4:23-cv-00830-SEP    Doc. #: 1-3    Filed: 06/28/23    Page: 154 of 168 PageID #: 198

Gree Reannounces Dehumidifier Recall Following 450 Fires and $19 Million in Property Damage; Brand Names Include Frigida…

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

| | | |
|---|---|---|
| 010712 through 010712 | | |
| SG-DEH-70-1<br><br>010210 through 071512 | 70-pint | |
| SG-DEH-70-1A<br><br>through 111011 | 70-pint | 121510 |
| SG-DEH-70-2<br><br>032711 through 050712 | 70-pint | |
| SG-DEH-70-2S2<br><br>032711 through 050712 | 70-pint | |

**Remedy:**

Consumers should immediately unplug and stop using recalled dehumidifiers and contact Gree for a full refund.

**Incidents/Injuries:**

There have been more than 2,000 reported incidents of dehumidifiers overheating. About 450 fires have been reported, resulting in more than $19 million in property damage.

**Sold At:**

Electronically Filed - St Charles Circuit Div - May 26, 2023 - 01:47 PM

AAFES, HH Gregg, Home Depot, Kmart, Lowe's, Menards, Mills Fleet Farm, Sam's Club, Sears, Walmart and other stores nationwide and in Canada, and online at Amazon.com and Ebay.com, from January 2005 through August 2013 for between $110 and $400.

## Manufacturer(s):

Gree Electric Appliances, of China

## Importer(s):

Airwell of France; CNA of Wood Dale, Ill.; Danby of Ontario, Canada;  De'Longhi of Italy; Frigidaire, of Charlotte, N.C.; GE Appliances, of Louisville, Ky.; Gree USA Sales Ltd. of City of Industry, Calif.; IRP of Pineville, N.C.; MJC America Ltd. dba Soleus International Inc. of Walnut, Calif.; and Sunrise of Quebec, Canada.

## Manufactured In:

China

## Recall number:

17-039

# IN THE 11TH JUDICIAL CIRCUIT, ST. CHARLES COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>MICHAEL JAMES FAGRAS | Case Number:  2311-CC00536 |
| Plaintiff/Petitioner:<br>BRENDA HILLMANN<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address:<br>MATTHEW MICHAEL MCARTHUR<br>211 NORTH BROADWAY<br>SUITE 2500<br>ST LOUIS, MO  63102 |
| Defendant/Respondent:<br>GREE USA, INC | Court Address:<br>300 N 2nd STREET<br>SAINT CHARLES, MO  63301 |
| Nature of Suit:<br>CC Wrongful Death | (Date File Stamp) |

## Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

The State of Missouri to:    GREE USA, INC
                             Alias:
**4195 CHINO HILLS PARKWAY #1026**
**CHINO HILLS, CA  91709**

*COURT SEAL OF*

You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the plaintiff/petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.

*ST. CHARLES COUNTY*

| 05/30/2023 | /S/ CHERYL CROWDER |
|---|---|
| Date | Clerk |

Further Information:

### Officer's or Server's Affidavit of Service

I certify that:
1.  I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2.  My official title is _____ of _____ County, _____ (state).
3.  I have served the above Summons by: (check one)

☐ delivering a copy of the summons and petition to the defendant/respondent.

☐ leaving a copy of the summons and petition at the dwelling house or usual place of abode of the defendant/respondent with _____, a person at least 18 years of age residing therein.

☐ (for service on a corporation) delivering a copy of the summons and petition to _____ (name) _____ (title).

☐ other: _____.

Served at _____ (address)

in _____County, _____ (state), on _____ (date) at _____ (time).

