# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| BRENDA HILLMANN, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| v. ) | No. 4:23-cv-00830-SEP |
| ) | |
| GREE USA, INC., et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

Before the Court is Defendants' Motion for a Protective Order Quashing Plaintiffs' February 27, 2024, Deposition Notice of Dong Mingzhu, Doc. [61].  For the reasons set forth below, the motion is granted in part.  Plaintiffs may depose Dong Mingzhu, but the questioning must be limited to the topic about which Plaintiffs have shown Dong Mingzhu has unique information:  Dong Mingzhu's involvement in the decision to delay the recall of the Gree dehumidifiers.

## FACTS AND BACKGROUND

Madame Dong Mingzhu is the President and Chairwoman Gree Zhuhai.  Doc. [61-1] at 4.  On January 9, 2024, Plaintiffs served a notice of deposition for Madame Dong.  Doc. [61-5] at 2.  Defendants objected to the notice of deposition on January 19th, and the parties unsuccessfully met and conferred to try to resolve the objections on February 5th.  *See* Doc. [61] at 2.  The parties filed a Joint Motion Requesting Telephone Conference to resolve that and several other discovery disputes, and the Court held a video teleconference on February 12th.  *See* Docs. [51], [57].  At the conference, the parties were unable to come to an agreement about Madame Dong's deposition, so the Court ordered briefing on Defendants' request for a protective order.  *See* Docs. [61], [64].

## LEGAL STANDARD

Federal Rule of Civil Procedure 26(b)(1) sets the scope for discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Courts must limit discovery that "is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive," and when "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." Fed. R. Civ. P. 26(b)(2)(C). "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Id.* 26(c)(1).

## DISCUSSION

Defendants give four reasons for a protective order quashing Madame Dong's deposition: (1) the apex doctrine prohibits deposing Madame Dong, (2) the discovery is not proportional to the needs of the case, (3) the deposition is cumulative because the information can be obtained from other sources, and (4) the deposition is outside the scope of the pleading. *See* Doc. [61-1] at 6-9. None of the arguments warrants quashing Madame Dong's deposition entirely. Plaintiffs provided evidence showing that Madame Dong has unique knowledge about the recall decision that cannot be obtained from another Gree employee. But Plaintiffs are prohibited from questioning Madame Dong about topics unrelated to her involvement in the decision to delay the recall of the Gree dehumidifiers.

**I.     The apex doctrine does not prohibit Madame Dong's deposition altogether.**

The apex doctrine "prohibits a plaintiff from deposing a high-level corporate officer unless the plaintiff can show that '(1) the executive has unique or special knowledge of the facts at issue, and (2) other less burdensome avenues for obtaining the information sought have been exhausted.'" *Moore v. Compass Grp. USA, Inc.*, 2022 WL 677357, at *1 (E.D. Mo. Feb. 14, 2022) (quoting *Drake v. Steak N Shake Operations, Inc.*, 2018 WL 3625769, at *1 (E.D. Mo. July 30, 2018)). The apex doctrine is not in the Federal Rules of Civil Procedure—and the United States Court of Appeals for the Eighth Circuit has never recognized it by name—but it provides a framework for applying Federal Rule of Civil 26(b)(2)(C)'s requirement to limit discovery when it "can be obtained from some other source that is more convenient, less burdensome, or less expensive." High-level executives are typically very busy, and their time is valuable. Often, someone else in the company could provide the same information. And it places a substantial burden on a company to have its president or CEO deposed, so the potential for "annoyance, embarrassment, oppression, or undue burden or expense" is high. Fed. R. Civ.

P. 26(c)(1). The apex doctrine therefore prevents a party from deposing a high-level executive unless that executive has information that cannot be obtained elsewhere.

Defendants argue that it is "incontrovertible that Madame Dong . . . has no relevant knowledge about Gree's investigation into its dehumidifiers and the recall delay." Doc. [61-1] at 7. Defendants point to Madame Dong's previous deposition testimony in *MJC America Ltd. v. Gree Electric Appliances Inc. of Zhuhai*, 2:13-cv-04264 (C.D. Cal. filed June 13, 2013), a suit that arose from the breakdown of the business relationship between Defendants MJC America and Gree Zhuhai. Defendants argue that testimony establishes "that she has no direct knowledge of or involvement in the decision to delay the recall." *Id*. at 5. Defendants claim that Madame Dong "did not read any emails or reports or participate in any meetings regarding the issues with Dehumidifiers and the handling of same." *Id.* at 7. Defendants chose not to produce those deposition transcripts "[d]ue to the voluminous breadth," but offered to do so upon the Court's request. *Id.* at 5 n.4. Defendants' counsel also submitted a sworn declaration affirming "that Madame Dong testified as summarized in Defendants' Brief in Support of their Motion." Doc. [61-2] ¶ 13.

