UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

BRENDA HILLMAN, ET AL.,           )
                                  )
          Plaintiff,              )
v.                                )    Case No. 4:23-cv-00830-SEP
                                  )
GREE USA, INC., ET AL.,           )
                                  )
          Defendants.             )

## MEMORANDUM AND ORDER

Before the Court are Defendants' motions seeking exclusion of Plaintiffs' experts Robert Helmkamp, William Truss, and Derek Starr.  *See* Docs. [192], [193], [194].  For the reasons set forth below, the motions are denied.[1]

### FACTS AND BACKGROUND

In this products liability case, Plaintiffs allege that a defective dehumidifier produced by Defendants caused the fire that killed Kenneth and Phyllis Zerr.  To support their theory that the fire was caused by a defective dehumidifier produced by Gree, Plaintiffs plan to use expert witnesses.  On the origin of the fire, Plaintiffs offer Robert Helmkamp.  *See* Doc. [192-3].  On potential electrical causes of the fire in the room identified as the origin, Plaintiffs offer William Truss.  *See* Doc. [193-3].  And on the origin of the fire within the dehumidifier and design defects in the dehumidifier, Plaintiffs offer Derek Starr.[2]  *See* Doc. [194-4].  Together the experts purport to establish the fire's cause by identifying the origin (Helmkamp), eliminating alternative causes (Truss) and examining the dehumidifier to establish an origin theory (Starr).  All three experts purport to have relied on the National Fire Protection Association's publication *NFPA 921: Guide for Fire and Explosion Investigations* (NFPA 921).[3]  Defendants move to exclude all three.

---

[1] Although there are nine pending motions to exclude expert witnesses, the Court addresses these three at this time because of their relevance to Defendants' Motion for Summary Judgment.  *See* Doc. [197] at 3-4 ("If the Court excludes the opinions of Starr, Truss, and Helmkamp, Plaintiffs cannot meet their burden.").

[2] Defendants also offer experts on these topics.  *See* Doc. [190-3].

[3] "The NFPA is a nonprofit organization dedicated to fire prevention, and NFPA 921 is a document intended to establish guidelines and recommendations for the safe and systematic investigation or analysis

1

## LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Under Rule 702, the trial court has gatekeeping responsibility to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)).

The United States Supreme Court recently amended Rule 702 to "clarify and emphasize" that a "preponderance of the evidence standard" applies to the admissibility of expert testimony. FED. R. EVID. 702 advisory committee's note to 2023 amendment. "[E]xpert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule." *Id.*

"Proposed testimony must be supported by appropriate validation—*i.e.,* 'good grounds,' based on what is known." *Daubert*, 509 U.S. at 590. But Rule 702 "is one of admissibility rather than exclusion." *Shuck v. CNH Am.*, LLC, 498 F.3d 868, 874 (8th Cir. 2007). "[D]oubts regarding whether an expert's testimony will be useful should generally be resolved in favor of admissibility." *Clark v. Heidrick*, 150 F.3d 912, 915 (8th Cir. 1998) (citation modified). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Olson v. Ford Motor Co.*, 481 F.3d 619, 626 (8th Cir. 2007).

"In the context of fire investigations . . . expert opinions formed on the basis of observations and experience may meet this reliability threshold." *Russell v. Whirlpool Corp.*,

---

of fire and explosion incidents." *Russell v. Whirlpool Corp.*, 702 F.3d 450, 457 (8th Cir. 2012) (citation modified).

702 F.3d 450, 457 (8th Cir. 2012).  An expert opinion based on the NFPA 921 investigative guidelines for fire investigations meets this reliability threshold if NFPA 921 is applied reliably. *See Fireman's Fund Ins. Co. v. Canon U.S.A., Inc.*, 394 F.3d 1054, 1058 (8th Cir. 2005).  A fire investigator's opinion is admissible if they "observed the relevant evidence, applied their specialized knowledge, and systematically included and excluded possible theories of causation." *Shuck*, 498 F.3d at 875.  The Eighth Circuit has "found reliability in these cases without insisting upon rigid adherence to the *Daubert* factors."  *Russell*, 702 F.3d at 457.

