UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

BRENDA HILLMANN, ET AL.,        )
           )
    Plaintiffs,         )
v.           )    Case No. 4:23-cv-00830-SEP
           )
GREE USA, INC., ET AL.,         )
           )
    Defendants.        )

## MEMORANDUM AND ORDER

Before the Court are four motions to exclude expert witnesses, Docs. [195], [196], [198], [200].  Plaintiffs seek the exclusion of three defense experts:  Todd Soong, Arash Hajjam, and Carlos Fernandez-Pello.  Docs. [195], [196], [198].  Defendants seek the exclusion of proposed Plaintiffs' expert Roy Deppa.[1]  For the reasons set forth below, the motions to exclude the testimony of Todd Soong and Roy Deppa are granted in part.  Otherwise, the motions to exclude are denied.

### FACTS AND BACKGROUND

In this products liability case, Plaintiffs allege that a defective dehumidifier produced by Defendants caused the fire that killed Kenneth and Phyllis Zerr.  In support of their defense, Defendants plan to use expert witnesses.  On the origin of the fire, Defendants offer Todd Soong.  Doc. [195-3].  On the potential electrical causes of the fire, Defendants offer Arash Hajjim.  Doc. [196-3].  Lastly, on fire dynamics, patterns, and potential causes of the fire, Defendants offer Carlos Fernandez-Pello.  Doc. [198-3].  Together, the experts purport to establish that the cause of the fire remains undeterminable.  All three experts purport to have relied on the National Fire Protection Association's publication *NFPA 921:  Guide for Fire and Explosion Investigations* (NFPA 921).[2]  Plaintiffs move to exclude all three.

---

[1] Plaintiffs have also filed a motion to supplement in support of their response to Defendants' motion to exclude Deppa.  Doc. [262].  Having considered both the motion and Defendants' response, Doc. [264], the Court grants Plaintiff's motion to supplement.

[2] "The NFPA is a nonprofit organization dedicated to fire prevention, and NFPA 921 is a document intended to establish guidelines and recommendations for the safe and systematic investigation or

Plaintiffs have also produced Roy Deppa as an expert on the topic of Consumer Product Safety Commission (CPSC) regulations and procedures for the purpose of establishing that Defendants failed to timely report dangerous defects in their dehumidifiers.  Defendants move to exclude Deppa.

LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Under Rule 702, the trial court has gatekeeping responsibility to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)).  The United States Supreme Court recently amended Rule 702 to "clarify and emphasize" that a "preponderance of the evidence standard" applies to the admissibility of expert testimony.  Fed. R. Evid. 702 advisory committee's note to 2023 amendment.  "[E]xpert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule."  *Id.*

"Proposed testimony must be supported by appropriate validation—*i.e.*, 'good grounds,' based on what is known."  *Daubert*, 509 U.S. at 590.  But Rule 702 "is one of admissibility rather than exclusion."  *Shuck v. CNH Am., LLC*, 498 F.3d 868, 874 (8th Cir. 2007).  "[D]oubts regarding whether an expert's testimony will be useful should generally be resolved in favor of admissibility."  *Clark v. Heidrick*, 150 F.3d 912, 915 (8th Cir. 1998) (citation modified).  "Vigorous cross-examination, presentation of contrary evidence, and

---

analysis of fire and explosion incidents."  *Russell v. Whirlpool Corp.*, 702 F.3d 450, 457 (8th Cir. 2012) (citation modified).

careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Olson v. Ford Motor Co.*, 481 F.3d 619, 626 (8th Cir. 2007).

"In the context of fire investigations . . . expert opinions formed on the basis of observations and experience may meet this reliability threshold." *Russell v. Whirlpool Corp.*, 702 F.3d 450, 457 (8th Cir. 2012). An expert opinion based on the NFPA 921 investigative guidelines for fire investigations meets this reliability threshold if NFPA 921 is applied reliably. *Fireman's Fund Ins. Co. v. Canon U.S.A.*, Inc., 394 F.3d 1054, 1058 (8th Cir. 2005). A fire investigator's opinion is admissible if they "observed the relevant evidence, applied their specialized knowledge, and systematically included and excluded possible theories of causation." *Shuck v. CNH Am.*, LLC, 498 F.3d 868, 875 (8th Cir. 2007). The Eighth Circuit has "found reliability in these cases without insisting upon rigid adherence to the Daubert factors." *Russell*, 702 F.3d at 457.

