**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

BRENDA HILLMAN, ET AL.,                     )
                                            )
      Plaintiff,                         )
  v.                                        )    Case No. 4:23-cv-00830-SEP
                                            )
GREE USA, INC., ET AL.,                     )
                                            )
      Defendants.                        )

## MEMORANDUM AND ORDER

Before the Court is Plaintiffs' motion seeking exclusion of Defendants' expert Steven Weitz. *See* Doc. [190]. For the reasons set forth below, the motion is granted.

### FACTS AND BACKGROUND

In this products liability case, Plaintiffs allege that a defective dehumidifier produced by Defendants caused the fire that killed Kenneth and Phyllis Zerr. Defendants seek to call an insurance adjuster, Steven Weitz, to testify as to the value of the home, and its contents, before and after the fire. Doc. [190-3]. Plaintiffs move to exclude his testimony.

### LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Under Rule 702, the trial court has gatekeeping responsibility to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)).

The United States Supreme Court recently amended Rule 702 to "clarify and emphasize" that a "preponderance of the evidence standard" applies to the admissibility of expert testimony.

1

Fed. R. Evid. 702 advisory committee's note to 2023 amendment.  "[E]xpert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule."  *Id*.

"Proposed testimony must be supported by appropriate validation—*i.e.,* 'good grounds,' based on what is known."  *Daubert*, 509 U.S. at 590.  But Rule 702 "is one of admissibility rather than exclusion."  *Shuck v. CNH Am.*, LLC, 498 F.3d 868, 874 (8th Cir. 2007).  "[D]oubts regarding whether an expert's testimony will be useful should generally be resolved in favor of admissibility."  *Clark v. Heidrick*, 150 F.3d 912, 915 (8th Cir. 1998) (citation modified).  "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."  *Olson v. Ford Motor Co.*, 481 F.3d 619, 626 (8th Cir. 2007).

**DISCUSSION**

Weitz "is a licensed independent adjuster and has in excess of 30 years of experience."  Doc. [190-3] at 2.  Defendants retained Weitz to evaluate the damage caused by the fire to the house and its contents.  *Id*.  Plaintiffs do not challenge Weitz's credentials.  Rather, they argue Weitz's opinion should be excluded because he evaluated the "actual cash value" of the home and its contents, where Missouri law requires damages to be assessed using the "fair market value" of the property before and after the fire.  Doc. [190-1] at 4.

Missouri Approved Jury Instruction (MAI) 4.02 instructs Missouri juries to award damages for property damage by evaluating:

> the difference between the fair market value of the [property] before it was damaged and its fair market value after it was damaged, plus such sum as you may find from the evidence will fairly and justly compensate plaintiff for the loss of use thereof during the time reasonably necessary for the property to be repaired or replaced.

And MAI 16.02 defines "fair market value" as "[t]he price that the property in question would bring when offered for sale by one willing but not obliged to sell it and when bought by one willing or desirous to purchase it but who is not compelled to do so."

Defendants do not deny that MAI 16.02's definition of "fair market value" applies to the assessment of property damage in this case.  *See* Doc. [240] at 4 (quoting MAI 16.02).  They contend that Weitz "employed the same standard when performing his expert evaluation of the property's value immediately before the incident."  *Id*.  The trouble for Defendants is that Weitz

2

himself does not describe his opinion as an evaluation of the property's fair market value. Rather, in his deposition, he defines the "actual cash value" he determined as "replacement cost less depreciation," Doc. [190-5] at 45, and he specifically disclaims having performed a "diminution in market value appraisal," *id.* at 44.

The question before the Court, then, is whether Defendants have shown that that it is more likely than not that Weitz's "replacement cost less depreciation" testimony would "help the trier of fact to . . . to determine" the property's "fair market value" as defined in MAI 16.02. Having carefully reviewed Defendants' opposition and the case law cited therein, the Court finds that they have not.