_____          _____
Printed Name of Sheriff or Server              Signature of Sheriff or Server

**Subscribed and sworn to** before me this _____ (day) _____ (month) _____ (year).

I am: (check one)  ☐ the clerk of the court of which affiant is an officer.
                    ☐ the judge of the court of which affiant is an officer.
                    ☐ authorized to administer oaths in the state in which the affiant served the above summons. (use for out-of-state officer)
                    ☐ authorized to administer oaths. (use for court-appointed server)

*(Seal)*

_____
Signature and Title

**Service Fees**
Summons      $_____
Non Est       $_____
Mileage      $_____ (_____miles @ $ _____ per mile)
**Total**       $_____

**See the following page for directions to officer making return on service of summons.**

## Directions to Officer Making Return on Service of Summons

A copy of the summons and petition must be served on each defendant/respondent. If any defendant/respondent refuses to receive the copy of the summons and petition when offered, the return shall be prepared accordingly so as to show the offer of the officer to deliver the summons and petition and the defendant's/respondent's refusal to receive the same.

Service shall be made: (1) On Individual. On an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and petition personally to the individual or by leaving a copy of the summons and petition at the individual's dwelling house or usual place of abode with some person at least 18 years of age residing therein, or by delivering a copy of the summons and petition to an agent authorized by appointment or required by law to receive service of process; (2) On Guardian. On an infant or incompetent person who has a legally appointed guardian, by delivering a copy of the summons and petition to the guardian personally; (3) On Corporation, Partnership or Other Unincorporated Association. On a corporation, partnership or unincorporated association, by delivering a copy of the summons and petition to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the defendant/respondent with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process; (4) On Public or Quasi-Public Corporation or Body. Upon a public, municipal, governmental or quasi-public corporation or body in the case of a county, to the mayor or city clerk or city attorney in the case of a city, to the chief executive officer in the case of any public, municipal, governmental, or quasi-public corporation or body or to any person otherwise lawfully so designated.

Service may be made by an officer or deputy authorized by law to serve process in civil actions within the state or territory where such service is made.

Service may be made in any state or territory of the United States. If served in a territory, substitute the word "territory" for the word "state."

The office making the service must swear an affidavit before the clerk, deputy clerk, or judge of the court of which the person is an officer or other person authorized to administer oaths. This affidavit must state the time, place, and manner of service, the official character of the affiant, and the affiant's authority to serve process in civil actions within the state or territory where service is made.

Service must be made less than 10 days nor more than 30 days from the date the defendant/respondent is to appear in court. The return should be made promptly, and in any event so that it will reach the Missouri court within 30 days after service.

# IN THE 11TH JUDICIAL CIRCUIT, ST. CHARLES COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>MICHAEL JAMES FAGRAS | Case Number:  2311-CC00536 |
| Plaintiff/Petitioner:<br>BRENDA HILLMANN<br><br><br><br>vs. | Plaintiff's/Petitioner's Attorney/Address:<br>MATTHEW MICHAEL MCARTHUR<br>211 NORTH BROADWAY<br>SUITE 2500<br>ST LOUIS, MO  63102 |
| Defendant/Respondent:<br>GREE USA, INC | Court Address:<br>300 N 2nd STREET<br>SAINT CHARLES, MO  63301 |
| Nature of Suit:<br>CC Wrongful Death | (Date File Stamp) |

## Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

The State of Missouri to:    GREE ELECTRIC APPLIANCES, INC OF ZHUHAI
Alias:
4195 CHINO HILLS PARKWAY #1026
CHINO HILLS, CA  91709

**COURT SEAL OF**

**ST. CHARLES COUNTY**

You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the plaintiff/petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.

| 05/30/2023 | /S/ CHERYL CROWDER |
|---|---|
| Date | Clerk |

Further Information:

### Officer's or Server's Affidavit of Service

I certify that:

1.  I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2.  My official title is _____ of _____ County, _____ (state).
3.  I have served the above Summons by: (check one)

☐ delivering a copy of the summons and petition to the defendant/respondent.

☐ leaving a copy of the summons and petition at the dwelling house or usual place of abode of the defendant/respondent with _____, a person at least 18 years of age residing therein.

☐ (for service on a corporation) delivering a copy of the summons and petition to _____ (name) _____ (title).

☐ other: _____.

Served at _____ (address)

in _____County, _____ (state), on _____ (date) at _____ (time).