Plaintiffs respond that "simply because Dong Mingzhu has been deposed before in another unrelated matter does not provide for deposition immunity in all proceeding cases." Doc. [64] at 7. And Plaintiffs provided evidence that Madame Dong does have unique knowledge related to the case.

1. **Doc. [64-2]**: Exhibit A to Plaintiffs' brief is a transcript of a September 19, 2012, meeting that included Mr. Larry Lam, an executive for both Gree Hong Kong and Gree Zhuhai, and Charley Loh and Jimmy Loh, executives for Gree USA and MJC America. Mr. Lam started the meeting by stating, "This is about Gree headquarters wanting us to discuss emergency strategies on handling the quality incident that happened recently." Doc. [64-2] at 6. Mr. Lam went on to explain, "Then to move forward, we would like to talk about suggestions on handling this incident. Our key principle is to reduce the loss of economy and reputation of Gree USA and Gree headquarters. We hope to . . . minimize . . . the impact range." *Id.* at 9 (omissions in original). Mr. Lam then says that "our suggestion is to postpone this decision of voluntary recall by six to nine months." *Id.* at 12. It is unclear from the context exactly who Mr. Lam is speaking for, but from the earlier statement it is reasonable to infer that it is a person or people at "Gree headquarters." The meeting transcript alone is not enough to show that Madame Dong has

3

unique knowledge about the recall delay.  But the other exhibits show that Mr. Lam was taking orders from Madame Dong when he conveyed that message to the other Gree entities.

     2.  **Doc. [64-3]**: Exhibit 2 is an email from Charley Loh, Gree USA's CEO, to Madame Dong dated September 28, 2012.  In the email, Charley Loh informed Madame Dong about the "fire case complaints," and warned that "[w]e must reply [U.S. Consumer Product Safety Commission] question as soon as possible. . . .  This is super urgent and important.  Please make a decision from you as soon as possible."  *Id.* at 6.  Madame Dong did not reply to the email.  *See* Doc. [61-5] at 107.

     3.  **Doc. [64-4]**: Exhibit 3 is the deposition transcript from the deposition of Larry Lam, taken for a civil case between Gree Hong Kong and MJC Supply in California state court.  Mr. Lam was questioned about the September 19, 2012, meeting where he recommended delaying the recall for six to nine months.  Mr. Lam was asked:

> Q  Well, after this meeting, you reported back to Madam Dong that MJC—the meeting didn't go well, and MJC wasn't going along with her wishes, right, to delay reporting for 6 to 9 months and change the mode of cooperation in business between MJC and Gree?
>
> A  Yes.

Doc. [64-4] at 50.  Later in the deposition, Mr. Lam confirms multiple times that he discussed the recall issues with Madame Dong in face-to-face meetings.  *See id.* at 51-52, 55-56, 60.  The deposition also references a report that Mr. Lam prepared and presented to Madame Dong titled "Summary of Recent Problems with Gree USA."  *Id*. at 52.  That document is Plaintiffs' Exhibit 5.

     4.  **Doc. [64-6]**: Exhibit 5 is the report titled "Summary of Recent Problems with Gree USA" that Mr. Lam created and presented to Madame Dong.  *See* Doc. [64-4] at 53.  Mr. Lam testified that he discussed the document in a face-to-face meeting with Madame Dong and that they covered all the topics in the report in that meeting.  *Id.* at 55-56.  The first topic in the report is "Dehumidifiers' Fire Incidents."  Doc. [64-6] at 6.  Mr. Lam wrote:

> Current Status:
> GREE USA worries that subsequent incidents may be uncontrollable and may result in mandatory recall.  It does not accept the "cold treatment" suggested by the head office but proposes voluntary recall.  However, upon consultation, a public relations firm indicates it is unable to lessen the impact due to a large number of distributors involved and a long period of production.  In addition, since lots of incidents are being reported for losses, if we provide voluntary recall,

4

> it is very likely to attract other customers' attention and trigger claims by more insurers. The consequence is far reaching.

*Id.* The summary report, combined with Mr. Lam's testimony, is further evidence that Madame Dong was aware of and involved in the recall decision.

     5.  **Doc. [64-5]**: Exhibit 4 is a declaration by Mr. Lam filed in the federal civil case between MJC America against the Gree companies. Mr. Lam states that he was instructed by "Gree Management" to attend the September 19, 2012, meeting. Doc. [64-5] at 12. After the meeting, Mr. Lam "reported back to Ms. Dong when [he] returned in September 2012," and "Ms. Dong was not pleased that [he] was unable to persuade MJC to accept postponing the recall decision." *Id.* at 13. He also explained that after reports about dehumidifier fires increased in October 2012, he "wrote a report to Ms. Dong"—the report in Exhibit 5—and "Ms. Dong was not happy after reading the report." *Id.* at 13-14. Mr. Lam's declaration is consistent with his deposition testimony in Exhibit 3.