### DISCUSSION

Two principles guide the Court's analysis.  First, disagreement about the underlying facts alone is not a basis for excluding an expert witness:

> It will often occur that experts come to different conclusions based on contested sets of facts.  Where that is so, the Rule 104(a) standard does not necessarily require exclusion of either side's experts.  Rather, by deciding the disputed facts, the jury can decide which side's experts to credit.  "[P]roponents 'do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are correct, they only have to demonstrate by a preponderance of evidence that their opinions are reliable . . . .  The evidentiary requirement of reliability is lower than the merits standard of correctness.'"

FED. R. EVID. 702 advisory committee's note to 2023 amendment (quoting advisory committee's note to 2000 amendment).

Second, not every weakness or flaw in an expert's methodology warrants exclusion. Expert testimony must be helpful, based on sufficient facts or data, and produced by a reliable, and reliably applied, method.  *See* FED. R. EVID. 702.  But the proponent of expert testimony has to demonstrate those elements only by a preponderance of the evidence, not beyond a reasonable doubt.  *Id.*  Once the standard is met, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."  *Daubert*, 509 U.S. at 596.

## I.    **Robert Helmkamp**

Mr. Robert Helmkamp "is a Certified Fire Investigator through the International Association of Arson Investigators, the National Association of Fire Investigators, the National Board on Fire Service Professional Qualifications, and the State of Missouri . . . ."  Doc. [212] at

3

3.  Plaintiffs retained Mr. Helmkamp to determine the origin of the fire.  *Id.*[4]  Defendants do not challenge Mr. Helmkamp's credentials.  Rather, they challenge his adherence to NFPA 921, an alleged lack of scientific testing, and his purported failure to consider contrary evidence.

As carefully laid out in citations throughout his initial report, Doc. [192-3], Mr. Helmkamp followed the methods prescribed by NFPA 921 in determining the fire's origin.  He analyzed witness information, fire patterns, and fire dynamics.  *See* NFPA 921 § 18.1.2 (2021).  He performed an inspection of the building, observing fire damage levels and patterns.  Doc. [192-3] at 3-9; *see also* NFPA 921 § 6.2.2.3 (2021)).  He examined the exterior of the house before moving to the interior, starting in areas with the least damage and moving to the areas with the most damage.  *Id.*  Through his inspection, he determined that the fire started in the utility room by systematically eliminating every other room as a possibility.  *Id.* at 4-9.  He then used burn patterns and relative fire damage to identify a suspect zone within the utility room.  *Id.* at 8-9.  Ultimately, he concluded that "based upon fire patterns, degrees of fire damage, fire behavior indicators and electrical activity within the dehumidifier appliance, it is my professional opinion the fire originated at, or within, the dehumidifier appliance located on the floor in the basement utility room."  *Id.* at 9.  Plaintiffs have shown by preponderance of the evidence that Mr. Helmkamp's methods are a reliable application of NFPA 921 and thus they satisfy the Eighth Circuit's standard for reliability in the context of fire investigations.  *See Russell*, 702 F.3d at 457.

Defendants also object that Mr. Helmkamp failed to consider evidence of alternative ignition sources, including ceiling-level electrical arcing, minimally damaged combustibles, and the results of the second lab exam.  Doc. [192-1] ¶¶ 2, 19, 31-32.  Mr. Helmkamp did not ignore such evidence.  In his initial report, he noted the "lack of damage observed to combustible and metal components located in close proximity nearby" and "[t]hermal damage, likely masking evidence of electrical arcing."  Doc. [192-3] at 8.  And in his supplemental report, he considered the "additional investigation and data" collected at the second lab exam, including the opportunity for closer examination of the evidence of ceiling-level electrical arcing.  Doc. [192-11].  In both reports, he found such evidence consistent with his opinion that the fire originated at or within the dehumidifier.  While Defendants' experts may disagree with Mr. Helmkamp

---

[4] The origin of a fire is not the same thing as the cause of the fire.  The origin refers to the physical location where the fire started, while the cause refers to what started the fire.  Doc. [192-3] at 3.