### DISCUSSION

Consistent with the Court's previous *Daubert* order in this matter, *see* Doc. [269], two principles guide the Court's analysis. First, disagreement about the underlying facts alone is not a basis for excluding an expert witness:

> It will often occur that experts come to different conclusions based on contested sets of facts. Where that is so, the Rule 104(a) standard does not necessarily require exclusion of either side's experts. Rather, by deciding the disputed facts, the jury can decide which side's experts to credit. "[P]roponents 'do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are correct, they only have to demonstrate by a preponderance of evidence that their opinions are reliable. . . The evidentiary requirement of reliability is lower than the merits standard of correctness.'"

Fed. R. Evid. 702 advisory committee's note to 2023 amendment.

Second, not every weakness or flaw in an expert's methodology warrants exclusion. Expert testimony must be helpful, based on sufficient facts, and produced by a reliable, and reliably applied, method. *See* Fed. R. Evid. 702. But the proponent of expert testimony must demonstrate those elements only by a preponderance of the evidence, not beyond a reasonable doubt. *Id.* Once the standard is met, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the

3

traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

## I.   <u>Todd Soong</u>

Todd Soong is "a certified fire investigator (CFI) by the International Association of Arson Investigators (IAAI) and a certified fire and explosion investigator (CFEI) by the National Association of Fire Investigators (NAFI)."  Doc. [195-3] at 1.  Defendants retained Soong to determine the origin of the fire and its potential causes.  Doc. [195-2] at 4. Plaintiffs argue that Soong's opinions must be excluded because they are based on incomplete and inaccurate information and they are not the product of reliable principles and methods.

### A.  Soong's opinions on the origin and cause of the fire are admissible.

Plaintiffs' objections to Soong's opinions on the fire's origin and potential causes all fail.  As discussed throughout his initial report, Doc. [195-3], Soong followed the methods prescribed by NFPA 921 in determining that the fire originated in the home's utility room and that the cause of the fire could not be definitively determined.  *See* NFPA 921 § 18.1.2 (2021).  He performed an inspection of the building, observing fire damage levels and patterns.  Doc. [195-3] at 3-7; *see also* NFPA 921 § 6.2.2.3 (2021).  During a joint examination of the home on December 6, 2022, Soong performed an inspection of the exterior of the house before moving to the interior.  *Id.* at 3-4.  While on the first floor, Soong observed a "partial collapse of the flooring in the bathroom area and the central hallway of the home . . . caused by fire beneath the area."  *Id.* at 4.  Soong continued his examination in the basement and the utility room, ultimately concluding "[b]ased on fire pattern analysis, the application of fire dynamics, and witness statements, [the] fire originated within the utility room and spread upward and outward consuming ordinary combustible in the room and primary at the subfloor assembly of the first floor" and that "[w]ithin the room, the fire either originated at the ceiling level and burned unchecked through the interstitial spaces of the subfloor, dropping burning items onto the items in the floor on the items in the room [sic] including the Gree dehumidifier, or the fire occurred near, in, or on the dehumidifier and extended upward and outward spreading to the interstitial spaces above."  *Id.* at 4-8.  In analyzing the two identified potential causes of the fire, relying on the expertise of Hajjam and Fernandez-Pello, Soong ultimately concludes

4

that neither cause could be eliminated "[d]ue to the portions of evidence that were missing or removed from the room" prior to the first joint inspection. *Id.* at 8-10.  Soong's method of determining the origin and potential causes of the fire—relying on observations of physical evidence, scientific principles, experience, and the opinions of Defendants' other expert witnesses—is consistent with NFPA 921 and sufficient to satisfy Rule 702. *See Russell*, 702 F.3d at 457 ("In the context of fire investigations, . . . expert opinions formed on the basis of observations and experience may meet [Rule 702's] reliability threshold.").