Under Missouri law, the "general rule for damage to real or personal property is the diminution in value test, i.e., the difference between the fair market value before and after the event causing the damage." *Tull v. Housing Authority of City of Columbia*, 691 S.W.2d 940, 942 (Mo. Ct. App. 1985) (citing *City of Kennett v. Akers*, 564 S.W.2d 41, 50 (Mo. banc 1978); *Groves v. State Farm Mutual Auto Ins. Co.*, 540 S.W.2d 39, 43 (Mo. banc 1976); *DeLisle v. Cape Mutual Ins. Co.*, 675 S.W.2d 97 (Mo. Ct. App. 1984); *Lustig v. U.M.C. Industries, Inc.*, 637 S.W.2d 55, 58 (Mo. Ct. App. 1982); *DeArmon v. City of St. Louis*, 525 S.W.2d 795, 800 (Mo. Ct. App. 1975)). There is one acknowledged exception to that general rule: "[T]he cost of repair test which may be used when the property can be restored to its former condition at a cost less than the diminution in value." *Id.* (citing *DeLisle*, 675 S.W.2d at 103). Traditionally, the cost-of-repair exception applies "only where the amount of damage is insignificant as compared to the value of the property," and the general test is used "without hesitation in circumstances that suggest a very high restoration cost." *DeArmon*, 525 S.W.2d at 800. Defendants have pointed to no case like this one—and the Court has located none—in which "replacement cost minus depreciation" has been cited as an equivalent or exception to the "general rule."

Missouri law does explicitly provide for the use of replacement cost less depreciation in determining fair market value in some other contexts. *See Boss v. Travelers Home & Marine Ins. Co.*, 2016 WL 3983833, at *6 (W.D. Mo. July 25, 2016) (". . . Missouri law uses different methods for valuing property in a variety of contexts . . . ."); *see, e.g.*, *Land Clearance for Redevelopment Authority of City of St. Louis v. Henderson*, 358 S.W.3d 145, 154-55 (Mo. Ct. App. 2011) (discussing "fair market value" in condemnation action); *Quincy Soybean Co., Inc. v. Lowe*, 773 S.W.2d 503, 504 (Mo. Ct. App. 1989) (same, taxation); *Pannell v. Missouri Ins.*

*Guaranty Ass'n*, 595 S.W.2d 378, 354 (Mo. Ct. App. 1980) (same, insurance); *see also* Mo. Rev. Stat. § 523.001 (defining "fair market value" as "the value of the property taken after considering comparable sales in the area, capitalization of income, and replacement cost less depreciation, singularly or in combination" for the purposes of condemnation proceedings); MAI 9.01, 9.02 ("In determining fair market value of defendant's property, you may consider evidence of the value of the property including [comparable sales, capitalization of income, replacement cost less depreciation] . . ."). But the Court has not found any case drawing a connection between "replacement cost less depreciation" and what MAI 16.02 instructs. Nor has it found any case that explicitly denies such a connection.

Lacking definitive authority from either party, the Court returns to the burden of proof. It is *Defendants'* burden to show that Weitz's testimony is more-likely-than-not to be admissible under Rule 702. But Defendants produce no statute, jury instruction, or case law suggesting that testimony about "replacement cost less depreciation" will help the jury determine "fair market value" as defined in MAI 16.02. They cite cases from distinctly different contexts, in which courts have interpreted "actual cash value" as "fair market value," not where courts have allowed parties to establish "fair market value" by presenting evidence of "replacement cost less depreciation," as Defendants propose. *See* Doc. [240] at 3-5. And they make the specious claim that Weitz "employed the same standard" as MAI 16.02, citing two parts of his report that relate to his valuation of the contents of the Zerr's home, not the structure. Doc. [240] at 2, 4 (quoting Doc. [190-4] at 4, 6). Mischaracterization of the expert's report is not a strong foundation for an argument.

Because Defendants have failed to establish the admissibility of Weitz's testimony under Rule 702 by a preponderance of the evidence,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Exclude the Expert Testimony of Steven Weitz, Doc. [190], is **GRANTED**.

Dated this 26th day of May, 2026.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE

4