_____    _____
Printed Name of Sheriff or Server    Signature of Sheriff or Server

**Subscribed and sworn to** before me this _____ (day) _____ (month) _____ (year).

I am: (check one) ☐ the clerk of the court of which affiant is an officer.

☐ the judge of the court of which affiant is an officer.

☐ authorized to administer oaths in the state in which the affiant served the above summons. (use for out-of-state officer)

☐ authorized to administer oaths. (use for court-appointed server)

*(Seal)*

_____
Signature and Title

| **Service Fees** | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Mileage | $_____ (_____miles @ $ _____ per mile) |
| **Total** | $_____ |

**See the following page for directions to officer making return on service of summons.**

## Directions to Officer Making Return on Service of Summons

A copy of the summons and petition must be served on each defendant/respondent. If any defendant/respondent refuses to receive the copy of the summons and petition when offered, the return shall be prepared accordingly so as to show the offer of the officer to deliver the summons and petition and the defendant's/respondent's refusal to receive the same.

Service shall be made: (1) On Individual. On an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and petition personally to the individual or by leaving a copy of the summons and petition at the individual's dwelling house or usual place of abode with some person at least 18 years of age residing therein, or by delivering a copy of the summons and petition to an agent authorized by appointment or required by law to receive service of process; (2) On Guardian. On an infant or incompetent person who has a legally appointed guardian, by delivering a copy of the summons and petition to the guardian personally; (3) On Corporation, Partnership or Other Unincorporated Association. On a corporation, partnership or unincorporated association, by delivering a copy of the summons and petition to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the defendant/respondent with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process; (4) On Public or Quasi-Public Corporation or Body. Upon a public, municipal, governmental or quasi-public corporation or body in the case of a county, to the mayor or city clerk or city attorney in the case of a city, to the chief executive officer in the case of any public, municipal, governmental, or quasi-public corporation or body or to any person otherwise lawfully so designated.

Service may be made by an officer or deputy authorized by law to serve process in civil actions within the state or territory where such service is made.

Service may be made in any state or territory of the United States. If served in a territory, substitute the word "territory" for the word "state."

The office making the service must swear an affidavit before the clerk, deputy clerk, or judge of the court of which the person is an officer or other person authorized to administer oaths. This affidavit must state the time, place, and manner of service, the official character of the affiant, and the affiant's authority to serve process in civil actions within the state or territory where service is made.

Service must be made less than 10 days nor more than 30 days from the date the defendant/respondent is to appear in court. The return should be made promptly, and in any event so that it will reach the Missouri court within 30 days after service.

# IN THE 11TH JUDICIAL CIRCUIT, ST. CHARLES COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>MICHAEL JAMES FAGRAS | Case Number:  2311-CC00536 |
| Plaintiff/Petitioner:<br>BRENDA HILLMANN<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address:<br>MATTHEW MICHAEL MCARTHUR<br>211 NORTH BROADWAY<br>SUITE 2500<br>ST LOUIS, MO  63102 |
| Defendant/Respondent:<br>GREE USA, INC | Court Address:<br>300 N 2nd STREET<br>SAINT CHARLES, MO  63301 |
| Nature of Suit:<br>CC Wrongful Death | (Date File Stamp) |

## Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

The State of Missouri to:    HONG KONG GREE ELECTRIC APPLAINCES SALES CO., LTD
                                                    Alias:
**4195 CHINO HILLS PARKWAY #1026**
**CHINO HILLS, CA  91709**

*COURT SEAL OF*

You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the plaintiff/petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.

*ST. CHARLES COUNTY*

_____05/30/2023_____          _____/S/ CHERYL CROWDER_____
                    Date                                                          Clerk
Further Information:

### Officer's or Server's Affidavit of Service

I certify that:
1.  I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2.  My official title is _____ of _____ County, _____ (state).
3.  I have served the above Summons by: (check one)
    ☐ delivering a copy of the summons and petition to the defendant/respondent.
    ☐ leaving a copy of the summons and petition at the dwelling house or usual place of abode of the defendant/respondent with _____, a person at least 18 years of age residing therein.
    ☐ (for service on a corporation) delivering a copy of the summons and petition to _____ (name) _____ (title).
    ☐ other: _____.