     The above-described evidence shows that Madame Dong has unique knowledge about the recall decision. And it rebuts Defendants' claim that she "did not read any emails or reports or participate in any meetings regarding the issues with Dehumidifiers and the handling of same." Doc. [61-1] at 7. That statement is also contradicted by the Deferred Prosecution Agreement between the Gree Zhuhai and Gree Hong Kong and the United States Department of Justice's Consumer Protective Branch of the United States Attorney's Office for the Central District of California. Doc. [61-5] at 48. Under that agreement, Gree Zhuhai agreed to a Statement of Facts, including the fact:

> On October 19, 2012, a sales representative for Gree USA met in person with Gree Zhuhai's board chairperson in China. During this meeting, the sales representative discussed the defective Gree dehumidifiers with Gree Zhuhai's board chairperson. Gree Zhuhai's board chairperson said that she would send a new Gree Hong Kong manager ("Gree Hong Kong Manager #2") to the United States to address the problems associated with the dehumidifiers.

*Id.* at 108. That fact from the Deferred Prosecution Agreement calls into question Defendants' broad claim that Madame Dong "has no direct knowledge of or involvement in the decision to delay the recall." Doc. [61-1] at 5.

     Defendants also try to defeat Plaintiffs' deposition notice on the "less burdensome avenues" prong of the apex doctrine analysis. Defendants argue that "the information Plaintiffs

5

seek from Madame Dong will undoubtedly be covered in the deposition of Defendants' corporate representative" including "information on Gree's corporate structure, financials, and internal communications regarding the recall delay." *Id*. at 7 (footnotes omitted). Defendants are correct that information about Gree Zhuhai's corporate structure, financials, and some of its internal communications can be obtained through the deposition of a corporate representative. But that argument avoids addressing the evidence that Plaintiffs are looking to obtain from Madame Dong: "why the decision was made to delay the recall 6-9 months" and "what went into that decision to delay the recall." Doc. [64] at 9. Plaintiffs have provided enough evidence to show that Madame Dong was directly involved in the decision to delay the recall and that she may have personally made the decision as the head of Gree Zhuhai. Accordingly, the apex doctrine does not prohibit Plaintiffs from taking her deposition.

**II.** **Madame Dong's deposition is not disproportionate to the needs of the case.**

Defendants next argue that the deposition is disproportionate to the needs of the case. They assert that Madame Dong "had no personal involvement in the investigation or recall delay of Gree dehumidifiers and cannot speak to such. It is therefore unclear how her testimony could aid in 'resolving the issues' in the instant matter." Doc. [61-1] at 8 (quoting Fed. R. Civ. P. 26(b)(1)). The claim that Madame Dong had no personal involvement in the recall delay is directly contradicted by Plaintiffs' evidence and the Deferred Prosecution Agreement. And if Defendants had other evidence to demonstrate that Madame Dong was not involved in the recall, they did not provide it. Defendants also argue that Madame Dong's deposition is "more burdensome than the average deposition" because she is the "highest ranking official of Gree." *Id*. Therefore, they claim, "the inherent cost and burden to Defendants to prepare Madame Dong for such a deposition outweighs any purported benefit to Plaintiffs." *Id*.

Deposing the highest-ranking employee of a large company undoubtedly imposes a burden. But the claim that the "inherent cost and burden to prepare" for a deposition outweighs any benefit to Plaintiffs is too vague to support a protective order. Federal Rule of Civil Procedure 26(b)(1) requires courts to evaluate proportionality by "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Defendants do not provide any specific information about the burden such a deposition would

6

create—no estimate of the hours it would take to prepare, no discussion of the corporate responsibilities Madame Dong would be kept from during the deposition, no explanation of how it would harm the company.  Without a more specific showing of a burden, Defendants' argument rings hollow.  That is especially true where the deposition would involve a central issue in the case:  why and how the decision was made to delay the recall.  *See* Doc. [64] at 10.

Defendants urge the Court to follow the decision *Avenatti v. Gree USA, Inc.*, which quashed the plaintiff's deposition notice of Madame Dong.  2022 WL 2439999 (S.D. Ind. July 5, 2022).  The court found that "the deposition would not be proportional to the needs of the case," in part because the "evidence of the actions that were and were not taken by Gree Zhuhai . . . ha[d] been established as a matter of law by . . . the deferred prosecution agreement." *Id.* at *2-3.  But in *Avenatti*, the court made note of the unusual posture of the case:

> Before addressing the parties' arguments, it is important to note the posture of this case.  On August 18, 2021, default was entered against Defendants as a discovery sanction.  Therefore, the liability of each Defendant has been established in this case, and the only issue that remains to be resolved is the amount of damages to be awarded Plaintiffs.