4

about the significance of the evidence, Defendants have not pointed to any "total lack of consideration of . . . clear alternative ignition sources constitut[ing] 'serious error.'"  Doc. [192-1] at 9 (quoting NFPA 921 § 4.3.7).  Defendants' arguments "are better addressed to the jury regarding the weight to be afforded [Mr. Helmkamp's] opinion, rather than to the district court on the question of admissibility."  *Russell*, 702 F.3d at 458.  Mr. Helmkamp's opinions are admissible.  Defendants are free to challenge them through cross-examination and the presentation of contrary evidence.  *See Olson*, 481 F.3d at 626.

## II.    William Truss

Mr. William Truss is a "professional forensic electrical engineer."  Doc. [213] at 2. Plaintiffs retained him to examine the electrical artifacts in the room where the fire originated and determine if they played a role in causing the fire.[5]  *Id*.  Defendants argue that Mr. Truss's opinions must be excluded because he failed to follow NFPA 921; he relied on "negative corpus";  he conducted no testing; and he failed to consider alternative ignition sources and contradictory evidence.  Doc. [193] at 1.

Neither Plaintiffs nor Mr. Truss's report claim that Mr. Truss identified the origin or cause of the fire.  Docs. [193-3], [213] at 4.  "[R]ather, his opinion is that he evaluated all electrical artifacts within the east basement utility room and eliminated all potential electrical ignition sources as a possible cause of the fire, other than the Dehumidifier."  Doc. [213] at 4. Defendants' objection that Mr. Truss failed to follow the proper procedure for determining the cause of a fire is therefore unavailing.  *See, e.g.*, Doc. [193-1 ¶¶ 3-6 ("Investigators are prohibited from *determining the cause* solely through process of elimination . . .") (emphasis added).  Cases cited by Defendants regarding the unreliability of conclusions reached through negative corpus are likewise beside the point.  *See* Doc. [193-1] at 12-13.

As documented in his initial report, Mr. Truss followed NFPA 921's prescribed method for fire cause determination.  *See* Doc. [193-3] at 12 (citing NFPA 921 §§ 4.36, 19.6.5.1, 19.7.4 (2024))  His report relies on three site examinations (two of which were joint examinations), a laboratory examination, Mr. Helmkamp's report and several other documents and procedures. *Id*. at 4-5.  During the site examinations, Mr. Truss identified and analyzed electrical artifacts in the area of origin.  *Id.* at 14-26.  During the joint examinations, the parties jointly identified

---

[5] His testimony relies on Mr. Helmkamp's determination that the fire started in the utility room.

certain artifacts as likely to be potential causes and collected them for further laboratory analysis. *Id.* at 27. Mr. Truss then systematically eliminated the electrical artifacts other than the dehumidifier as potential causes. *Id.* at 31-35. He began by eliminating artifacts that were substantially outside the area of origin. *Id.* at 31. Then he eliminated artifacts that showed no evidence of an electrical failure. *Id.* at 31-32. That left four electrical artifacts that could have been the cause of the fire. *Id.* at 33. Mr. Truss then individually evaluated the hypotheses that each of the remaining artifacts contributed to the cause of the fire, explaining why he found that three of them were "inconsistent with the facts and the principles of science." *Id.* at 33-34.

Defendants argue that Mr. Truss's opinion should be excluded because his evaluations of alternative ignition sources lacked "scientific testing, analysis, measurements, calculations, empirical data, or peer-reviewed literature," Doc. [193-1] ¶ 31, but that does not defeat its admissibility. "In the context of fire investigations, . . . expert opinions formed on the basis of observations and experience may meet [Rule 702's] reliability threshold." *Russell*, 702 F.3d at 457. No specific kind or quantity of "testing" is necessary for Mr. Truss's testimony to qualify as reliable. His evaluations of the four hypotheses cite observations of physical evidence and his own experience. *See* Doc. [193-3] at 33-35. Plaintiffs have shown by a preponderance standard that he "observed the relevant evidence, applied his specialized knowledge, excluded alternative causal theories, and reached a conclusion." *Russell*, 702 F.3d at 457.