Plaintiffs also argue that Soong's opinions are unreliable because he did not conduct his own testing; he uses "ambiguous words such as 'possible,' 'may,' and 'can'"; and he developed his opinions with cherry-picked facts and confirmation bias.  Doc. [195-1].  But NFPA 921 advises that investigators should seek assistance when they "lack[] expertise to properly attribute meaning to a piece of data" and should utilize the "special talents or training" of other individuals in the fields of "electrical, heating and air conditioning, and other engineering fields" when needed. *See* NFPA 921 §§ 4.3.4, 15.3.2.  And NFPA 921 § 4.5.1 specifically instructs investigators to utilize words like "probable" and "possible" to denote the appropriate level of certainty. *See also* NFPA 921 §§ 4.5, 4.5.2.  While Plaintiffs may disagree with Soong's assessment of the significance of certain evidence, such arguments "are better addressed to the jury regarding the weight to be afforded [Soong's] opinion, rather than to the district court on the question of admissibility." *Russell*, 702 F.3d at 458.  Defendants have shown by a preponderance of the evidence that Soong's methods are a reliable application of NFPA 921 and thus they satisfy the Eighth Circuit's standard for reliability in the context of fire investigations. *See Russell*, 702 F.3d at 457.

**B.  Soong's opinion relating to spoliation is inadmissible.**

Plaintiffs also argue that "Soong improperly claimed spoliation of evidence" under NFPA 921 § 3.3.186, which defines spoliation as "[l]oss, destruction, or material alteration of an object or document that is evidence or potential evidence in a legal proceeding by one who has the responsibility for its preservation."  Soong may testify to what he observed; how what he observed was (or was not) consistent with what he expected to see based on his training and experience; and how what he observed (or did not observe) affected his ability to draw conclusions about the fire's cause or origin.  Soong may not characterize anything he observed (or did not observe) as "spoliation," however, which is a legal

conclusion that implies misconduct by a responsible party.  Nothing in Soong's CV or report suggests that he is qualified to opine on whether anything he observed was a result of "spoliation" or some other cause.  Therefore, Plaintiff's motion to exclude Soong's opinion that there was "spoliation of evidence" as defined in NFPA 921 § 3.3.186 is granted.

## II.     <u>Arash Hajjam</u>

Arash Hajjam "is a forensic electrical engineer and has in excess of 15 years of experience."  Doc. [196-2] at 4.  Hajjam "is expected to provide testimony regarding his inspection of the fire scene and subject dehumidifier, evidence collected, and potential causes and contributing factors to the fire.  Specifically, he is expected to provide testimony that the cause of the fire is indeterminate as per NFPA 921."  *Id.*  Plaintiffs argue that Hajjam's opinions must be excluded because (1) he relied on the report of Soong, which Plaintiffs contend is inadmissible; and (2) he failed to follow the methodology outlined in NFPA 921, in that his opinion with respect to a potential failure of the light fixture lacks a scientific basis and he failed to properly test any of his hypotheses.  Doc. [196-1] at 7-22.

Because the Court has determined that Soong's opinion concerning the origin of the fire is admissible, Hajjam's reliance on Soong's opinion does not vitiate his testimony.  Also, Hajjam followed NFPA 921's prescribed method for fire cause determination.  His report relies on two joint site examinations, two lab inspections, the expert reports of the other fire investigation experts proffered in this case, and several other photographs and documents, including NFPA 921.  Doc. [196-3] at 4-5.  During the joint examinations, the parties identified certain artifacts as likely to be potential causes and collected them for further laboratory analysis.  *Id.* at 6-12.  Based on his observations of the scene and analysis of the artifacts, Hajjam identified three potential causes of the fire—the dehumidifier, the branch circuit wiring in the ceiling, and a nearby light fixture—and examined each in a laboratory.  *Id.* at 12-19.  Hajjam then evaluated each potential cause and ultimately concluded that "[g]iven the extensive damage and the presence of missing artifacts, multiple potential ignition sources remain, preventing a definitive conclusion regarding the exact ignition source of the fire."  *Id.* at 20-22.  Plaintiffs' arguments regarding the sufficiency of Hajjam's testing and his alleged consideration of improper evidence are insufficient, in this case, to undermine the admissibility of his testimony.  *See* Doc. [196] ¶¶ 10-15.  "In the context of fire investigations, . . . expert opinions formed on the basis of

6

observations and experience may meet [Rule 702's] reliability threshold." *Russell*, 702 F.3d at 457. As the Court observed in denying Defendants' motions to exclude, no specific kind or quantity of "testing" is necessary for Hajjam's testimony to qualify as reliable. Hajjam's evaluations of each potential cause cite observations of physical evidence, laboratory examinations, his own experience, and the findings of other experts in this case. *See* Doc. [196-3] at 6-22. Defendants have shown by a preponderance standard that Hajjam "observed the relevant evidence, applied his specialized knowledge, excluded alternative causal theories, and reached a conclusion" consistent with NFPA 921's guidance. *Russell*, 702 F.3d at 457. As such, Hajjam's opinions are admissible.