Served at _____ (address)
in _____County, _____ (state), on _____ (date) at _____ (time).

_____          _____
Printed Name of Sheriff or Server                          Signature of Sheriff or Server
**Subscribed and sworn to** before me this _____ (day) _____ (month) _____ (year).
I am: (check one) ☐ the clerk of the court of which affiant is an officer.
                             ☐ the judge of the court of which affiant is an officer.
                             ☐ authorized to administer oaths in the state in which the affiant served the above summons. (use for out-of-state officer)
                             ☐ authorized to administer oaths. (use for court-appointed server)

*(Seal)*

_____
Signature and Title

**Service Fees**
Summons      $_____
Non Est        $_____
Mileage        $_____ (_____miles @ $ _____ per mile)
**Total**          $_____

**See the following page for directions to officer making return on service of summons.**

**Directions to Officer Making Return on Service of Summons**

A copy of the summons and petition must be served on each defendant/respondent. If any defendant/respondent refuses to receive the copy of the summons and petition when offered, the return shall be prepared accordingly so as to show the offer of the officer to deliver the summons and petition and the defendant's/respondent's refusal to receive the same.

Service shall be made: (1) On Individual. On an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and petition personally to the individual or by leaving a copy of the summons and petition at the individual's dwelling house or usual place of abode with some person at least 18 years of age residing therein, or by delivering a copy of the summons and petition to an agent authorized by appointment or required by law to receive service of process; (2) On Guardian. On an infant or incompetent person who has a legally appointed guardian, by delivering a copy of the summons and petition to the guardian personally; (3) On Corporation, Partnership or Other Unincorporated Association. On a corporation, partnership or unincorporated association, by delivering a copy of the summons and petition to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the defendant/respondent with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process; (4) On Public or Quasi-Public Corporation or Body. Upon a public, municipal, governmental or quasi-public corporation or body in the case of a county, to the mayor or city clerk or city attorney in the case of a city, to the chief executive officer in the case of any public, municipal, governmental, or quasi-public corporation or body or to any person otherwise lawfully so designated.

Service may be made by an officer or deputy authorized by law to serve process in civil actions within the state or territory where such service is made.

Service may be made in any state or territory of the United States. If served in a territory, substitute the word "territory" for the word "state."

The office making the service must swear an affidavit before the clerk, deputy clerk, or judge of the court of which the person is an officer or other person authorized to administer oaths. This affidavit must state the time, place, and manner of service, the official character of the affiant, and the affiant's authority to serve process in civil actions within the state or territory where service is made.

Service must be made less than 10 days nor more than 30 days from the date the defendant/respondent is to appear in court. The return should be made promptly, and in any event so that it will reach the Missouri court within 30 days after service.

# IN THE 11TH JUDICIAL CIRCUIT, ST. CHARLES COUNTY, MISSOURI

| Judge or Division:<br>MICHAEL JAMES FAGRAS | Case Number: 2311-CC00536 |
|---|---|
| Plaintiff/Petitioner:<br>BRENDA HILLMANN<br><br><br><br><br>vs. | Plaintiff's/Petitioner's Attorney/Address:<br>MATTHEW MICHAEL MCARTHUR<br>211 NORTH BROADWAY<br>SUITE 2500<br>ST LOUIS, MO 63102 |
| Defendant/Respondent:<br>GREE USA, INC | Court Address:<br>300 N 2nd STREET<br>SAINT CHARLES, MO 63301 |
| Nature of Suit:<br>CC Wrongful Death | (Date File Stamp) |

## Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

**The State of Missouri to:** MJC AMERICA LTD
**Alias:**
**DBA: SOLEUS INTERNATIONAL INC**

280 S. LEMON AVE., #1507
WALNUT, CA 91788

*COURT SEAL OF*

*ST. CHARLES COUNTY*

You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the plaintiff/petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.