*Id.* at *1.  Liability has not been established against the Defendants in this case.  And while the Deferred Prosecution Agreement includes evidence of Gree Zhuhai's role in delaying the recall, it leaves open questions about Madame Dong's role.  The Statement of Facts shows that Gree USA's CEO repeatedly emailed Madame Dong but got no response.  Doc. [61-5] at 103, 106-07.  The Statement of Facts also shows that Gree USA's CEO emailed Gree Zhuhai's chief engineer—and copied Madame Dong—to say that Gree USA had decided to report the dehumidifiers to the United States Government.  *Id.* at 105-06.  The chief engineer responded to an email by saying that "he had no authority to approve what Gree USA's CEO proposed in his September 21, 2012 email and that he hoped Gree USA's CEO would report his decision on how to handle the defective Gree dehumidifiers to Gree Zhuhai's board chairperson and listen to her opinion." *Id.* at 106.

The Court is not aware of the record that was before the *Avenatti* court when it granted the motion to quash Madame Dong's deposition.  But here, Defendants have failed to make any specific showing of the burden or expense of the deposition.  Considering the evidence Plaintiffs provided of Madame Dong's role in the recall decision and the open questions that remain, the deposition is not disproportionate to the needs of the case.

### III.     **Madame Dong's deposition is not cumulative and unnecessary.**

Defendants argue that "Plaintiffs' request to depose Madame Dong is unnecessarily cumulative in light of the amount of discovery in Plaintiffs' possession." Doc. [61-1] at 8. Defendants claim that Plaintiffs can obtain the same information from the Deferred Prosecution Agreement and the 217,611 documents that Defendants provided in discovery. That argument fails for the reasons already stated. The Deferred Prosecution Agreement does not directly address Madame Dong's role in the recall decision. On the contrary, it calls into question Defendants' claims that she was completely uninvolved in the decision.

The Court also will not speculate about what is included in the hundreds of thousands of pages of discovery. As the party moving for the protective order, Defendants have "the burden to demonstrate good cause for issuance of the order." *Cigna Corp. v. Bricker*, 2023 WL 2561750, at *1 (E.D. Mo. Mar. 17, 2023) (quoting *Buehrle v. City of O'Fallon*, 2011 WL 529922, at *2 (E.D. Mo. Feb. 8, 2011)). If Defendants have discovery materials that show that the information Plaintiffs seek was already turned over, they could have provided it to the Court. In a footnote, Defendants claim that they "produced Defendants' relevant financial documents, including its tax returns, annual statements, and financial statements, the transcript and audio recording from the September 19, 2012 meeting and the transcript and audio recording from the October 19, 2012 meeting, among other things." Doc. [61-1] at 9 n.14. The financial documents, tax returns, annual statement, and financial statements are unrelated to the information that Plaintiffs seek from Madame Dong. As discussed above, the transcript from the September 19, 2012, meeting does not provide that information either. But it does support Plaintiffs' argument that Madame Dong was involved in, and may even have ordered, the recall delay decision. *See* Doc. [64-2] at 6. Neither party produced the transcript of the October 19, 2022, meeting. But the Deferred Prosecution Agreement's description of that meeting undermines Defendants' blanket denial of Madame Dong's involvement.[1] If the audio recording or transcript of that meeting proves otherwise, Defendants failed to carry their burden of providing that information so that it could inform the Court's decision.

---

[1] "On October 19, 2012, a sales representative for Gree USA met in person with Gree Zhuhai's board chairperson in China. During the meeting, the sales representative discussed the defective Gree dehumidifiers with Gree Zhuhai's board chairperson. Gree Zhuhai's board chairperson said that she would send a new Gree Hong Kong manager ("Gree Hong Kong Manager #2") to the United States to address the problems associated with the dehumidifiers." Doc. [61-5] at 108.

8

**IV.     The information is within the scope of the pleadings.**

Defendants' last argument is that the information Plaintiffs seek from Madame Dong is outside the scope of the pleadings because "punitive damages have, to date, not been pled." Doc. [61-1] at 9. At the time Defendants made that argument, that statement was correct. But the Court has since granted Plaintiffs' motion to amend their complaint to add punitive damages. See Doc. [69]. Therefore, that argument is no longer pertinent.

Accordingly,

**IT IS HEREBY ORDERED** that is Defendants' Motion for a Protective Order Quashing Plaintiffs' February 27, 2024, Deposition Notice of Dong Mingzhu, Doc. [61], is **GRANTED IN PART**, as outlined above. Plaintiffs may depose Dong Mingzhu, but the questioning must be limited to the topic about which Plaintiffs have shown Dong Mingzhu has unique information: Dong Mingzhu's involvement in the decision to delay the recall of the Gree dehumidifiers.

Dated this 8th day of March, 2024.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE

9