And finally, Mr. Truss attended the second lab examination and addressed "the additional investigation and data collected" in a supplemental report, finding that none of it was in conflict with his earlier opinions. *See* Doc. [193-9] at 2. While he disagrees with Defendants' experts as to its significance, he did not ignore it.

His opinion is admissible. Defendants are welcome to challenge that opinion through cross-examination and presentation of contrary evidence, but they have identified no basis for excluding it altogether.

### III. <u>Derek Starr</u>

Mr. Starr is a "professional forensic electrical engineer" and fire investigator. Doc. [214] at 3. Prior to his current employment, he spent more than six years performing certification evaluations at Underwriters Laboratories, Inc. (UL). *Id.* at 4. Plaintiffs plan to offer Mr. Starr's testimony to prove that the dehumidifier was defective in design, that the fire originated internal to the dehumidifier, where in the dehumidifier the fire originated, and that if UL had been

informed of the design defects they would have removed their mark from the dehumidifiers, "which would have prohibited or substantially limited Gree's ability to sell the affected dehumidifiers in the U.S." Doc. [214] at 3. Defendants argue that Mr. Starr's testimony should be excluded because (1) his conclusions were based solely on internal damage to the dehumidifier, (2) he ignored the results of the second lab exam, (3) he failed to follow NFPA 921 and properly account for the possibility that internal damage was consistent with external fire attack, (4) he relied on the reports of Mr. Helmkamp and Mr. Truss, which Defendants contend are inadmissible, and (5) he lacks an adequate basis to conclude that, if disclosed, Gree's 2010 test would have caused UL to delist the dehumidifiers, therefore preventing the sale to Ms. Hillman. Doc. [194] at 1-2.

### A. Mr. Starr's opinion on the origin of the fire is admissible.

Defendants' challenges to Mr. Starr's opinion on the fire's origin all fail. His opinion was not based only on internal damage to the dehumidifier; he also relied on the opinions of Mr. Helmkamp and Mr. Truss, which are admissible as set forth above. *See* Doc. [194-4] at 43; Doc. [214] at 9-10. Mr. Starr also did not ignore the results of the second lab exam. He considered the findings and concluded that they did not support an alternative hypothesis or conflict with his previously stated opinion. *See* Doc. [194-9] at 2. As already noted, resolving the experts' disagreements as to the significance of the second lab exam is a job for the jury. Finally, Mr. Starr's methods in determining that the fire originated internally to the dehumidifier—relying on observations of physical evidence, scientific principles, experience, and the opinions of Plaintiffs' other experts, *see* Doc. [194-4] at 43-47—were consistent with NFPA 921 and sufficient to satisfy Rule 702. *See Russell*, 702 F.3d at 457 ("In the context of fire investigations, . . . expert opinions formed on the basis of observations and experience may meet [Rule 702's] reliability threshold.").

### B. Mr. Starr's opinion relating to UL certification is admissible.

Defendants object to Mr. Starr's opinions relating to the dehumidifier's UL listing because (1) he ignores the absence of a pattern of dehumidifier fires prior to 2012 and evidence that Plaintiff Hillman purchased the dehumidifier in May 2011, (2) he provides no timeline as to when the UL listing would have been removed and whether it would have actually prevented the sale of the dehumidifier if it was purchased in May 2011, and (3) he does not sufficiently explain UL standards or decision-making processes or "provide any evidence that exceeding a

7

temperature rating under similar testing would automatically trigger removal of the UL Mark." Doc. [194-1] ¶¶ 21-22.  None of Defendants' arguments undermine the admissibility of Mr. Starr's testimony.