### III.    Carlos Fernandez-Pello

Carlos Fernandez-Pello is a "thermodynamics expert and has in excess of 30 years of experience." Doc. [198-2] at 3. Defendants plan to offer Fernandez-Pello to discuss "potential causes and contributing factors to the fire and the possibility of the subject Dehumidifier and other potential ignition sources causing the fire. Specifically, he is expected to provide testimony that the cause of the fire is indeterminate as per NFPA 921." *Id.* Plaintiffs argue that Fernandez-Pello's testimony should be excluded because (1) he failed to follow NFPA 921 in failing to consider the presence of combustible objects in the vicinity of the dehumidifier; and (2) he failed to sufficiently test his hypothesis that the fire was caused by an electrical failure in the ceiling. Doc. [198-1] at 6-15.

As documented in his initial report, Fernandez-Pello's opinions all follow NFPA 921's prescribed method for fire cause determination. *See* Doc. [198-3] at 6-19 (citing NFPA 921 §§ 3.1, 3.2 (2017)). His report relies on "photographs taken by the fire department, the plaintiff, and defendant experts during the different inspection [sic] of the Zerr's home after the fire; the photographic analysis results of the laboratory inspections of the dehumidifier evidence, and data from burning tests of two Gree dehumidifiers." *Id.* at 7, 14. First, Fernandez-Pello discussed the fire patterns surrounding the dehumidifier, the results of the dehumidifier tests, and generated computer simulations, concluding that "the Gree dehumidifier could not have been the source of ignition." *Id.* at 8-14, 23-26. Next, Fernandez-Pello discussed fire damage and patterns seen on photographs of the ceiling "in or around" a light fixture, noting that "[t]here was a significant arcing event in or around this light fixture as shown by the fact that there are multiple arcing sites on conductors

recovered in the debris around the dehumidifier as well as on the branch circuit wiring." *Id.* at 15-16.  Fernandez-Pello then addressed the possibility that elements in the ceiling could have been ignited by such arcing, finally stating that "the analyses of the post-fire photographs indicate that an electrical failure in, or near the utility room could have been the source of ignition of the ceiling, leading to the burning of the ceiling wood deck and the subsequent fire." *Id.* at 16-18.  Ultimately, Fernandez-Pello concluded that "[t]he cause of the fire at the Zerr's home cannot be identified, and per NFPA921 it is concluded that the cause of the fire is undetermined," finding there to be insufficient evidence to determine whether the dehumidifier caught fire due to an internal electrical failure or "drop-down burning material." *Id.* at 18.

Plaintiffs argue that Fernandez-Pello's opinions should be excluded because (1) he failed to consider the presence of additional fuel loads in the vicinity of the dehumidifier; and (2) he failed to conduct testing regarding internal arcing in the dehumidifier.  Those arguments fail.  Although Fernandez-Pello initially testified that he was not aware of several plastic buckets near the dehumidifier, he later submitted errata indicating that he had reviewed photographs of the buckets, "concluded that the buckets didn't burn, only melted," and "[t]hus, there was no need to investigate th[e] issue anymore."[3]  Doc. [198-4] at 97.  As laid out in the Court's order denying Plaintiffs' motion to strike those errata, such inconsistency in Fernandez-Pello's testimony on different occasions may be relevant to his credibility as a witness, but it does not undermine its admissibility altogether.  And given Fernandez-Pello's position that the dehumidifier could not have been the cause of the fire, regardless of how it ignited, the fact that he did not do additional testing to determine whether there was internal arcing does not undermine the credibility of his opinion.  *See, e.g.*, Doc. [198-4] at 133:15-24.  While Defendants are welcome to challenge Fernandez-Pello's assessments of the significance of certain evidence, and to present contrary evidence, they have identified no basis for excluding his opinion altogether.  *See Russell*, 702 F.3d at 458.

---

[3] Plaintiffs moved to strike the errata sheets of Defendants' experts, Doc. [171], but the Court found them permissible under Federal Rule of Civil Procedure 30(e), Doc. [276].