| 05/30/2023 | /S/ CHERYL CROWDER |
|---|---|
| Date | Clerk |

Further Information:

## Officer's or Server's Affidavit of Service

I certify that:
1. I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2. My official title is _____ of _____ County, _____ (state).
3. I have served the above Summons by: (check one)
   ☐ delivering a copy of the summons and petition to the defendant/respondent.
   ☐ leaving a copy of the summons and petition at the dwelling house or usual place of abode of the defendant/respondent with _____, a person at least 18 years of age residing therein.
   ☐ (for service on a corporation) delivering a copy of the summons and petition to _____ (name) _____ (title).
   ☐ other: _____.

Served at _____ (address)
in _____ County, _____ (state), on _____ (date) at _____ (time).

_____        _____
Printed Name of Sheriff or Server        Signature of Sheriff or Server

**Subscribed and sworn to** before me this _____ (day) _____ (month) _____ (year).
I am: (check one) ☐ the clerk of the court of which affiant is an officer.
☐ the judge of the court of which affiant is an officer.
☐ authorized to administer oaths in the state in which the affiant served the above summons. (use for out-of-state officer)
☐ authorized to administer oaths. (use for court-appointed server)

*(Seal)*

_____
Signature and Title

**Service Fees**
Summons        $_____
Non Est        $_____
Mileage        $_____ (_____ miles @ $_____ per mile)
**Total**        $_____

**See the following page for directions to officer making return on service of summons.**

**Directions to Officer Making Return on Service of Summons**

A copy of the summons and petition must be served on each defendant/respondent. If any defendant/respondent refuses to receive the copy of the summons and petition when offered, the return shall be prepared accordingly so as to show the offer of the officer to deliver the summons and petition and the defendant's/respondent's refusal to receive the same.

Service shall be made: (1) On Individual. On an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and petition personally to the individual or by leaving a copy of the summons and petition at the individual's dwelling house or usual place of abode with some person at least 18 years of age residing therein, or by delivering a copy of the summons and petition to an agent authorized by appointment or required by law to receive service of process; (2) On Guardian. On an infant or incompetent person who has a legally appointed guardian, by delivering a copy of the summons and petition to the guardian personally; (3) On Corporation, Partnership or Other Unincorporated Association. On a corporation, partnership or unincorporated association, by delivering a copy of the summons and petition to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the defendant/respondent with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process; (4) On Public or Quasi-Public Corporation or Body. Upon a public, municipal, governmental or quasi-public corporation or body in the case of a county, to the mayor or city clerk or city attorney in the case of a city, to the chief executive officer in the case of any public, municipal, governmental, or quasi-public corporation or body or to any person otherwise lawfully so designated.

Service may be made by an officer or deputy authorized by law to serve process in civil actions within the state or territory where such service is made.

Service may be made in any state or territory of the United States. If served in a territory, substitute the word "territory" for the word "state."

The office making the service must swear an affidavit before the clerk, deputy clerk, or judge of the court of which the person is an officer or other person authorized to administer oaths. This affidavit must state the time, place, and manner of service, the official character of the affiant, and the affiant's authority to serve process in civil actions within the state or territory where service is made.

Service must be made less than 10 days nor more than 30 days from the date the defendant/respondent is to appear in court. The return should be made promptly, and in any event so that it will reach the Missouri court within 30 days after service.



# IN THE 11TH JUDICIAL CIRCUIT, ST. CHARLES COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>MICHAEL JAMES FAGRAS | Case Number:  2311-CC00536 |
| Plaintiff/Petitioner:<br>BRENDA HILLMANN<br><br><br><br>vs. | Plaintiff's/Petitioner's Attorney/Address:<br>MATTHEW MICHAEL MCARTHUR<br>211 NORTH BROADWAY<br>SUITE 2500<br>ST LOUIS, MO  63102 |
| Defendant/Respondent:<br>GREE USA, INC | Court Address:<br>300 N 2nd STREET<br>SAINT CHARLES, MO  63301 |
| Nature of Suit:<br>CC Wrongful Death | (Date File Stamp) |

## Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

The State of Missouri to:    MJC AMERICA HOLDINGS, CO., INC
**Alias:**

280 S. LEMON AVE., #1507
WALNUT, CA  91788

**COURT SEAL OF**

**ST. CHARLES COUNTY**

You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the plaintiff/petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.