A court should not admit opinion evidence that is "excessively speculative or unsupported by sufficient facts." *Barrett v. Rhodia, Inc.*, 606 F.3d 975, 981 (8th Cir. 2010).  Mr. Starr's opinions are neither speculative nor unsupported.  In his initial report, Mr. Starr—whose experience includes six years working at UL, where his duties included certification of products to UL standards, *see* Doc. [194-4] at 65-66—explains what a UL listing is, what purpose it serves, and the requirements UL imposes on manufacturers, including the duty to inform UL if a manufacturer becomes aware that a certified product could pose a "substantial hazard."  *See* Doc. [194-4] at 59-63.  Mr. Starr's second supplemental report explains why the November 2010 Low Refrigerant Charge Operation Test of a GE-branded dehumidifier is relevant to the dehumidifier at issue in this case; what the test results were; and why they were indicative of a fire hazard. *See* Doc. [194-6] at 8-10.  Finally, he opines that the test provided Gree with "knowledge of a substantial hazard to users," which triggered its duty to notify UL, and would have jeopardized its UL listing.  *Id.* at 10.  That opinion is supported by sufficient facts and is not excessively speculative.

Defendants also object that Mr. Starr ignores the evidence that Plaintiff Hillman purchased the dehumidifier in 2011 and "provides no timeline as to when the UL listing would have been removed and/or whether this would have actually prevented the sale of the subject Dehumidifier."  Doc. [194-1] at 6.  First, the Court notes that if Mr. Starr had assumed Plaintiffs' position on the disputed question of the purchase date, that would not render his testimony inadmissible.  *See* FED. R. CIV. P. 702 advisory committee's note to 2000 amendment ("Rather, by deciding the disputed facts, the jury can decide which side's experts to credit."); *see also Lopez v. Three Rivers Elec. Co-op., Inc.,* 26 S.W.3d 151, 160 (Mo. 2000) (a finding that "defendant did not knowingly violate a . . . clear industry standard designed to prevent the type of injury that occurred" weighs against the submission of punitive damages.).

But—as far as the Court can tell—Mr. Starr's opinion does not appear to rest on a disputed fact.  Mr. Starr does not opine that a report to UL *would have prevented* the sale of the dehumidifier to Plaintiff Hillman.  He opines that, had UL been notified of the information in the November 2010 report, it would have "require[d] Gree to remove the UL Mark from their

affected dehumidifiers," which "would have prohibited or substantially limited Gree's ability to sell the affected dehumidifiers in the United States (US)."  Doc. [194-6] at 5, 10; *see also* Doc. [194-4] at 62-63.  His opinion does not assert that decertification would have happened on any particular timeline or prevented any particular sale, and it also does not rest on any claims about reports of dehumidifier fires.  Defendants are free to highlight any deficiencies in Mr. Starr's opinion on cross-examination and by putting on their own evidence, but Plaintiffs have sufficiently demonstrated its relevance and reliability for purposes of Rule 702.

**V.      The experts' testimony will not be excluded under Rule 403.**

Defendants also argue that all three experts' testimony should be excluded under Federal Rule of Evidence 403, because its probative value is substantially outweighed by the danger of confusing or misleading the jury.  *See* Docs. [192-1] at 14-15; Doc. [193-1] at 14-15; Doc. [194-1] at 14-15.  The Court disagrees.  All three experts' opinions are probative of critical issues the jury will have to decide, and the Court has seen no evidence that they would pose a significant risk of confusing or misleading the jury.

CONCLUSION

Plaintiffs have shown by a preponderance of the evidence that the testimony of experts Helmkamp, Truss, and Starr satisfies the requirements of Rule 702.  *See Daubert*, 509 U.S. at 592 n.10.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motions to Exclude the Expert Testimony of Robert Helmkamp, Doc. [192], William Truss, Doc. [193], and Derek Starr, Doc. [194] are **DENIED**.

Dated this 16th day of March, 2026.

SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE

9