## IV.    <u>Roy Deppa</u>

Roy Deppa is a "registered Professional Engineer" who "worked at the [CPSC] from July 1978 through September 2005."  Doc. [200-3] at 1.  "From June 2002 through September 2005, he was Associate Director of the Recalls and Compliance Division, supervising a team of approximately ten Compliance Officers whose duties were to enforce regulations, to investigate potential product hazards, and to process corrective actions including recalls and failure-to-report referrals."  *Id.*  While Deppa's report includes a ten-paragraph section titled "Conclusions and Opinions," *id.* at 14-16, Plaintiffs clarify that they plan to have Deppa testify to three opinions:

> 1) Gree should have immediately reported to the Commission when it had reason to know the product could pose a hazard;
>
> 2) Gree should have recalled and stopped selling its dehumidifiers when they had reason to know that the dehumidifiers were defective and caused a serious risk of personal injury or death; and
>
> 3) Gree failed to notify the Commission, recall the dehumidifiers and failed to stop selling the dehumidifiers even though they knew they contained a defect that posed a serious risk of personal [injury] or death.

Doc. [211] at 9.  In support of his opinions, Deppa describes the reporting requirements under Section 15 of the Consumer Product Safety Act, *id.* ¶¶ 4-12; the consequences for failing to report, *id.* ¶¶ 13-16; and the specific acts taken by Defendants which he asserts constitute reporting failures, *id.* ¶¶ 17-27.  In addition to his opinions concerning Defendants' compliance with regulatory standards, Deppa makes several assertions pertaining to Defendants' intent and state of mind.  *See, e.g., id.* ¶¶ 20-27, 31, 33-35, 37.

Defendants argue that Deppa's testimony should be excluded because (1) Deppa is unqualified, as a professional engineer, to opine on the interpretation of federal regulations or Defendants' state of mind; (2) his opinions concerning the process by which companies issue recalls and Defendants' state of mind lack scientific methodology; (3) his opinions improperly relate only to punitive damages; and (4) his opinions, even if admissible, are barred under Federal Rule of Evidence 403, as his "interpretation of federal regulations and Defendants' obligations under them would run the risk of creating a danger of overriding the Court's jury instructions on the same" and his opinions concerning the severity of

9

Defendants' failure to recall risked interfering with the jury's duty to evaluate liability.  Doc. [200-1] at 7-15.

As an initial matter, the Court finds that Deppa's proposed testimony relating to Defendants' state of mind is improper.  Expert testimony on "the intent, motives, or states of mind of corporations, regulatory agencies and others have no basis in any relevant body of knowledge or expertise." *Deutsch v. Novartis Pharms. Corp.*, 768 F. Supp. 2d 420, 442 (E.D. N.Y. 2011) (quoting *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 546 (S.D. N.Y. 2004)).  Thus, Deppa may not opine on what Defendants, or individuals employed by Defendants, thought or about their motivations.  *See, e.g.*, Doc. [200-3] ¶¶ 20 ("He obviously thought that such an approach was appropriate and should serve as guidance for Gree. . . . His lengthy presentation is about covering up, delaying, and trying to save money, without any thought or consideration of the safety implications of delaying a recall."); 21 ("This is an important point, because it demonstrates that Gree management planned their actions not on safety but on business."); 24 ("The record clearly demonstrates that the Gree companies and MJC could have prevented thousands of their dangerous dehumidifiers from being sold to consumers . . . but they chose not to do so simply for money."); 26 ("Perhaps even more distressing than the intentional delays in starting a recall, is the revelation that Gree has still not learned a lesson."; "By their own statements, the delay was to save money and market share, regardless of the danger to consumers."); 27 ("Mr. Yao is speaking as the corporate representative of Gree, and he clearly demonstrates that Gree still does not understand the safety standards and regulations pertaining to the product safety . . ."); 33 ("Gree executives knew that the dehumidifiers would burn . . . but they chose to hide that knowledge and continue to sell the defective products to maximize income."); 34 ("Property loss, human life, United States law apparently are all still secondary to Gree's profit."); 37 ("Instead, Gree continued to sell the defective dehumidifiers in the United States until June 12, 2013 placing profits over human life and safety.").