05/30/2023 _____           /S/ CHERYL CROWDER _____
Date                                                                 Clerk
Further Information:

### Officer's or Server's Affidavit of Service

I certify that:
1. I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2. My official title is _____ of _____ County, _____ (state).
3. I have served the above Summons by: (check one)
    ☐ delivering a copy of the summons and petition to the defendant/respondent.
    ☐ leaving a copy of the summons and petition at the dwelling house or usual place of abode of the defendant/respondent with _____, a person at least 18 years of age residing therein.
    ☐ (for service on a corporation) delivering a copy of the summons and petition to _____ (name) _____ (title).
    ☐ other: _____.

Served at _____ (address)

in _____ County, _____ (state), on _____ (date) at _____ (time).

_____           _____
Printed Name of Sheriff or Server              Signature of Sheriff or Server

**Subscribed and sworn to** before me this _____ (day) _____ (month) _____ (year).

I am: (check one)  ☐ the clerk of the court of which affiant is an officer.
☐ the judge of the court of which affiant is an officer.
☐ authorized to administer oaths in the state in which the affiant served the above summons. (use for out-of-state officer)
☐ authorized to administer oaths. (use for court-appointed server)

_(Seal)_

_____
Signature and Title

| **Service Fees** | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Mileage | $_____ (_____ miles @ $ _____ per mile) |
| **Total** | $_____ |

**See the following page for directions to officer making return on service of summons.**

**Directions to Officer Making Return on Service of Summons**

A copy of the summons and petition must be served on each defendant/respondent. If any defendant/respondent refuses to receive the copy of the summons and petition when offered, the return shall be prepared accordingly so as to show the offer of the officer to deliver the summons and petition and the defendant's/respondent's refusal to receive the same.

Service shall be made: (1) On Individual. On an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and petition personally to the individual or by leaving a copy of the summons and petition at the individual's dwelling house or usual place of abode with some person at least 18 years of age residing therein, or by delivering a copy of the summons and petition to an agent authorized by appointment or required by law to receive service of process; (2) On Guardian. On an infant or incompetent person who has a legally appointed guardian, by delivering a copy of the summons and petition to the guardian personally; (3) On Corporation, Partnership or Other Unincorporated Association. On a corporation, partnership or unincorporated association, by delivering a copy of the summons and petition to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the defendant/respondent with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process; (4) On Public or Quasi-Public Corporation or Body. Upon a public, municipal, governmental or quasi-public corporation or body in the case of a county, to the mayor or city clerk or city attorney in the case of a city, to the chief executive officer in the case of any public, municipal, governmental, or quasi-public corporation or body or to any person otherwise lawfully so designated.

Service may be made by an officer or deputy authorized by law to serve process in civil actions within the state or territory where such service is made.

Service may be made in any state or territory of the United States. If served in a territory, substitute the word "territory" for the word "state."

The office making the service must swear an affidavit before the clerk, deputy clerk, or judge of the court of which the person is an officer or other person authorized to administer oaths. This affidavit must state the time, place, and manner of service, the official character of the affiant, and the affiant's authority to serve process in civil actions within the state or territory where service is made.

Service must be made less than 10 days nor more than 30 days from the date the defendant/respondent is to appear in court. The return should be made promptly, and in any event so that it will reach the Missouri court within 30 days after service.

STATE OF MISSOURI                 )
                                          ) ss.

ST. CHARLES COUNTY, MISSOURI     )

IN THE CIRCUIT COURT OF ST. CHARLES COUNTY, MISSOURI

**NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES**

Pursuant to Missouri Supreme Court Rule 17, the Circuit Court of St. Charles County, Missouri (Eleventh Judicial Circuit) has adopted a local rule to encourage voluntary alternative dispute resolution. The purpose of the rule and the program it establishes is to foster timely, economical, fair and voluntary settlements of lawsuits without delaying or interfering with a party's right to resolve a lawsuit by trial.