Furthermore, "[t]he law is clear that expert witnesses may not opine as to whether a party violated a given regulation." *Cowden v. BNSF Ry. Co.*, 4:08-cv-1534, 2013 WL 5442926, at *6 (E.D. Mo. Sept. 30, 2013) (citing *S. Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc.*, 320 F.3d 838, 841 (8th Cir. 2003) ("The evidence took the form, essentially,

of a battle of experts opining as to whether Southern Pine had violated FAA regulations.  As we have had occasion to remark before, however, expert testimony on legal matters is not admissible."); *In re Genetically Modified Rice Litig.*, 4:06MD1811, 2010 WL 5070718, at *5 (E.D. Mo. Dec. 6, 2010) ("Experts may not draw legal conclusions or interpret law or regulations.  No witness may testify that . . . Bayer violated or complied with a standard of care prescribed by the regulations."); *Johnson v. Avco Corp.*, 207 F. Supp. 2d 1093, 1109-10 (E.D. Mo. 2010) (Expert "may discuss the evidence indicating that Swan had not sufficiently practiced night landings and he may discuss the requirements outlined in the regulations, but he may not opine about whether Swan in fact violated the regulations.")).  Instead, it may be permissible for an expert to "*refer* to regulations in addition to their industry experience."  *Cowden*, 2013 WL 5442926, at *6 (citing *Haager v. Chicago Rail Link, LLC*, 232 F.R.D. 289, 295 (N.D. Ill. 2005) ("If his testimony is based on certain regulations . . . he may reference those regulation.  Byrnes may not, however, offer an opinion that concludes or opines that such regulations were violated."); *Alumbaugh v. Union Pac. R.R. Co.*, 322 F.3d 520, 525 (8th Cir. 2003) (jury was entitled to hear expert testimony that "crossing was not in a state of good repair . . . because its components were not maintained properly and were badly deteriorated"); *Wood v. Minn. Mining and Mfg. Co.*, 112 F.3d 306, 310 (8th Cir. 1997) ("Even if . . . testimony [as to whether the defendant provided reasonable warning of a crossing] was inappropriate, we conclude that admitting it was harmless error.").  Accordingly, Deppa may not offer his opinion about whether Defendants' conduct violated applicable regulations.

The Court also shares Defendants' concern that Deppa's report includes qualitative characterizations of Defendants' conduct unconnected to any specific industry standard, and that such characterizations invade the province of the jury, who will be tasked with determining if Defendants' conduct "showed complete indifference to or conscious disregard for the safety of others."  MAI 10.06.  While Deppa's expertise may equip him to (for example) opine on the effects of Defendants' decisions in response to reports of dehumidifier fires on the sale and distribution of such products, a statement like "[t]he case of the Gree dehumidifiers is the worst example of the disregard for product safety and human life that I have seen" poses a risk of unfair prejudice and confusing the issues that substantially outweighs whatever its limited probative value may be.  Fed. R. Evid. 403.

Similarly, if Deppa indulges on the stand in gratuitous expressions of disapproval or disgust—e.g., "How does one respond to this?"—Plaintiffs can expect the Court to strike his testimony and instruct the jury to disregard it.

Notwithstanding all of the above, the Court concludes that Deppa, based on his professional experience, is qualified and permitted to testify about (1) the industry standards relating to CPSC recalls, including references to relevant regulations, so long as he does not opine on whether Defendants' conduct actually violated any regulations; and (2) Defendants' conduct in response to the product defect that Plaintiffs allege is at the heart of this case, including the effects of those actions on the availability of the defective product. If Deppa cannot limit his testimony to what his expertise and the Federal Rules of Evidence allow—and in particular if his testimony strays into speculation about Defendants' state of mind, intent, or motive; improper legal conclusions; or inflammatory expressions of disapproval or disgust—the Court will respond swiftly to limit or entirely exclude his testimony and issue limiting or corrective instructions as appropriate.

## CONCLUSION

The Court has a "gatekeeping" duty to "to ensure the reliability and relevancy of expert testimony." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). That gatekeeping responsibility continues throughout the trial. The parties are reminded to follow the principles set out in this order as they prepare for trial.

**IT IS HEREBY ORDERED** that Plaintiffs' Motions to Exclude the Expert Testimony of Arash Hajjam, Doc. [196], and Carlos Fernandez-Pello, Doc. [198] are **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Exclude the Expert Testimony of Todd Song, Doc. [195] is **GRANTED IN PART** as set forth herein.

**IT IS FINALLY ORDERED** that Defendants' Motion to Exclude the Expert Testimony of Roy Deppa, Doc. [200] is **GRANTED IN PART** as set forth herein.

Dated this 23rd day of May, 2026.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE

12