This program applies to all civil actions other than cases in the small claims, probate and family court divisions of the Circuit Court, and you are hereby notified that it is available to you in this case.

The program encourages the voluntary early resolution of disputes through mediation. Mediation is an informal non-binding alternative dispute resolution process in which a trained mediator facilitates discussions and negotiations among the parties to help them resolve their dispute. The mediator is impartial and has no authority to render a decision or impose a resolution on the parties. During the course of the mediation, the mediator may meet with the parties together and separately to discuss the dispute, to explore the parties' interests, and to stimulate ideas for resolution of the dispute.

A list of mediators approved by the court and information regarding their qualifications is kept by the Circuit Clerk's Office. If all parties to the suit agree to mediation, within ten days after they have filed the Consent to Mediation Form on the reverse side of this page with the Clerk of the Court, they shall jointly select from that list a mediator who is willing and available to serve. If the parties cannot agree upon the mediator to be selected, the Court will make the selection.

The full text of the Circuit Court's local court rules, including Rule 38 Alternative Dispute Resolution, is available from the Clerk of the Circuit Court or at: http://www.courts.mo.gov/hosted/circuit11/Documents/LOCAL_COURT_RULES.pdf

A copy of this Notice is to be provided by the Clerk of the Circuit Court to each of the parties initiating the suit at the time it is filed, and a copy is to be served on each other party in the suit with the summons and petition served on that party.

STATE OF MISSOURI                           )
                                            )  ss.
ST. CHARLES COUNTY, MISSOURI                )

IN THE CIRCUIT COURT OF ST. CHARLES COUNTY, MISSOURI

_____  )
                    Plaintiff(s),  )
                                   )
vs.                                )            Cause #_____
                                   )
_____  )
                    Defendant(s).  )

## CONSENT TO MEDIATION FORM

I, the undersigned counsel of record in this case, hereby certify that I have discussed the subject of mediation under the Court's Alternative Dispute Resolution Program with my client(s) in this case and that:

_____ We believe that mediation would be helpful in this case and consent to the referral of the case to mediation upon the filing of similar consents by all other parties in the case.

_____ We do not consent to the referral of this case to mediation.

_____
Signature

_____
(Print Name)

Attorney for:

_____
(Party or Parties)

Date: _____

 **Click here to Respond to Selected Documents**

**Sort Date Entries: Descending Ascending**

**Display Options:**  All Entries ⌄

**05/30/2023**

**Summons Issued-Circuit**

Document ID: 23-SMOS-101, for MJC AMERICA HOLDINGS, CO., INC. ALL SUMMONS SAVED AND ATTACHED IN PDF FORM FOR ATTORNEY TO RETRIEVE FROM SECURE CASE.NET. SPA

**Summons Issued-Circuit**

Document ID: 23-SMOS-100, for MJC AMERICA LTD.

**Summons Issued-Circuit**

Document ID: 23-SMOS-99, for HONG KONG GREE ELECTRIC APPLAINCES SALES CO., LTD.

**Summons Issued-Circuit**

Document ID: 23-SMOS-98, for GREE ELECTRIC APPLIANCES, INC OF ZHUHAI.

**Summons Issued-Circuit**

Document ID: 23-SMOS-97, for GREE USA, INC.

**05/26/2023**

**Filing Info Sheet eFiling**

   **Filed By:** MATTHEW MICHAEL MCARTHUR

**Note to Clerk eFiling**

   **Filed By:** MATTHEW MICHAEL MCARTHUR

**Pet Filed in Circuit Ct**

Petition; Exhibit 1; Exhibit 2.

   **Filed By:** MATTHEW MICHAEL MCARTHUR

   **On Behalf Of:** BRENDA HILLMANN, ANDREW ZERR, LORETTA AMENT, AMENT, LORETTA AS PERSONAL REPRESENTATIVE

**Judge Assigned**